# EXHIBIT 3

## To Notice of Removal



EFiled:  Apr 27 2022 12:19PM EDT
Transaction ID 67511406
Case No. N22C-04-010 MMJ CCLD   4-13-22

EFiled:  Apr 01 2022 12:17PM EDT
Transaction ID 67446229
Case No. N22C-04-010 MMJ

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMTRUST FINANCIAL SERVICES,
INC.,

          Plaintiff,

     v.

FORGE UNDERWRITING LIMITED,
ASPEN SYNDICATE 4711,
MARKEL BERMUDA LIMITED,
ALLIANZ GLOBAL US RISKS
INSURANCE COMPANY, ARCH
INSURANCE COMPANY,
IRONSHORE INDEMNITY, INC.,
and U.S. SPECIALTY INSURANCE
COMPANY,

          Defendants.

C.A. No. N22C-_____ CCLD

**TRIAL BY JURY OF
TWELVE DEMANDED**

(14) writs for Kent
chk$t 10809   175.ª Fees.
                        Comm.
       #  10810   600.ª Kent

(10) summons
signed
for 3104

2022 APR 12  P 2: 08

**PRAECIPE**

TO:     Prothonotary
        Superior Court of the State of Delaware
        Leonard L. Williams Justice Center
        500 North King Street
        Wilmington, DE 19801

**PLEASE ISSUE** summons to the below-named Defendant for service by the

Sheriff of Kent          County upon the Defendant listed below by serving two (2)

copies of the Summons, Praecipe, and Complaint for the Defendant on the

Department of Insurance, State of Delaware, 1351 West North Street, Dover,

Delaware 19904, in accordance with 18 *Del. C.* § 524. At the time of service, the

sheriff will deliver a check payable to the Commissioner of Insurance in the amount of $25.00, representing the required fee.

**FORGE UNDERWRITING LIMITED**

**PLEASE ISSUE** summons to the below-named Defendant for service by the Sheriff of Kent County upon the Defendant listed below by serving two (2) copies of the Summons, Praecipe, and Complaint for the Defendant on the Department of Insurance, State of Delaware, 1351 West North Street, Dover, Delaware 19904, in accordance with 18 *Del. C.* § 524. At the time of service, the sheriff will deliver a check payable to the Commissioner of Insurance in the amount of $25.00, representing the required fee.

**ASPEN SYNDICATE 4711**

**PLEASE ISSUE** summons to the below-named Defendant for service by the Sheriff of Kent County upon the Defendant listed below by serving two (2) copies of the Summons, Praecipe, and Complaint for the Defendant on the Department of Insurance, State of Delaware, 1351 West North Street, Dover, Delaware 19904, in accordance with 18 *Del. C.* § 525. At the time of service, the sheriff will deliver a check payable to the Commissioner of Insurance in the amount of $25.00, representing the required fee.

**MARKEL BERMUDA LIMITED**

2

**PLEASE ISSUE** a summons to the Plaintiffs' counsel of record, commanding him to summon and direct the below-named Defendants to answer the Complaint by serving the below-named Defendant pursuant to 10 *Del. C.* § 3104 with copies of the Summons and Complaint as follows:

**MARKEL BERMUDA LIMITED**
10275 W. Higgins Road, Suite 750
Rosemont, IL 60018

**PLEASE ISSUE** summons to the below-named Defendant for service by the Sheriff of Kent     County upon the Defendant listed below by serving two (2) copies of the Summons, Praecipe, and Complaint for the Defendant on the Department of Insurance, State of Delaware, 1351 West North Street, Dover, Delaware 19904, in accordance with 18 *Del. C.* § 525. At the time of service, the sheriff will deliver a check payable to the Commissioner of Insurance in the amount of $25.00, representing the required fee.

**ALLIANZ GLOBAL US RISKS INSURANCE COMPANY**

**PLEASE ISSUE** a summons to the Plaintiffs' counsel of record, commanding him to summon and direct the below-named Defendants to answer the Complaint by serving the below-named Defendant pursuant to 10 *Del. C.* § 3104 with copies of the Summons and Complaint as follows:

3

**ALLIANZ GLOBAL US RISKS INSURANCE COMPANY**
225 W. Washington St., #1800
Chicago, IL 60606-3484

**PLEASE ISSUE** summons to the below-named Defendant for service by the

Sheriff of Kent County upon the Defendant listed below by serving two (2)

copies of the Summons, Praecipe, and Complaint for the Defendant on the

Department of Insurance, State of Delaware, 1351 West North Street, Dover,

Delaware 19904, in accordance with 18 *Del. C.* § 525. At the time of service, the

sheriff will deliver a check payable to the Commissioner of Insurance in the amount

of $25.00, representing the required fee.

## ARCH INSURANCE COMPANY

**PLEASE ISSUE** a summons to the Plaintiffs' counsel of record, commanding

him to summon and direct the below-named Defendants to answer the Complaint by

serving the below-named Defendant pursuant to 10 *Del. C.* § 3104 with copies of

the Summons and Complaint as follows:

**ARCH INSURANCE COMPANY**
210 Hudson Street, Suite 300
Jersey City, NJ 07311-1107

**PLEASE ISSUE** summons to the below-named Defendant for service by the

Sheriff of Kent County upon the Defendant listed below by serving two (2)

copies of the Summons, Praecipe, and Complaint for the Defendant on the

4

Department of Insurance, State of Delaware, 1351 West North Street, Dover, Delaware 19904, in accordance with 18 *Del. C.* § 525. At the time of service, the sheriff will deliver a check payable to the Commissioner of Insurance in the amount of $25.00, representing the required fee.

**IRONSHORE INDEMNITY, INC.**

**PLEASE ISSUE** a summons to the Plaintiffs' counsel of record, commanding him to summon and direct the below-named Defendants to answer the Complaint by serving the below-named Defendant pursuant to 10 *Del. C.* § 3104 with copies of the Summons and Complaint as follows:

**IRONSHORE INDEMNITY, INC.**
175 Berkeley Street
Boston, MA 02116

**PLEASE ISSUE** summons to the below-named Defendant for service by the Sheriff of Kent        County upon the Defendant listed below by serving two (2) copies of the Summons, Praecipe, and Complaint for the Defendant on the Department of Insurance, State of Delaware, 1351 West North Street, Dover, Delaware 19904, in accordance with 18 *Del. C.* § 525. At the time of service, the sheriff will deliver a check payable to the Commissioner of Insurance in the amount of $25.00, representing the required fee.

**U.S. SPECIALTY INSURANCE COMPANY**

5

**PLEASE ISSUE** a summons to the Plaintiffs' counsel of record, commanding

him to summon and direct the below-named Defendants to answer the Complaint by

serving the below-named Defendant pursuant to 10 *Del. C.* § 3104 with copies of

the Summons and Complaint as follows:

**U.S. SPECIALTY INSURANCE COMPANY**
13403 Northwest Freeway
Hoston, TX 77040

### BERGER HARRIS LLP

*/s/ David J. Baldwin*

David J. Baldwin (No. 1010)
Peter C. McGivney (No. 5779)
Zachary J. Schnapp (No. 6914)
1105 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Phone: (302) 655-1140
Fax: (302) 655-1131
dbaldwin@bergerharris.com
pmcgivney@bergerharris.com
zschnapp@bergerharris.com

*Attorneys for Plaintiff*

Dated: April 1, 2022

6



Kent County Sheriff's Office
555 Bay Rd
Dover, DE 19901
302-736-2161



EFiled: May 04 2022 12:20PM EDT
Transaction ID 67585202
Case No. N22C-04-010 MMJ CCLD

STATE OF DELAWARE
KENT COUN
5/4/2022

# SHERIFF'S RETURN

| | |
|---|---|
| Amtrust Financial Services, Inc., | **C.A. No.:** |
| Plaintiff, | N22C-04-010 MMJ CCLD |
| Vs. | **Sheriff No.:** |
| | 22001100 |
| Forge Underwriting Limited, Aspen | **Attorney:** |
| Syndicate 4711, Markel Bermuda Limited, | **Firm:** David . Baldwn of |
| Allianz Global US Risks Insurance | Berger Harris LLC |
| Company, Arch Insurance Company, | 1105 North Market Street |
| | 11th Floor |
| | Wilmington, DE 19801 |

To:    Superior Court - NC

Non Est. Forge Underwriting Limited, c/o Insurance Commissioner Trinadad Navarro this day,  5/4/2022, at:

      1351 West North Street
      Suite 101
      Dover, DE 19904

Summons/Complaint.

Reason:  **Unknown Enity**

So Answers,

_Brian E. Lewis_

Brian E. Lewis
Sheriff of Kent County


Kent County Sheriff's Office
555 Bay Rd
Dover, DE 19901
302-736-2161



EFiled:  May 04 2022 12:20PM EDT
Transaction ID 67585204
Case No. N22C-04-010 MMJ CCLD

STATE of DELAWARE
KENT COUN
5/4/2022

# SHERIFF'S RETURN

| | |
|---|---|
| Amtrust Financial Services, Inc., <br>                 Plaintiff, <br>     Vs. <br><br> Forge Underwriting Limited, Aspen Syndicate 4711, Markel Bermuda Limited, Allianz Global US Risks Insurance Company, Arch Insurance Company, | C.A. No.:     N22C-04-010 MMJ CCLD <br><br> Sheriff No.:     22001100 <br><br> Attorney: <br> Firm:     David . Baldwn of <br>          Berger Harris LLC <br>          1105 North Market Street <br>          11th Floor <br>          Wilmington, DE 19801 |

To:      Superior Court - NC

Non Est. Aspen Syndicate 4711 c/o Insurance Commissioner Trinadad Navarro this day,  5/4/2022, at:
      1351 West North Street
      Suite 101
      Dover, DE 19904

Summons/Complaint.

Reason:  **Unknown Entity**

So Answers,

Brian E. Lewis
Sheriff of Kent County



Kent County Sheriff's Office
555 Bay Rd
Dover, DE 19901
302-736-2161



**EFiled:  May 04 2022 12:20PM EDT**
**Transaction ID 67585206**
**Case No. N22C-04-010 MMJ CCLD**
STATE of DELAWARE
KENT COUN
5/4/2022

# SHERIFF'S RETURN

Amtrust Financial Services, Inc.,

Plaintiff,

Vs.

Forge Underwriting Limited, Aspen Syndicate
4711, Markel Bermuda Limited, Allianz Global
US Risks Insurance Company, Arch Insurance
Company, Ironshore Indemnity, Inc., and U.S.

To:     Superior Court - NC

| | |
|---|---|
| C.A. No.: | N22C-04-010 MMJ CCLD |
| Sheriff No.: | 22001100 |
| Attorney: Firm: | David . Baldwn of Berger Harris LLC 1105 North Market Street 11th Floor Wilmington, DE 19801 |

Served the within Writ upon:

Markel Bermuda Limited c/o Insurance Commissioner Trinadad Navarro

by delivering to and leaving in the hands of Markel Bermuda Limited c/o Insurance Commissioner
Trinadad Navarro, Insurance Commissioner of the State of Delaware, true copies of the said Writ
together with a copy of the plaintiff's

Summons/Complaint

**$25 Check attached for Insurance Commissioner**

as prescribed by Title 18 Delaware Code Section 525 this day, 4/26/2022.

So Answers,

Brian E. Lewis
Sheriff of Kent County



Kent County Sheriff's Office
555 Bay Rd
Dover, DE 19901
302-736-2161



EFiled:  May 04 2022 12:20PM EDT
Transaction ID 67585207
Case No. N22C-04-010 MMJ CCLD

STATE of DELAWARE
KENT COUN
5/4/2022

# SHERIFF'S RETURN

Amtrust Financial Services, Inc.,

Plaintiff,

Vs.

Forge Underwriting Limited, Aspen Syndicate 4711, Markel Bermuda Limited, Allianz Global US Risks Insurance Company, Arch Insurance Company, Ironshore Indemnity, Inc., and U.S.

To:     Superior Court - NC

| | |
|---|---|
| C.A. No.: | N22C-04-010 MMJ CCLD |
| Sheriff No.: | 22001100 |
| Attorney: Firm: | David . Baldwn of Berger Harris LLC 1105 North Market Street 11th Floor Wilmington, DE 19801 |

Served the within Writ upon:

Allianz Global US Risks Insuance Company c/oInsurance Commissioner Trinadad Navarro

by delivering to and leaving in the hands of Allianz Global US Risks Insuance Company c/oInsurance Commissioner Trinadad Navarro, Insurance Commissioner of the State of Delaware, true copies of the said Writ together with a copy of the plaintiff's

Summons/Complaint

**$25 Check attached for Insurance Commissioner**

as prescribed by Title 18 Delaware Code Section 525 this day, 4/26/2022.

So Answers,

Brian E. Lewis
Sheriff of Kent County

Form: RC-402 Insurance Commissioner
Revised: 12/11/2018



Kent County Sheriff's Office
555 Bay Rd
Dover, DE 19901
302-736-2161



EFiled:  May 04 2022 12:20PM EDT
Transaction ID 67585208
Case No. N22C-04-010 MMJ CCLD

STATE OF DELAWARE
KENT COUN
5/4/2022

# SHERIFF'S RETURN

| | |
|---|---|
| Amtrust Financial Services, Inc.,<br><br>                                        Plaintiff,<br><br>        Vs.<br><br>Forge Underwriting Limited, Aspen Syndicate 4711, Markel Bermuda Limited, Allianz Global US Risks Insurance Company, Arch Insurance Company, Ironshore Indemnity, Inc., and U.S. | **C.A. No.:**<br>N22C-04-010 MMJ CCLD<br><br>**Sheriff No.:**<br>22001100<br><br>**Attorney:**<br>**Firm:**<br>David . Baldwn of<br>Berger Harris LLC<br>1105 North Market Street<br>11th Floor<br>Wilmington, DE 19801 |

To:      Superior Court - NC

Served the within Writ upon:

Arch Insurance Company c/o Insurance Commissioner Trinadad Navarro

by delivering to and leaving in the hands of Arch Insurance Company c/o Insurance Commissioner Trinadad Navarro, Insurance Commissioner of the State of Delaware, true copies of the said Writ together with a copy of the plaintiff's

Summons/Complaint

**$25 Check attached for Insurance Commissioner**

as prescribed by Title 18 Delaware Code Section 525 this day, 4/26/2022.

So Answers,

Brian E. Lewis
Sheriff of Kent County

Form: RC-402 Insurance Commissioner
Revised: 12/11/2018

Exhibit - Page 11



Kent County Sheriff's Office
555 Bay Rd
Dover, DE 19901
302-736-2161



EFiled:  May 04 2022 12:20PM EDT
Transaction ID 67585209
Case No. N22C-04-010 MMJ CCLD

STATE of DELAWARE
KENT COUN
5/4/2022

# SHERIFF'S RETURN

Amtrust Financial Services, Inc.,

                                        Plaintiff,

        Vs.

Forge Underwriting Limited, Aspen Syndicate
4711, Markel Bermuda Limited, Allianz Global
US Risks Insurance Company, Arch Insurance
Company, Ironshore Indemnity, Inc., and U.S.

| | |
|---|---|
| C.A. No.: | N22C-04-010 MMJ CCLD |
| Sheriff No.: | 22001100 |
| Attorney: Firm: | David . Baldwn of Berger Harris LLC 1105 North Market Street 11th Floor Wilmington, DE 19801 |

To:     Superior Court - NC

Served the within Writ upon:

Ironshore Indemnity, Inc. c/o Insurance Commissioner Trinadad Navarro

by delivering to and leaving in the hands of Ironshore Indemnity, Inc. c/o Insurance Commissioner
Trinadad Navarro, Insurance Commissioner of the State of Delaware, true copies of the said Writ
together with a copy of the plaintiff's

Summons/Complaint

**$25 Check attached for Insurance Commissioner**

as prescribed by Title 18 Delaware Code Section 525 this day, 4/26/2022.

So Answers,

Brian E. Lewis
Sheriff of Kent County



Kent County Sheriff's Office
555 Bay Rd
Dover, DE 19901
302-736-2161



EFiled: May 04 2022 12:20PM EDT
Transaction ID 67585210
Case No. N22C-04-010 MMJ CCLD
STATE of DELAWA
KENT COUN
5/4/2022

# SHERIFF'S RETURN

Amtrust Financial Services, Inc.,
                                        Plaintiff,

        Vs.

Forge Underwriting Limited, Aspen Syndicate
4711, Markel Bermuda Limited, Allianz Global
US Risks Insurance Company, Arch Insurance
Company, Ironshore Indemnity, Inc., and U.S.

To:     Superior Court - NC

| | |
|---|---|
| C.A. No.: | N22C-04-010 MMJ CCLD |
| Sheriff No.: | 22001100 |
| Attorney: Firm: | David . Baldwn of Berger Harris LLC 1105 North Market Street 11th Floor Wilmington, DE 19801 |

Served the within Writ upon:

U.S. Specialty Insurane Company c/o Insurance Commissioner Trinadad Navarro

by delivering to and leaving in the hands of U.S. Specialty Insurane Company c/o Insurance
Commissioner Trinadad Navarro, Insurance Commissioner of the State of Delaware, true copies of the
said Writ together with a copy of the plaintiff's

Summons/Complaint

**$25 Check attached for Insurance Commissioner**

as prescribed by Title 18 Delaware Code Section 525 this day, 4/26/2022.

So Answers,

Brian E. Lewis
Sheriff of Kent County

Form: RC-402 Insurance Commissioner
Revised: 12/11/2018

Exhibit - Page 13

EFiled:  May 09 2022 06:41PM EDT
Transaction ID 67602235
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMTRUST FINANCIAL SERVICES,
INC.,

        Plaintiff,

        v.

FORGE UNDERWRITING LIMITED,
ASPEN SYNDICATE 4711,
MARKEL BERMUDA LIMITED,
ALLIANZ GLOBAL US RISKS
INSURANCE COMPANY, ARCH
INSURANCE COMPANY,
IRONSHORE INDEMNITY, INC.,
and U.S. SPECIALTY INSURANCE
COMPANY,

        Defendants.

C.A. No. N22C-04-110 MMJ CCLD

**TRIAL BY JURY OF
TWELVE DEMANDED**

## NOTICE OF VOLUNTARY DISMISSAL
## OF MARKEL BERMUDA LIMITED

Plaintiff AmTrust Financial Services, Inc. hereby voluntarily dismisses defendant Markel Bermuda Limited from the above-captioned action without prejudice pursuant to Superior Court Civil Rule 41(a)(1)(I)[1]. This voluntary dismissal applies solely to defendant Markel Bermuda Limited.

---

[1] Super Ct. Civ. R. 41(a): "Voluntary Dismissal: Effect Thereof. (1) By Plaintiff … an action may be dismissed by the plaintiff without order of court (I) except in replevin, by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment whichever first occurs[.]"

Dated:  May 9, 2022

**BERGER HARRIS LLP**

*/s/ David J. Baldwin*

David J. Baldwin (No. 1010)
Peter C. McGivney (No. 5779)
Zachary J. Schnapp (No. 6914)
1105 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Phone: (302) 655-1140
Fax: (302) 655-1131
dbaldwin@bergerharris.com
pmcgivney@bergerharris.com
zschnapp@bergerharris.com

*Attorneys for Plaintiff*

2

EFiled:  May 13 2022 09:27AM EDT
Transaction ID 67617189
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF DELAWARE

| | | | |
|---|---|---|---|
| AMTRUST FINANCING SERVICES, INC., | ) )) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | C.A. No. N22C-04-010 MMJ | |
| v. | ) | CCLD | |
| | ) | | |
| FORGE UNDERWRITING LIMITED, *et al,*) | ) | | |
| | ) | | |
| | ) | | |
| Defendants. | ) | | |

### ENTRY OF APPEARANCE

PLEASE ENTER THE APPEARANCE of Robert J. Katzenstein and Julie M. O'Dell of Smith Katzenstein & Jenkins LLP for defendants Ironshore Indemnity, Inc. and Arch Insurance Company in this matter.

Dated:  May 13, 2022

SMITH, KATZENSTEIN & JENKINS LLP

*/s/     Robert J. Katzenstein*

Robert J. Katzenstein (No. 378)
Julie M. O'Dell (No. 6191)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
rjk@skjlaw.com
jmo@skjlaw.com

*Attorneys for Defendants Ironshore Indemnity, Inc. and Arch Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on May 13, 2022, a true and correct copy of the

foregoing Entry of Appearance was served on all counsel of record by

File&Serve*Xpress*.


_/s/ Robert J. Katzenstein_
Robert J. Katzenstein (No. 378)

**EFiled:  May 13 2022 05:20PM EDT**
**Transaction ID 67620664**
**Case No. N22C-04-010 MMJ CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiff, | |
| v. | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | **TRIAL BY JURY OF TWELVE DEMANDED** |
| Defendants. | |

## AMENDMENT TO COMPLAINT UNDER SUPERIOR COURT RULE 4(h)

STATE OF DELAWARE          )
                                )   SS:
COUNTY OF NEW CASTLE          )

BE IT REMEMBERED, that on this 13th day of May, 2022, did personally appear before me the Subscriber, a Notary for the State and County aforesaid, Peter C. McGivney, Esquire, who, being by me duly sworn according to law, did depose and say:

1.     That he is an attorney duly licensed to practice before the Courts of the State of Delaware with the firm of Berger Harris LLP, counsel for plaintiff herein.

2.     That on April 18, 2022, he did cause to be mailed by Certified Mail, Return Receipt Requested to <u>Allianz Global US Risks Insurance Company</u> a copy of the Complaint filed by plaintiff in the above-captioned matter.  Such service is as effectual for all intents and purposes as if service had been made upon such defendants personally within the State of Delaware.

3.     That attached hereto as Exhibit 1 is the postal service return receipt that he received, and that evidences acceptance of the documents mailed pursuant to 10 Del. C. § 3104(d).

_____
Peter C. McGivney (No. 5779)
BERGER HARRIS, LLP
1105 North Market Street, 11ᵗʰ Floor
Wilmington, DE 19801
Telephone: (302) 655-1140
Facsimile:  (302) 655-1131
pmcgivney@bergerharris.com

SWORN TO AND SUBSCRIBED before me the day and year aforesaid.

_____
Notary Public
My Commission Expires: 7/19/23

2

EFiled:  May 13 2022 05:20PM EDT
Transaction ID 67620664
Case No. N22C-04-010 MMJ CCLD

# Exhibit 1





EFiled:  May 13 2022 05:20PM EDT
Transaction ID 67620664
Case No. N22C-04-010 MMJ CCLD

## <u>CERTIFICATE OF SERVICE</u>

I, Peter C. McGivney, hereby certify that on May 13, 2022, I caused a true

and correct copy of the foregoing *Amendment to Complaint under Superior Court*

*Rule 4(h)* to be served upon the following parties in the manner indicated below:

## <u>VIA FILE & SERVEXPRESS</u>

Robert J. Katzenstein, Esq.
Julie M. O'Dell, Esq.
Smith Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

/s/ *Peter C. McGivney*
Peter C. McGivney (No. 5779)

EFiled:  May 13 2022 05:24PM EDT
Transaction ID 67620674
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiff, | |
| v. | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | **TRIAL BY JURY OF TWELVE DEMANDED** |
| Defendants. | |

## AMENDMENT TO COMPLAINT UNDER SUPERIOR COURT RULE 4(h)

STATE OF DELAWARE         )
                                   )    SS:
COUNTY OF NEW CASTLE    )

BE IT REMEMBERED, that on this 13th day of May, 2022, did personally appear before me the Subscriber, a Notary for the State and County aforesaid, Peter C. McGivney, Esquire, who, being by me duly sworn according to law, did depose and say:

1.      That he is an attorney duly licensed to practice before the Courts of the State of Delaware with the firm of Berger Harris LLP, counsel for plaintiff herein.

2.      That on April 18, 2022, he did cause to be mailed by Certified Mail, Return Receipt Requested to <u>Arch Insurance Company</u> a copy of the Complaint filed by plaintiff in the above-captioned matter.  Such service is as effectual for all intents and purposes as if service had been made upon such defendants personally within the State of Delaware.

3.      That attached hereto as Exhibit 1 is the postal service return receipt that he received, and that evidences acceptance of the documents mailed pursuant to 10 Del. C. § 3104(d).

Peter C. McGivney (No. 5779)
BERGER HARRIS, LLP
1105 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 655-1140
Facsimile:  (302) 655-1131
pmcgivney@bergerharris.com


SWORN TO AND SUBSCRIBED before me the day and year aforesaid.

Notary Public
My Commission Expires:   7/19/23

NICOLE DIBIASO
MY COMMISSION
EXPIRES
JULY 19, 2023
NOTARY PUBLIC
STATE OF DELAWARE

2

EFiled:  May 13 2022 05:24PM EDT
Transaction ID 67620674
Case No. N22C-04-010 MMJ CCLD

# Exhibit 1

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.75

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $ 3.05
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$ 9.65

Total Postage and Fees
$ 16.45

Sent To
Arch Insurance Company
Street and Apt. No., or PO Box No.
210 Hudson Street, Suite 300
City, State, ZIP+4®
Jersey City, NJ 07311-1107

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

7021 1970 0001 5878 3663

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Arch Insurance Company
210 Hudson Street, Suite 300
Jersey City, NJ 07311-1107

9590 9402 7036 1225 3557 48

2. Article Number *(Transfer from service label)*
7021 1970 0001 5878 3663

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____        ☐ Agent
                                 ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
S. QUATIN

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery
☑ Return Receipt

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

EFiled: May 13 2022 05:24PM EDT
Transaction ID 67620674
Case No. N22C-04-010 MMJ CCLD

## CERTIFICATE OF SERVICE

I, Peter C. McGivney, hereby certify that on May 13, 2022, I caused a true

and correct copy of the foregoing *Amendment to Complaint under Superior Court*

*Rule 4(h)* to be served upon the following parties in the manner indicated below:

### VIA FILE & SERVEXPRESS

Robert J. Katzenstein, Esq.
Julie M. O'Dell, Esq.
Smith Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

*/s/ Peter C. McGivney*
Peter C. McGivney (No. 5779)

EFiled:  May 13 2022 05:26PM EDT
Transaction ID 67620684
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiff, | |
| v. | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | **TRIAL BY JURY OF TWELVE DEMANDED** |
| Defendants. | |

## AMENDMENT TO COMPLAINT UNDER SUPERIOR COURT RULE 4(h)

STATE OF DELAWARE   )
           ) SS:
COUNTY OF NEW CASTLE )

   BE IT REMEMBERED, that on this 13th day of May, 2022, did personally appear before me the Subscriber, a Notary for the State and County aforesaid, Peter C. McGivney, Esquire, who, being by me duly sworn according to law, did depose and say:

1.      That he is an attorney duly licensed to practice before the Courts of the State of Delaware with the firm of Berger Harris LLP, counsel for plaintiff herein.

2.      That on April 18, 2022, he did cause to be mailed by Certified Mail, Return Receipt Requested to Ironshore Indemnity, Inc. a copy of the Complaint filed by plaintiff in the above-captioned matter.  Such service is as effectual for all intents and purposes as if service had been made upon such defendants personally within the State of Delaware.

3.      That attached hereto as Exhibit 1 is the postal service return receipt that he received, and that evidences acceptance of the documents mailed pursuant to 10 Del. C. § 3104(d).

Peter C. McGivney (No. 5779)
BERGER HARRIS LLP
1105 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 655-1140
Facsimile:  (302) 655-1131
pmcgivney@bergerharris.com


SWORN TO AND SUBSCRIBED before me the day and year aforesaid.

Notary Public
My Commission Expires:  7/19/23

NICOLE DIBIASO
MY COMMISSION
EXPIRES
JULY 19, 2023
NOTARY PUBLIC
STATE OF DELAWARE

2

Exhibit - Page 29

EFiled:  May 13 2022 05:26PM EDT
Transaction ID 67620684
Case No. N22C-04-010 MMJ CCLD

# Exhibit 1

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.75

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $ 3.05
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery $ _____          Postmark
☐ Adult Signature Required         $ _____            Here
☐ Adult Signature Restricted Delivery $ _____

Postage
$ 9.65

Total Postage and Fees
$ 16.45

Sent To *Ironshore Indemnity, Inc.*
Street and Apt. No., or PO Box No. *175 Berkeley Street*
City, State, ZIP+4® *Boston, MA 02116*

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

7021 1970 0001 5878 3670

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Ironshore Indemnity, Inc.*
*175 Berkeley Street*
*Boston, MA 02116*

9590 9402 7036 1225 3557 31

2. Article Number *(Transfer from service label)*

7021 1970 0001 5878 3670

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    RECEIVED          ☐ Agent
                                                       ☐ Addressee
B. Received by *(Printed Name)*        C. Date of Delivery
                    APR 2 2 2022

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No
                    BOSTON OFFICE 0001

3. Service Type
☐ Adult Signature                      ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery  ☐ Registered Mail™
☑ Certified Mail®                      ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery                  ☐ Signature Confirmation™
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation
☐ Insured Mail                            Restricted Delivery
☐ Mail Restricted Delivery

Domestic Return Receipt

EFiled:  May 13 2022 05:26PM EDT
Transaction ID 67620684
Case No. N22C-04-010 MMJ CCLD

## <u>CERTIFICATE OF SERVICE</u>

I, Peter C. McGivney, hereby certify that on May 13, 2022, I caused a true

and correct copy of the foregoing *Amendment to Complaint under Superior Court*

*Rule 4(h)* to be served upon the following parties in the manner indicated below:

### <u>VIA FILE & SERVEXPRESS</u>

Robert J. Katzenstein, Esq.
Julie M. O'Dell, Esq.
Smith Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

*/s/ Peter C. McGivney*
Peter C. McGivney (No. 5779)

EFiled:  May 13 2022 05:29PM EDT
Transaction ID 67620690
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiff, | |
| v. | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | **TRIAL BY JURY OF TWELVE DEMANDED** |
| Defendants. | |

## AMENDMENT TO COMPLAINT UNDER SUPERIOR COURT RULE 4(h)

STATE OF DELAWARE      )
                                  )   SS:

COUNTY OF NEW CASTLE   )

BE IT REMEMBERED, that on this 13th day of May, 2022, did personally appear before me the Subscriber, a Notary for the State and County aforesaid, Peter C. McGivney, Esquire, who, being by me duly sworn according to law, did depose and say:

1.      That he is an attorney duly licensed to practice before the Courts of the State of Delaware with the firm of Berger Harris LLP, counsel for plaintiff herein.

2.      That on April 18, 2022, he did cause to be mailed by Certified Mail, Return Receipt Requested to <u>U.S. Specialty Insurance Company</u> a copy of the Complaint filed by plaintiff in the above-captioned matter.   Such service is as effectual for all intents and purposes as if service had been made upon such defendants personally within the State of Delaware.

3.      That attached hereto as Exhibit 1 is the postal service return receipt that he received, and that evidences acceptance of the documents mailed pursuant to 10 Del. C. § 3104(d).

Peter C. McGivney (No. 5779)
BERGER HARRIS, LLP
1105 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 655-1140
Facsimile:  (302) 655-1131
pmcgivney@bergerharris.com

SWORN TO AND SUBSCRIBED before me the day and year aforesaid.



Notary Public
My Commission Expires: 7/19/23

2

EFiled:  May 13 2022 05:29PM EDT
Transaction ID 67620690
Case No. N22C-04-010 MMJ CCLD

# Exhibit 1



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.75

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)         $
☐ Return Receipt (electronic)       $ 3.33
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $

Postage
$ 9.65

Total Postage and Fees
$ 16.45

Postmark
Here

Sent To  Specialty Insurance Company
Street and Apt. No., or PO Box No.  13403 Northwest Freeway
City, State, ZIP+4®  Houston, TX 77040

7021 1970 0001 5878 3687

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

U.S. Specialty Insurance Company
13403 Northwest Freeway
Houston, TX 77040

9590 9402 7036 1225 3557 24

2. Article Number (Transfer from service label)
7021 1970 0001 5878 3687

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery
Peng Sevons                          4/20/22

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☐ Certified Mail®                    ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery ☐ Signature Confirmation™
☐ Collect on Delivery                ☐ Signature Confirmation Restricted Delivery
☐ Collect on Delivery Restricted Delivery
   Mail
   Mail Restricted Delivery
   .00)

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

Exhibit - Page 36

EFiled:  May 13 2022 05:29PM EDT
Transaction ID 67620690
Case No. N22C-04-010 MMJ CCLD

## <u>CERTIFICATE OF SERVICE</u>

I, Peter C. McGivney, hereby certify that on May 13, 2022, I caused a true

and correct copy of the foregoing *Amendment to Complaint under Superior Court*

*Rule 4(h)* to be served upon the following parties in the manner indicated below:

## <u>VIA FILE & SERVEXPRESS</u>

Robert J. Katzenstein, Esq.
Julie M. O'Dell, Esq.
Smith Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

*/s/ Peter C. McGivney*
Peter C. McGivney (No. 5779)

EFiled: May 18 2022 08:57AM EDT
Transaction ID 67631730
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMTRUST FINANICAL SERVICES,
INC.

|                     | |                               |
|---------------------|-|-------------------------------|
| Plaintiff,          | | C.A. No. N22C-04-010 MMJ CCLD |
| v.                  | |                               |
| FORGE UNDERWRITING LIMITED, et al., | |                |
| Defendants.         | |                               |

### ENTRY OF APPEARANCE

PLEASE ENTER THE APPEARANCE of John C. Phillips, Jr., Esquire as counsel for Defendants Forge Underwriting Limited and Aspen Syndicate 4711 in the above matter.

Date:  May 18, 2022

PHILLIPS, MCLAUGHLIN & HALL, P.A.

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com
*Attorneys for Defendants Forge Underwriting Limited and Aspen Syndicate 4711*

EFiled:  May 18 2022 08:58AM EDT
Transaction ID 67631736
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANICAL SERVICES, INC. | |
| Plaintiff, | C.A. No. N22C-04-010 MMJ CCLD |
| v. | |
| FORGE UNDERWRITING LIMITED, et al., | |
| Defendants. | |

### ENTRY OF APPEARANCE

PLEASE ENTER THE APPEARANCE of David A. Bilson, Esquire as counsel for Defendants Forge Underwriting Limited and Aspen Syndicate 4711 in the above matter.


Date:  May 18, 2022                    PHILLIPS, MCLAUGHLIN & HALL, P.A.

                                       */s/ David A. Bilson*
                                       John C. Phillips, Jr. (#110)
                                       David A. Bilson (#4986)
                                       1200 North Broom Street
                                       Wilmington, DE 19806
                                       (302) 655-4200
                                       jcp@pmhdelaw.com
                                       dab@pmhdelaw.com
                                       *Attorneys for Defendants Forge*
                                       *Underwriting Limited and Aspen Syndicate*
                                       *4711*

EFiled: May 19 2022 04:51PM EDT
Transaction ID 67639775
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMTRUST FINANCIAL SERVICES,
INC.,

                Plaintiff,

      v.

FORGE UNDERWRITING LIMITED,
et al.,

                Defendants.

C.A. No. N22C-04-010 MMJ CCLD

### STIPULATION AND [PROPOSED] ORDER

IT IS HEREBY STIPULATED AND AGREED by Plaintiff and Defendants

Forge Underwriting Limited ("Forge") and Aspen Syndicate 4711 ("Aspen"),

through the undersigned counsel and subject to the approval of the Court, that the

deadline for Forge and Aspen to answer, move, or otherwise respond to the

Complaint (Trans. ID No. 67446229) shall be extended to June 20, 2022.

Dated: May 19, 2022

BERGER HARRIS LLP

/s/ David J. Baldwin
David J. Baldwin (#1010)
Peter C. McGivney (#5779)
Zachary J. Schnapp (#6914)
1105 N. Market Street, 11th Floor
Wilmington, DE 19801
(302) 655-1140
dbaldwin@bergerharris.com
pmcgivney@bergerharris.com

PHILLIPS MCLAUGHLIN & HALL, P.A.

/s/ John C. Phillips, Jr.
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 N. Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

zschnapp@bergerharris.com

*Attorneys for Plaintiff*

*Attorneys for Defendants Forge
Underwriting Limited & Aspen
Syndicate 4711*

IT IS SO ORDERED this _____ day of _____, 2022.

_____
                                                              , J.

EFiled:  May 25 2022 11:21AM EDT
Transaction ID 67658314
Case No. N22C-04-010 MMJ CCLD



EFiled:  May 19 2022 04:51PM EDT
Transaction ID 67639775
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMTRUST FINANCIAL SERVICES, INC.,

              Plaintiff,

v.

FORGE UNDERWRITING LIMITED, et al.,

              Defendants.

C.A. No. N22C-04-010 MMJ CCLD

## STIPULATION AND [PROPOSED] ORDER

IT IS HEREBY STIPULATED AND AGREED by Plaintiff and Defendants Forge Underwriting Limited ("Forge") and Aspen Syndicate 4711 ("Aspen"), through the undersigned counsel and subject to the approval of the Court, that the deadline for Forge and Aspen to answer, move, or otherwise respond to the Complaint (Trans. ID No. 67446229) shall be extended to June 20, 2022.

Dated: May 19, 2022

BERGER HARRIS LLP

/s/ David J. Baldwin
David J. Baldwin (#1010)
Peter C. McGivney (#5779)
Zachary J. Schnapp (#6914)
1105 N. Market Street, 11th Floor
Wilmington, DE 19801
(302) 655-1140
dbaldwin@bergerharris.com
pmcgivney@bergerharris.com

PHILLIPS MCLAUGHLIN & HALL, P.A.

/s/ John C. Phillips, Jr.
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 N. Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

zschnapp@bergerharris.com

*Attorneys for Plaintiff*

*Attorneys for Defendants Forge*
*Underwriting Limited & Aspen*
*Syndicate 4711*


IT IS SO ORDERED this _23rd_ day of _____May_____, 2022.

_____, J.

**EFiled:  Jun 20 2022 04:40PM EDT**
**Transaction ID 67741990**
**Case No. N22C-04-010 MMJ CCLD**

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. N22C-04-010 MMJ CCLD ) |
| FORGE UNDERWRITING LIMITED, et al., | ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS FORGE UNDERWRITING LIMITED**
**AND ASPEN SYNDICATE 4711'S**
**MOTION TO DISMISS THE COMPLAINT**

Pursuant to Superior Court Civil Rule 12(b), Defendants Forge Underwriting Limited and Aspen Syndicate 4711 (together, "Underwriters") move this Honorable Court for an Order dismissing them from this action and requiring that Plaintiff AmTrust Financial Services, Inc. pursue any claim for coverage under Underwriters' policies in the New York courts.  The grounds for this motion are fully set forth in the concurrently-filed Opening Brief in support.

OF COUNSEL:

Edward J. Kirk
Scott W. Schwartz
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, NY 10174
212-710-3900


Dated: June 20, 2022

Restfully submitted,

/s/ John C. Phillips, Jr.
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 N. Broom Street
Wilmington, DE  19806
302-655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Attorneys for Defendants Forge
Underwriting Limited and Aspen
Syndicate 4711*

EFiled:  Jun 20 2022 04:40PM EDT
Transaction ID 67741990
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMTRUST FINANCIAL )
SERVICES, INC., )
)
Plaintiff, )
)
v. )                        C.A. No. N22C-04-010 MMJ CCLD
)
FORGE UNDERWRITING )
LIMITED,  et al., )
)
Defendants. )

## OPENING BRIEF IN SUPPORT OF
## FORGE UNDERWRITING LIMITED AND ASPEN
## SYNDICATE 4711's MOTION TO DISMISS THE COMPLAINT

Of Counsel:                         John C. Phillips, Jr. (#110)
Edward J. Kirk                      David A. Bilson (#4986)
Scott W. Schwartz                   PHILLIPS, MCLAUGHLIN & HALL, P.A
CLYDE & CO US LLP                   1200 N. Broom Street
The Chrysler Building               Wilmington, DE  19806
405 Lexington Avenue, 16th Floor    302-655-4200
New York, NY 10174                  jcp@pmhdelaw.com
212-710-3900                        dab@pmhdelaw.com

                                    *Attorneys for Defendants Forge
Dated: June 20, 2022                Underwriting Limited and Aspen
                                    Syndicate 4711*

# **TABLE OF CONTENTS**

STATEMENT OF THE CASE ................................................................................1

STATEMENT OF FACTS ...................................................................................3

   A. Underwriters' Excess Policies ...................................................... 3

   B. The Martinek Action.................................................................7

   C. The Coverage Dispute ...............................................................8

ARGUMENT ..................................................................................................9

   A. Standard of Review...................................................................9

   B. This Action Must Be Brought in a New York Court ......................9

      1. The Forum Selection Clauses are Enforceable .........................9

      2. The Forum Selection Clauses Are Mandatory And Enforceable Under Applicable New York..........................................................11

   C. The Single Action Clause Does Not Override the Forum Selection Clauses..................................................................................15

CONCLUSION...............................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*,
    992 A.2d 1239 (Del. Ch. 2010) ...................................................................................11, 15

*Beal Sav. Bank v. Sommer*,
    324, 865 N.E.2d 1210 (N.Y. 2007)....................................................................................17

*Brooke Grp. Ltd. v. JCH Syndicate 488*,
    663 N.E.2d 635 (N.Y. 1996)...............................................................................................12

*Courtney v. Intuitive Surgical, Inc.*,
    2015 WL 6671558 (Del. Super. Ct. Oct. 30, 2015)...........................................................9

*Encompass Aviation, LLC v. Surf Air Inc.*,
    2018 WL 6713138 (S.D.N.Y. Nov. 30, 2018)...................................................................13

*Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.*,
    50 A.D.3d 185 (N.Y. 4th Dep't 2008)...............................................................................13

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs.,*
    *LLP*,
    845 N.E.2d 1265 (N.Y. 2006).............................................................................................17

*Ingres Corp. v. CA, Inc.*,
    8 A.3d 1143 (Del. 2010) .............................................................................................10, 19

*J.S. Alberici Const. Co. v. Mid-W. Conveyor Co.*,
    750 A.2d 518 (Del. 2000) ..................................................................................................11

*Koob v. IDS Fin. Servs., Inc.*,
    213 A.D.2d 26 (N.Y. 4th Dep't 1995)...............................................................................12

*Loveman v. Nusmile, Inc.*,
    2009 WL 847655 (Del. Super. Mar. 31, 2009)........................................................9, 10, 11

ii

*Masonic Home of Delaware, Inc. v. Certain Underwriters at Lloyd's London*,
   2013 WL 3006909 (Del. Super. Ct. May 22, 2013) ...........................................11

*Milmar Food Grp. II, LLC v. Applied Underwriters, Inc.*,
   85 N.Y.S.3d 347 (Sup. Ct. 2018)........................................................15

*Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. L.L.C.*,
   67 A.3d 373 (Del. 2013) ...............................................................9

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Trustwave Holdings, Inc.*,
   2016 WL 2354621 (Del. Super. Ct. May 3, 2016) .........................................10

*National Union Fire Insurance Company of Pittsburgh P.A. v. Williams*,
   223 A.D.2d 395 (N.Y. 1st Dep't 1996) ...................................................13

*Puleo v. Shore View Ctr. for Rehab. & Health Care*,
   132 A.D.3d 651 (N.Y. 2nd Dep't 2015) ...................................................14

*Stein v. United Wind, Inc.*,
   2021 WL 479878 (Sup. Ct. Feb. 8, 2021) ..........................................13, 14, 16

*Sydney Attractions Grp. Pty Ltd. v. Schulman*,
   74 A.D.3d 476 (N.Y. 1st Dep't 2010) ...................................................14

*Tourtellot v. Harza Architects*,
   55 A.D.3d 1096 (N.Y. 1st Dep't 2008) ..................................................16

*Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.*,
   2006 WL 3393259 (N.Y. Sup. Ct. November 24, 2006)......................................15

*Troy Corp. v. Schoon*,
   2007 WL 949441 (Del. Ch. Mar. 26, 2007) ..............................................15

*Westmoreland Coal Co. v. Entech, Inc.*,
   794 N.E.2d 667 (N.Y. 2003)............................................................17

**Other Authorities**

Super. Ct. Civ. R. 12(b)(3)............................................................2, 9, 19

iii

## STATEMENT OF THE CASE

Delaware is not a proper jurisdiction or venue for this coverage dispute between plaintiff AmTrust Financial Services, Inc. ("AmTrust") and Defendants Aspen Syndicate 4711 and Forge Underwriting Limited (together, "Underwriters"). The relevant policies issued by Underwriters to AmTrust provide that New York courts have exclusive jurisdiction over any dispute arising under the policies. Therefore, this Court should dismiss Underwriters from this action and require AmTrust to pursue its claim for coverage under Underwriters' policies in the New York courts.

AmTrust, which is a New York based insurance company, filed this coverage action against seven insurers, seeking coverage for an underlying securities class action styled *Martinek v. AmTrust Financial Service, Inc. et al*., Case No, 19-8030, pending in the U.S. District Court for the Southern District of New York (the "Martinek Action"), under 13 different excess directors and officers liability insurance policies described in AmTrust's complaint (the "Complaint"). This motion to dismiss applies to two of the policies referenced in the Complaint which were issued by Underwriters: Excess Directors & Officers Liability and Company Reimbursement Insurance Policy Nos. B0509FINFW1800560 (the "Fifth Excess Policy") and B0509FINFW1800561 (the "Sixth Excess Policy," and together with the Fifth Excess Policy, "Underwriters' Excess Policies"). AmTrust disputes

Underwriters' position that coverage is not available for the Martinek Action under Underwriters' Excess Policies as the Claim was not first made in the Policy Period and multiple exclusions apply.

Underwriters' Excess Policies both contain identical forum selection and choice-of-law clauses. Specifically, AmTrust and Underwriters agreed in these provisions that any dispute arising under Underwriters' Excess Policies will be subject to the *exclusive* jurisdiction of New York courts and governed by New York law. Despite this agreement, AmTrust brought this action in Delaware Superior Court.

Under both applicable New York law or Delaware law, forum selection clauses are broadly construed and strictly enforced, and AmTrust has not provided any basis to invalidate the forum selection provisions of Underwriters' Excess Policies. Therefore, this Court should grant Underwriters' motion to dismiss, as the parties have agreed Delaware is not the proper jurisdiction to decide the coverage dispute under Underwriters' Excess Policies and should require that any action be brought in a New York court, consistent with the express terms of the forum selection provisions.

## STATEMENT OF QUESTIONS INVOLVED

1. Whether, pursuant to Super. Ct. Civ. R. 12(b)(3), the Complaint should be dismissed for improper venue as against Underwriters because the Underwriters'

Excess Policies, under which this coverage dispute arises, provide that any dispute arising under those policies is subject to the exclusive jurisdiction of New York courts?

**STATEMENT OF FACTS**

**A.**     **Underwriters' Excess Policies**

The Complaint seeks coverage under a number of excess directors and officers liability insurance policies issued to AmTrust (the "Excess Policies") for the Policy Period November 29, 2018 to November 29, 2024 (the "Policy Period"). (*See* Compl. ¶¶ 3-5.) Specifically, the Excess Policies are part of the following tower of primary and excess directors and officers liability insurance policies issued to AmTrust for the Policy Period (the "Coverage Tower"):

| Layer | Insurer | Limits |
|-------|---------|--------|
| Primary | Indian Harbor (XL) | $5 million (excess of a $5 million retention) |
| First Excess | Zurich American | $5 million excess of $5 million |
| Second Excess | AXIS Insurance | $5 million excess of $10 million |
| Third Excess | Markel/Allianz | $5 million excess of $15 million |
| Fourth Excess | Hiscox Lloyd's Syndicate 033 | $5 million excess of $20 million |
| Fifth Excess | Underwriters/Arch/Markel | $15 million excess of $25 million |
| Sixth Excess | Underwriters/Arch/Markel/Allianz | $10 million excess of $40 million |
| Seventh Excess | Ironshore/HCC/Markel | $10 million excess of $50 million |

3

In this action, AmTrust names certain insurers that issued policies in the Third Excess, Fifth Excess, Sixth Excess, and Seventh Excess layers of the Coverage Tower, including Underwriters' Excess Policies.

### 1.   **The Fifth Excess Policy**

The Fifth Excess Policy, attached as Exhibit L to the Complaint, has a limit of liability of $15 million in the aggregate, with an order of 58% of 100%, excess of $25 million in the aggregate in underlying limits provided by primary Executive and Corporate Securities Liability Insurance Policy No. US0008794DO17A (the "Primary Policy", attached to the Complaint as Exhibit B) and the underlying excess policies referenced in the table above (the "Underlying Insurance", attached to the Complaint as Exhibits D, F, H, I, and J).[1]

The Fifth Excess Policy provides coverage "upon the terms, conditions and limitations of the **Primary Policy**[2] except insofar as express provision for any matter is set out in this excess policy, and only insofar as necessary, the terms, conditions and limitations set out in this excess policy will prevail over the corresponding terms, conditions and limitations of the **Primary Policy**."

---

[1] The insurers that issued the Underlying Insurance are referred to herein as the "Underlying Insurers". Aspen has a $5,500,000 share of the limit of the Fifth Excess Policy, and Forge has a $3,200,000 share of the limit of the Fifth Excess Policy.

[2] Terms in bold are defined in Underwriters' Excess Policies.

2.    **The Sixth Excess Policy**

The Sixth Excess Policy, attached as Exhibit P to the Complaint, has a limit of liability of $10 million in the aggregate, with an order of 38% of 100%, excess of $40 million in the aggregate in underlying limits provided by the Underlying Insurance and the Fourth Excess Policy.[3]

The Sixth Excess Policy also provides coverage "upon the terms, conditions and limitations of the **Primary Policy** except insofar as express provision for any matter is set out in this excess policy, and only insofar as necessary, the terms, conditions and limitations set out in this excess policy will prevail over the corresponding terms, conditions and limitations of the **Primary Policy**."

3.    **New York Exclusive Jurisdiction and Choice of Law**

Underwriters' Excess Policies each include in the Risk Details identical "Choice of Law and Jurisdiction Provisions," which provide: "Unless stated herein to the contrary, this (Re)Insurance shall be governed by and construed in accordance with the laws of US New York and the exclusive jurisdiction of the US New York courts."

Section 7 of Underwriters' Excess Policies include identical "Governing Law and Jurisdiction" clauses, which provide as follows:

---

[3] Aspen has a $2,000,000 share of the limit of the Sixth Excess Policy, and Forge has a $1,800,000 share of the limit of the Sixth Excess Policy.

The constructions, interpretation and meaning of the terms, exclusions limitations and conditions of this excess policy shall be determined in accordance with the laws of the state or country specified in the RISK DETAILS of this policy, and any dispute arising hereunder will be subject to the exclusive jurisdiction of the courts of the state or country specified in the RISK DETAILS of this policy.

Pursuant to the Choice of Law and Jurisdiction Provisions and the Governing Law and Jurisdiction Clauses (collectively, the "Forum Selection Clauses"), New York courts have exclusive jurisdiction to hear any dispute arising under Underwriters' Excess Policies and New York law applies.[4]

**4.    The Single Action Clause**

Section 8, Dispute Resolution, of Underwriters' Excess Policies provides:

8.1    In the event that a dispute arises between the **Insurer** and the **Insured** under this excess policy, the provisions of the **Primary Policy** are incorporated into this excess policy for the purposes of determining the dispute resolution procedures applicable to this excess policy.

8.2    In the event that a dispute arises between the **Insurer** and the **Insured** under this excess policy in relation to matters that are also the subject of a dispute between the **Insured** and the insurers of any **Underlying Insurance** then those disputes shall be heard together in the same court or arbitration proceedings.

Section 8.1 of Underwriters' Excess Policies is not applicable as the Primary Policy does not have provisions for dispute resolution procedures.

---

[4] Similarly, the policy for the Fourth Excess Layer of the Underlying Insurance includes identical "Choice of Law & Jurisdiction" and "Governing Law and Jurisdiction" clauses providing that New York law applies and New York courts have exclusive jurisdiction over any coverage dispute. (Complaint, Exhibit J, at 2.)

6

Section 8.2 of Underwriters' Excess Policies (the "Single Action Clause") provides that disputes with the Underlying Insurers and Underwriters shall be brought in the same court, which must be in New York pursuant to the Forum Selection Clauses.

**B.**    **The Martinek Action**

On August 30, 2019, Jan Martinek, individually and on behalf of a purported plaintiff class consisting of other persons who purchased AmTrust's six series of preferred stock, filed the Martinek Action in the U.S. District Court for the Southern District of New York. (Compl. ¶ 49.)

The Martinek Action was the latest in a series of lawsuits brought against AmTrust and its directors and officers arising out of the alleged efforts of the Karfunkel-Zyskind Family, which was the Company's majority controlling shareholder, and related entities to exercise control over AmTrust to benefit themselves and their affiliates through a November 28, 2018 take private transaction (the "Take Private Transaction"). According to the plaintiffs, AmTrust and its management made misrepresentations in proxy statements, merger documents and other public filings and statements that AmTrust's preferred stock and notes would remain publicly listed after the Take Private Transaction. (Compl. ¶ 49.)

According to court filings, AmTrust has reached a class wide settlement in the Martinek Action, but the settlement has not yet been finalized or approved by the

7

court.  (*See Martinek v. AmTrust Financial Services, Inc.*, 1:19-cv-08030, Doc. No. 87 (S.D.N.Y., April 20, 2022).)

## C.   **The Coverage Dispute**

AmTrust alleges that on January 11, 2022, it held a conference call with its insurers to discuss the Martinek Action. During that call, AmTrust allegedly asked Underwriters and other insurers to accept their coverage obligations and provide settlement authority for the Martinek Action. (Compl. ¶¶ 54-56.)

By letter dated February 10, 2022, Underwriters explained that coverage is not available for the Martinek Action under Underwriters' Excess Policies as the Claim was not first made during the Policy Period and coverage would otherwise be precluded by a number of applicable exclusions. (Compl. ¶ 57.) Underwriters also reserved their rights generally and with respect to certain potential coverage issues discussed in the letter, including whether the Underlying Insurance was fully exhausted. (Compl. ¶ 57.)

On March 11, 2022, AmTrust challenged Underwriters' denial of coverage. (Compl. ¶ 68.) On April 1, 2022, AmTrust filed this coverage action in Delaware Superior Court, despite the Forum Selection Clauses in Underwriters' Excess Policies establishing that New York courts have exclusive jurisdiction over this dispute.

# ARGUMENT

## A.   Standard of Review

In Delaware, motions to dismiss based on a forum selection clause are brought under Superior Court Civil Rule 12(b)(3), which governs improper venue. *MackRev Worldwide, Inc.*, 2020 WL 7774604, at \*6 (Del. Dec. 30, 2020); *Courtney v. Intuitive Surgical, Inc.*, 2015 WL 6671558, at \*1 (Del. Super. Ct. Oct. 30, 2015). In determining a motion to dismiss for improper venue, the Court may consider extrinsic evidence from the outset, and may grant dismissal before the commencement of discovery on the basis of affidavits and documentary evidence in the record. *Id.*

The Court should "give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation." *Loveman v. Nusmile, Inc.*, 2009 WL 847655, \*2 (Del. Super. Mar. 31, 2009) (citation omitted).

## B.   This Action Must Be Brought in a New York Court

### 1.   The Forum Selection Clauses are Enforceable

It is well-established in Delaware that a valid forum selection clause "must be enforced." *Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013) (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d

Cir. 2006) ("[A] forum-selection clause will be upheld unless the clause was obtained through fraud or overreaching.")).

The Delaware Supreme Court has explained that "where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause." *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)). The Delaware Supreme Court has also held that "[f]orum selection clauses are presumptively valid and should be specifically enforced" through an injunction. *Id.* at 1146.

A party may challenge a forum selection clause by clearly showing that "enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud and overreaching." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Trustwave Holdings, Inc.*, 2016 WL 2354621, at *4 (Del. Super. Ct. May 3, 2016) (citing *Ingres Corp.*, 8 A.3d at 1146). A forum selection clause is unreasonable only when its enforcement would seriously impair a plaintiff's ability to pursue its cause of action. *Id.* Mere inconvenience or additional expense is not the test of unreasonableness. *See Loveman*, 2009 WL 847655, at *3.

Here, AmTrust cannot meet its heavy burden to demonstrate that the Forum Selection Clauses are unenforceable as they were procured fraudulently or are otherwise unreasonable. The Forum Selection Clauses in no way impair AmTrust's

10

ability to pursue its claim, particularly in view of the fact that AmTrust's headquarters are located in New York and the underlying Martinek Action is pending in New York. *See Id.* (explaining the high burden for showing a forum selection clause is unreasonable). Moreover, as a sophisticated commercial insurer, AmTrust cannot claim that the Forum Selection Clauses were procured fraudulently or are otherwise unreasonable.

**2.     The Forum Selection Clauses Are Mandatory And Enforceable Under Applicable New York Law**

Delaware courts will grant a motion to dismiss based upon a forum selection clause where, as here, the parties "use express language clearly indicating that the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action." *Eisenbud v. Omnitech* Corp. *Solutions, Inc.*, 1996 WL 162245, *1 (Del. Ch. Mar. 21, 1996). When a contract contains a forum selection clause, "Delaware courts will interpret the forum selection clause in accordance with the law chosen to govern the contract." *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010).

In addition, Delaware courts will honor contractually-designed choice-of-law provisions so long as the jurisdiction selected has some material relationship to the transaction. *J.S. Alberici Const. Co. v. Mid-W. Conveyor Co.*, 750 A.2d 518, 520 (Del. 2000). Delaware courts routinely enforce choice-of-law provisions in insurance policies. *See Masonic Home of Delaware, Inc. v. Certain Underwriters at*

*Lloyd's London*, 2013 WL 3006909, at *3 (Del. Super. Ct. May 22, 2013), *aff'd*, 80 A.3d 960 (Del. 2013) (enforcing New York choice-of-law provision in insurance policy).

Here, there is no question that New York has a material relationship to the transaction, as AmTrust has its headquarters in New York, Underwriters' Excess Policies were issued to AmTrust in New York, and the Martinek Action for which AmTrust seeks coverage was filed in New York. (*See* Compl. ¶¶ 24, 49; Compl. Exhibit L at 1.) Thus, this Court should enforce the Forum Selection Clauses of Underwriters' Excess Policies pursuant to New York law.

In New York, "parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract. Such clauses are prima facie valid and enforceable unless shown by the resisting party to be unreasonable[.]" *Brooke Grp. Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635, 637 (N.Y. 1996) (citing *M/S Bremen*, 407 U.S. at 15); *see also Koob v. IDS Fin. Servs., Inc.*, 213 A.D.2d 26, 33 (N.Y. 4th Dep't 1995) ("It is the policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation.") (citing *Matter of Smith Barney v. Luckie*, 647 N.E.2d 1308, 1312 (N.Y. 1995)).

New York courts enforce mandatory jurisdiction clauses because they help "avoid litigation over personal jurisdiction and disputes over the application of the

long-arm statute[.]" *National Union Fire Insurance Company of Pittsburgh P.A. v. Williams*, 223 A.D.2d 395, 397–398 (N.Y. 1st Dep't 1996). As noted above, AmTrust has not provided any basis for overturning this presumption of validity or suggested in any way that the Forum Selection Clauses are unreasonable or somehow impair its rights. *See Stein v. United Wind, Inc.,* 2021 WL 479878 at \*2 (Sup. Ct. Feb. 8, 2021) (rejecting plaintiff's arguments that a forum selection clause is not enforceable because of "general allegations" of fraud or a lack of connection to the chosen state).

When addressing whether a forum selection provision requires dismissal of an action filed in a jurisdiction other than the chosen jurisdiction, New York courts consider whether the forum selection provision applies to the claims at issue, and whether it is "permissive or mandatory." *See Encompass Aviation, LLC v. Surf Air Inc.*, 2018 WL 6713138, at \*7 (S.D.N.Y. Nov. 30, 2018) ("The first order of business is to decide which forum selection clause applies to Plaintiff's claims."); *Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.*, 50 A.D.3d 185, 187 (N.Y. 4th Dep't 2008) (explaining that a forum selection clause must be mandatory to preclude litigation in other jurisdictions).

Here, the Forum Selection Clauses plainly provide that New York courts shall have *exclusive* jurisdiction to hear any dispute arising under Underwriters' Excess Policies ("this (Re)Insurance ***shall be governed*** by and construed in accordance with

13

the laws of US New York and the exclusive jurisdiction of the US New York courts")

(emphasis added).  Pursuant to applicable New York law, this contractual language

mandates that any action regarding coverage under Underwriters' Excess Policy be

brought in a New York court, and not any other jurisdiction. *See Puleo v. Shore View*

*Ctr. for Rehab. & Health Care*, 132 A.D.3d 651, 652 (N.Y. 2nd Dep't 2015)

(enforcing mandatory forum selection clause providing "exclusive jurisdiction of the

courts of the State of New York"); *Sydney Attractions Grp. Pty Ltd. v. Schulman,* 74

A.D.3d 476, 476 (N.Y. 1st Dep't 2010) (finding language that "parties submit to the

exclusive jurisdiction" of a particular court created an enforceable mandatory forum

selection clause). Therefore, the Forum Selection Clauses are mandatory, not

permissive.

Further, the Forum Selection Clauses clearly apply to AmTrust's claims

against Underwriters in this action. The Forum Selection Clauses apply to "any

dispute arising" under Underwriters' Excess Policies, and AmTrust's Complaint

asserts two causes of action against Underwriters for breach of contract and

declaratory judgment regarding coverage under Underwriters' Excess Policies. Both

causes of action expressly seek to enforce AmTrust's claimed rights under

Underwriters' Excess Policies, and the dispute with Underwriters therefore "arises"

under Underwriters' Excess Policies. *Stein*, 2021 WL 479878 at *2 ("The word 'any'

is all-encompassing language, indicating the parties' belief that all actions regarding

their relationship will be governed by the forum-selection clause."); *Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.*, 2006 WL 3393259 at * 6 (N.Y. Sup. Ct. November 24, 2006) (finding "arising under" language in forum selection clause broad enough to encompass all claims related to the contract).

Therefore, the Forum Selection Clauses are valid and must be enforced under applicable New York law. *See Milmar Food Grp. II, LLC v. Applied Underwriters, Inc.*, 85 N.Y.S.3d 347, 354-355 (Sup. Ct. 2018).[5]

## C.     The Single Action Clause Does Not Override the Forum Selection Clauses

In the Complaint, AmTrust does not mention or cite to the Forum Selection Clauses.  Instead, it attempts to avoid its binding agreement that New York courts have exclusive jurisdiction over any dispute arising from coverage under Underwriters' Excess Policies by asserting that Underwriters somehow consented to the jurisdiction of Delaware courts in the Single Action Clause. (Compl. ¶ 35.) In support of this position, AmTrust names one of the Underlying Insurers as a

---

[5] Additionally, even if Delaware law applied to Underwriters' Excess Policies, the result would be the same. *See Ashall Homes*, 992 A.2d at 1241 ("Both of the investment agreements contain unequivocal language mandating exclusive jurisdiction in the courts of England. Under well-settled precedent, this court must honor such clear contractual expressions of intent to select a particular forum."); *Troy Corp. v. Schoon*, 2007 WL 949441, at *4 (Del. Ch. Mar. 26, 2007) (finding forum selection clause that provided for "exclusive jurisdiction" in New York was mandatory and enforceable).

15

Defendant and seeks declaratory relief regarding Underwriters' reservation of rights regarding whether the Underlying Insurance has been fully exhausted. According to AmTrust, the Single Action Clause allows it to side-step the Forum Selection Clauses and bring an action against Underwriters in a court outside of New York if it simply names any of the Underlying Insurers and Underwriters in the same action. This is plainly incorrect.

The Single Action Clause does not modify the Forum Selection Clauses or otherwise address which courts have jurisdiction over a dispute arising under Underwriters' Excess Policies. In any event, under applicable New York law, forum selection clauses are favored and read broadly, and a provision modifying the permissible jurisdiction of a policy must do so clearly. *See Stein*, 2021 WL 479878 at *2 ("Public policy favors enforcement of forum-selection clauses and supports a broad reading of those clauses.") (citing *Triple Z Postal Servs., Inc.*, 2006 WL 3393259 at * 6); *see also Tourtellot v. Harza Architects*, 55 A.D.3d 1096, 1099 (N.Y. 1st Dep't 2008) (requiring "compelling and countervailing reason for excusing enforcement of this bargained-for forum selection clause").

New York law does not allow AmTrust to defeat the clear and broad Forum Selection Clauses by pointing to another provision unrelated to jurisdiction. The Single Action Clause does not revoke the exclusive jurisdiction of New York courts, and merely provides that, if the Insured has a dispute with both Underwriters and the

16

Underlying Insurers, the disputes shall be heard together in one proceeding. Nothing in the Single Action Clause addresses which courts shall have jurisdiction over the disputes, only that the proceedings shall be in the same forum. When read in conjunction with the Forum Selection Clauses, the Single Action Clause requires that any action against Underwriters and the Underlying Insurers must be brought in a single action before a New York court.

AmTrust's interpretation of the Single Action Clause would essentially read the Forum Selection Clauses out of Underwriters' Excess Policies by allowing AmTrust to bring suit under those policies in any jurisdiction where it brings a suit naming any of the Underlying Insurers. This is not so. Under black letter law, when interpreting a contract, courts cannot render any portion of the agreement meaningless. *See Beal Sav. Bank v. Sommer*, 324, 865 N.E.2d 1210, 1213 (N.Y. 2007); *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006). For this reason, a contract must be read "as a whole," and courts must interpret "every part . . . with reference to the whole." *Westmoreland Coal Co. v. Entech, Inc*., 794 N.E.2d 667, 670 (N.Y. 2003) (citation omitted).   The Forum Selection Clauses and the Single Action Clause of Underwriters' Excess Policies can be given their full meaning only if New York courts have exclusive jurisdiction over *any* dispute arising under Underwriters'

Excess Policies, including an action in which AmTrust names Underwriters and Underlying Insurers.

This is further bolstered by the terms of the Underlying Insurance. Notably, Markel, which issued a policy providing coverage below Underwriters' Excess Policies, issued a policy that contains a mandatory Bermuda arbitration clause. (*See* Complaint, Exhibit H, at § II.E.1.) AmTrust apparently recognized the Bermuda arbitration provision of Markel's policy and voluntarily dismissed Markel from this action as it must pursue its claim against Markel in Bermuda. (*See* May 9, 2022, Notice of Voluntary Dismissal of Defendant Markel Bermuda Limited.) Applying AmTrust's illogical interpretation of the Single Action Clause would require it to pursue its claims against Underwriters in a Bermuda arbitration, which would violate the Forum Selection Clauses of Underwriters' Excess Policies. Further, the Underlying Insurance policy issued by Hiscox (Complaint, Exhibit J, at 2) contains New York choice-of-law and exclusive jurisdiction provisions identical to the Forum Selection Clauses in Underwriters' Excess Policies.

To the extent that AmTrust argues that the Single Action Clause allows it to bring an action against the Excess Insurers in Delaware to avoid piecemeal litigation, this is belied by the actual policies at issue. AmTrust has already voluntarily dismissed Markel from this action due to the Bermuda arbitration provision in the Markel policy and despite the Single Action Clause. Additionally, certain of the

18

Underlying Insurance also requires AmTrust to bring any such action in New York, and nothing precludes AmTrust from bringing a single action against the remaining Defendants in New York.[6]

## <u>CONCLUSION</u>

For the foregoing reasons, pursuant to Superior Court Rule 12(b)(3), Underwriters respectfully request that this Court dismiss this action as to Underwriters pursuant to the Forum Selection Clauses of Underwriters' Excess Policies.

Dated: June 20, 2022

**PHILLIPS, MCLAUGHLIN & HALL, P.A.**

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (No. 110)
David A. Bilson (No. 4986)
1200 N. Broom Street
Wilmington, DE  19806
302-655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

Of Counsel:

Edward J. Kirk
Scott W. Schwartz
CLYDE & CO US LLP
The Chrysler Building

---

[6] Delaware courts would reach the same result. The Supreme Court of Delaware has specifically noted that where there is a group of contracts, some of which have a forum selection clause and some of which do not, the agreements "that did not contain a forum selection clause did not supersede those that did." *Ingres Corp.*, 8 A.3d at 1146 (Del. 2010) (enforcing choice-of-law provision).

19

405 Lexington Avenue, 16th Floor
New York, NY 10174
Tel: 212-710-3900
Fax: 212-710-3950

*Attorneys for Defendants Forge Underwriting Limited and Aspen Syndicate 4711*

20

EFiled: Jun 20 2022 04:40PM EDT
Transaction ID 67741990
Case No. N22C-04-010 MMJ CCLD

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## [PROPOSED] ORDER

AND NOW, this ____ day of _____, 2022, upon consideration of Defendants Forge Underwriting Limited and Aspen Syndicate 4711's Motion to Dismiss the Complaint and any response thereto,

It hereby is ORDERED AND DECREED that the Complaint is dismissed as to Defendants Forge Underwriting Limited and Aspen Syndicate 4711 and these defendants are dismissed from this action without prejudice.

_____

The Hon. Mary M. Johnston

EFiled:  Jun 20 2022 04:40PM EDT
Transaction ID 67741990
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

```
_____
                                    )
AMTRUST FINANCIAL                   )
SERVICES, INC.,                     )
                                    )
              Plaintiff,            )
                                    )
       v.                           )       C.A. No. N22C-04-010 MMJ CCLD
                                    )
FORGE UNDERWRITING                  )
LIMITED, et al.,                    )
                                    )
              Defendants.           )
_____ )
```

### NOTICE OF MOTION

TO:   Plaintiff, All Counsel of Record, and the Court:

PLEASE TAKE NOTICE that Defendants Forge Underwriting Limited and

Aspen Syndicate 4711's Motion to Dismiss the Complaint will be presented at the

convenience of the Court.

OF COUNSEL:                          PHILLIPS, MCLAUGHLIN & HALL, P.A.

Edward J. Kirk                       */s/ John C. Phillips, Jr.*
Scott W. Schwartz                    John C. Phillips, Jr. (#110)
CLYDE & CO US LLP                    David A. Bilson (#4986)
The Chrysler Building                1200 N. Broom Street
405 Lexington Avenue, 16th Floor     Wilmington, DE  19806
New York, NY 10174                   302-655-4200
212-710-3900                         jcp@pmhdelaw.com
                                     dab@pmhdelaw.com


Dated: June 20, 2022                 *Attorneys for Defendants Forge
                                     Underwriting Limited and Aspen
                                     Syndicate 4711*

**EFiled: Jun 20 2022 04:40PM EDT**
**Transaction ID 67741990**
**Case No. N22C-04-010 MMJ CCLD**

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

———————————————————————————

AMTRUST FINANCIAL
SERVICES, INC.,

          Plaintiff,

      v.

FORGE UNDERWRITING
LIMITED, et al.,

          Defendants.

———————————————————————————

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N22C-04-010 MMJ CCLD

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION

1.      This document complies with the typeface requirement of Superior Court Rule 107(b) because it has been prepared in Times New Roman 14-point typeface using Microsoft Office Professional Plus 2019.

2.      This document complies with the type-volume limitation of Superior Court Rule 107(h)(l) because it contains 4,169 words, which were counted by Microsoft Office Professional Plus 2019.

OF COUNSEL:                              PHILLIPS, MCLAUGHLIN & HALL, P.A.

Edward J. Kirk                           /s/ John C. Phillips, Jr.
Scott W. Schwartz                        John C. Phillips, Jr. (#110)
CLYDE & CO US LLP                        David A. Bilson (#4986)
The Chrysler Building                    1200 N. Broom Street
405 Lexington Avenue, 16th Floor         Wilmington, DE  19806
New York, NY 10174                       302-655-4200
212-710-3900                             jcp@pmhdelaw.com
                                         dab@pmhdelaw.com


Dated: June 20, 2022                     *Attorneys for Defendants Forge
                                         Underwriting Limited and Aspen
                                         Syndicate 4711*

EFiled:  Jun 20 2022 04:40PM EDT
Transaction ID 67741990
Case No. N22C-04-010 MMJ CCLD

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2022, I caused a copy of the foregoing document to be served on the following counsel of record via File&ServeXpress:

BERGER HARRIS LLP
David J. Baldwin
Peter C. McGivney
Zachary J. Schnapp
1105 N. Market Street, 11th Floor
Wilmington, DE 19801

SMITH, KATZENSTEIN & JENKINS LLP
Robert J. Katzenstein
Julie M. O'Dell
1000 West Street, Suite 1501
Wilmington, DE 19899


*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr.

**EFiled:  Jun 22 2022 08:34AM EDT**
**Transaction ID 67748001**
**Case No. N22C-04-010 MMJ CCLD**

June 22, 2022

**<u>VIA E-FILE & HAND DELIVERY</u>**
The Honorable Mary M. Johnston
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

    Re: *Amtrust Financial Services, Inc. v. Forge Underwriting*
       *Limited, et al.*
       C.A. No. N22C-04-010 MMJ CCLD

Dear Judge Johnston:

   Enclosed please find two (2) courtesy copies of Defendants Forge
Underwriting Limited and Aspen Syndicate 4711's Motion to Dismiss the
Complaint, Opening Brief in support, Proposed Order, Notice of Motion,
Certificate of Compliance and Certificate of Service [Transaction ID 67741990].

   I am available should the Court have any questions.

         Respectfully

         */s/ John C. Phillips, Jr.*

         John C. Phillips, Jr. (#110)

cc:  All counsel of record (via File&Serve)

**EFiled:  Jun 29 2022 03:06PM EDT**
**Transaction ID 67777038**
**Case No. N22C-04-010 MMJ CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  C.A. No. N22C-04-010 MMJ CCLD ) |
| FORGE UNDERWRITING LIMITED, et al., | ) ) ) |
| Defendants. | ) ) ) |

## STIPULATION AND [PROPOSED] ORDER
## GOVERNING BRIEFING ON MOTION TO DISMISS

WHEREAS, Defendants Forge Underwriting Limited and Aspen Syndicate 4711 (together, "Underwriters") filed a Motion to Dismiss the Complaint as against them (Trans. ID 67741990) on June 20, 2022;

WHEREAS, Underwriters and Plaintiff have agreed upon the schedule set forth below to complete briefing on Underwriters' Motion to Dismiss the Complaint;

IT IS HEREBY STIPULATED AND AGREED, by the parties hereto, subject to the approval of the Court, that:

1.      Plaintiffs shall file their Answering Brief in Opposition to Underwriters' Motion to Dismiss the Complaint on or before July 22, 2022;

2.      Underwriters shall file their Reply Brief in Support of their Motion to Dismiss the Complaint on or before August 12, 2022; and

3.      The Court will hear oral argument on Underwriters' Motion to

Dismiss the Complaint on September 14, 2022 at 11:30 a.m.


Dated: June 29, 2022

BERGER HARRIS LLP                          PHILLIPS MCLAUGHLIN & HALL, P.A.

*/s/ David J. Baldwin*                      */s/ John C. Phillips, Jr.*
David J. Baldwin (#1010)                    John C. Phillips, Jr. (#110)
Peter C. McGivney (#5779)                   David A. Bilson (#4986)
Zachary J. Schnapp (#6914)                  1200 N. Broom Street
1105 N. Market Street, 11th Floor           Wilmington, DE 19806
Wilmington, DE 19801                        (302) 655-4200
(302) 655-1140                              jcp@pmhdelaw.com
dbaldwin@bergerharris.com                   dab@pmhdelaw.com
pmcgivney@bergerharris.com
zschnapp@bergerharris.com                   *Attorneys for Defendants Forge*
                                            *Underwriting Limited & Aspen*
*Attorneys for Plaintiff*                   *Syndicate 4711*


        IT IS SO ORDERED this _____ day of _____, 2022.


                                          _____
                                                              , J.

EFiled:  Jul 06 2022 02:39PM EDT
Transaction ID 67795185
Case No. N22C-04-010 MMJ CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiffs, | |
| v. | |
| FORGE UNDERWRITING LIMITED, ASPEN SYNIDCATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSIDES INDEMNITY, INC. and U.S. SPECIALITY INSURANCE COMPANY, | C.A. No. N22C-04-010 MMJ CCLD |
| Defendants. | |

**ALLIANZ GLOBAL US RISKS INSURANCE COMPANY'S
ANSWER AND AFFIRMATIVE DEFENSES TO
AMTRUST FINANCIAL SERVICES'S COMPLAINT**

Defendant, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY ("ALLIANZ"), by and through its undersigned counsel, hereby files the following Answer and Affirmative Defenses to AmTrust Financial Services' Complaint, dated April 1, 2022, and states as follows:

**NATURE OF THE ACTION**

1.      ALLIANZ admits that it issued policy number USF00237518 and policy number USF00238018 (the "Allianz Run-Off Policies") to AmTrust, effective November 29, 2018 through November 29, 2024. To the extent paragraph one asserts legal conclusions, ALLIANZ denies such conclusions and denies any remaining allegations contained in paragraph 1.

2.      ALLIANZ admits that there is a pending securities class action called <u>Martinek v. AmTrust Financial Services, Inc. et al.</u>  ALLIANZ denies any remaining allegations contained in paragraph 2.

3.      ALLIANZ admits that ALLIANZ Run-Off Policies apply excess of and follow form to the underlying policy issued by Indian Harbor Insurance Company ("XL"), numbered US00080794DO17A (the "XL Policy"). Allianz states that the XL Policy provides the best evidence of the terms contained therein. ALLIANZ denies any remaining allegations contained in paragraph 3.

4.      ALLIANZ admits that ALLIANZ Run-Off Policies are each linked to a policy issued for the period October 21, 2017 to November 29, 2018, each of which are part of a tower of policies issued for that period (the "2017-2018 Tower"). ALLIANZ admits that the policies that make up the 2017-2018 Tower cover claims made during the period October 21, 2017 to November 29, 2018. ALLIANZ further admits that the ALLIANZ Run-Off Policies provide certain coverages to claims made during the November 29, 2018 through November 18, 2024 period. ALLIANZ further admits that the ALLIANZ Run-off Policies each contain a tie-in provision that link the ALLIANZ Run-off Policies to corresponding 2017-2018 policies such that a payment under a corresponding 2017-2018 policy, or the release of a corresponding 2017-2018 policy which exhausts the 2017-2018 corresponding policy entirely, erodes the limit of liability of the corresponding ALLIANZ run-off policy by the amount of the payment, or in the case of a policy release, exhausts the corresponding ALLIANZ run-off policy entirely. ALLIANZ denies any remaining allegations contained in paragraph 4.

5.      ALLIANZ admits the accuracy of the contents of the chart presented in paragraph 5.

6.      ALLIANZ admits that AmTrust paid it premiums in purchasing certain coverage under the ALLIANZ Run-Off Policies. ALLIANZ denies any remaining allegations contained in paragraph 6.

7.      ALLIANZ denies any legal conclusions expressed within paragraph 7. ALLIANZ denies any remaining allegations contained in paragraph 7.

8.      ALLIANZ admits that the Martinek Action was commenced on August 30, 2019 against AmTrust. ALLIANZ admits that the Martinek Action was filed and reported to ALLIANZ on March 3, 2021. Allianz denies any legal conclusions contained within paragraph 8. ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 8.

9.      ALLIANZ admits the allegations contained in paragraph 9.

10.      ALLIANZ admits that four of the insurers in the 2017-2018 Tower – XL, Zurich American Insurance Company ("Zurich"), AXIS Insurance Company ("Axis"), and Hiscox – paid all or substantially all of the amounts claimed by AmTrust in connection with AmTrust's $40 million settlement of the Consolidated Stockholder Litigation. ALLIANZ admits that AmTrust filled in the amounts owed under the settlement not paid by XL, Zurich, Axis and Hiscox and provided the settling insurers with full policy releases. ALLIANZ admits that by operation of the linked limit provisions in the connected run-off policies, the corresponding run-off policies were exhausted, including the two ALLIANZ Run-Off Policies. ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 10.

11.      ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 11.

12.     ALLIANZ admits that AmTrust has demanded settlement authority and contribution from the $15 million xs $25 million Quota Run-off Policies subscribed to by Underwriters, Arch and Markel for amounts allegedly incurred in settlement of the <u>Martinek</u> action. ALLIANZ denies that AmTrust demanded settlement authority under its $5M xs $15M Quota Policy.  ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in  paragraph 12.

13.     ALLIANZ admits that AmTrust has demanded settlement authority and contribution from the ALLIANZ $10 million xs $40 million Quota Run-off Policy (subscribed to by Underwriters, Arch, Markel and Allianz) for amounts allegedly incurred in settlement of the <u>Martinek</u> action but has been informed by AmTrust that the Martinek Action was settled below that layer. ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 13.

14.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in  paragraph 14.

15.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in  paragraph 15.

16.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 16.

17.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 17.

18.     ALLIANZ admits that the underlying policies recognize fill-in payments by the insured for purposes of erosion and exhaustion of the ALLIANZ Run-Off Policy limits. ALLIANZ admits that the ALLIANZ $5 M xs $15 M Quota Policy, policy number USF00237518, was

exhausted by a combination of a payment by Hiscox and AmTrust's contribution towards settlement. ALLIANZ admits that Hiscox received a full released as a result of the settlement. ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 18.

19.   ALLIANZ denies the allegations contained in paragraph 19.

20.   ALLIANZ denies that it has further coverage obligations under the ALLIANZ Run-Off Policies. ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 20.

21.   ALLIANZ denies that it has further coverage obligations under the ALLIANZ Run-Off Policies. ALLIANZ denies any remaining allegations contained in paragraph 21.

22.   ALLIANZ denies the allegations contained in paragraph 22.

23.   ALLIANZ admits that the limits of the ALLIANZ $5M xs of $15M Quota Run-Off Policy have been exhausted. In the alternative, if the $5M xs of $15M Quota Run-Off Policy is found to not be exhausted, ALLIANZ denies that is obligated to pay AmTrust  any amounts under that policy for losses incurred in connection with the Martinek Action. ALLIANZ denies that it owes AmTrust any payment under the ALLIANZ $10M xs $40M Quote Run-Off Policy upon attachment for Loss incurred in connection with the Martinek Action. ALLIANZ denies any remaining allegations contained in paragraph 23.

## **PARTIES**

24.   ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 24.

25.   ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in  paragraph 25.

26.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 26.

27.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 27.

28.     ALLIANZ admits that is it an insurance company incorporated in Illinois with a principal place of business in Illinois. ALLIANZ admits that it conducts business in Delaware.

29.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in  paragraph 29.

30.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in  paragraph 30.

31.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 31.

32.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 32.

## JURISDICTION AND VENUE

33.     The allegations contained in paragraph 32 are legal conclusions for which no answer is required.

34.     The allegations contained in paragraph 33 are legal conclusions for which no answer is required.

35.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 35.

36.     The allegations contained in paragraph 36 are legal conclusions for which no answer is required.

## FACTUAL BACKGROUND

### A.  The AmTrust D&O 2017-2018 and Run-off Coverage Programs

37.      ALLIANZ admits that it issued policy number USF00237518 and policy number USF00238018 (the "ALLIANZ Run-Off Policies") to AmTrust effective November 29, 2018 through November 29, 2024. ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 37.

38.      ALLIANZ states the Policy referenced is the best evidence of its contents.

39.      ALLIANZ states the Policy referenced is the best evidence of its contents. ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 39.

40.      ALLIANZ admits that the ALLIANZ Run-Off Policies follow form to the XL Primary Policy. ALLIANZ denies any remaining allegations contained in paragraph 40.

41.      The statements contains in paragraph 41 require no reply from ALLIANZ.

### B.  Payments Towards the $40 Million Settlement in the Consolidated Stockholder Litigation Exhausted the First $25 Million of Coverage Under the Run-off Tower

42.      ALLIANZ admits that XL, Zurich, Axis and Hiscox reached a settlement with AmTrust in relation to the Consolidated Stockholder Litigation and that they received full policy releases. ALLIANZ admits that the insurer payments to AmTrust combined with the contribution by AmTrust totaling $40 million exhausted the XL, Zurich, Axis and Hiscox policies and thereby exhausted the corresponding ALLIANZ Run-Off Policy by operation of the linked limit provisions. ALLIANZ denies any additional allegations contained in paragraph 42.

### C.      The Martinek Action

43.      ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 43.

44.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 44.

45.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 45.

46.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 46.

47.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 47.

48.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 48.

49.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 49.

50.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 50.

**D.     The Martinek Action is Covered by the Defendants' Policies**

51.     ALLIANZ admits that the ALLIANZ Run-Off Policies follow the XL Primary Policy with regard to terms, conditions, and limitations of the coverage provided, except where otherwise stated. ALLIANZ denies any other allegations contained in paragraph 51.

52.     ALLIANZ states the Policy referenced is the best evidence of its contents, and denies the contents constitute proof of the allegations in paragraph 52.

53.     To the extent that the allegations contained in paragraph 53 are directed towards the ALLIANZ Run-off Policies, ALLIANZ denies such allegations. To the extent that the allegations are directed towards other Defendants, ALLIANZ is without sufficient information or

knowledge to form a belief as to the truth of those allegations. ALLIANZ denies all other allegations contained in paragraph 53.

## DEFENDANTS' IMPROPER REFUSAL TO PROVIDE COVERAGE AND UNDERWRITERS' BREACH OF CONTRACT

54.     ALLIANZ admits that it participated in a conference call on January 11, 2022 with AmTrust and other insurers in which AmTrust informed the insurers that payments by certain insurers  combined with contribution by AmTrust resulted in full release of those insurers and that the corresponding Run-Off Policies were thereby also exhausted. ALLIANZ denies any other allegations contained in paragraph 54.

55.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 55.

56.     ALLIANZ admits that AmTrust requested that ALLIANZ provide authority under its $10M xs &40M Quota Share Run-off Policy if any settlement offer by AmTrust reached that layer but that the Martinek Action settled below that layer.

57.     ALLIANZ states that the referenced document is the best evidence of its contents.

58.     ALLIANZ states that the referenced document is the best evidence of its contents.

59.     ALLIANZ states that the referenced document is the best evidence of its contents and denies that the contents thereof constitute proof of the allegations contained in paragraph 59.

60.     ALLIANZ denies the allegations contained in paragraph 60.

61.     ALLIANZ states that the Martinek Action Complaint referenced is the best evidence of its contents, and denies that the contents thereof constitute proof of the allegations contained in paragraph 61.

62.     ALLIANZ states that the Martinek Action Complaint referenced is the best evidence of its contents, and denies that the contents thereof constitute proof of the allegations contained in paragraph 62. Allianz denies any other allegations contained in paragraph 62.

63.     ALLIANZ states that the relevant Derivative Action Complaints referenced are the best evidence of their contents, and denies that the contents thereof constitute proof of the allegations contained in paragraph 63.

64.     ALLIANZ states that the District Court Order referenced is the best evidence of its contents, and denies that the contents thereof constitute proof of the allegations contained in paragraph 64.

65.     Paragraph 65 contains a legal conclusion for which no response is required. To the extent a response is required, ALLIANZ denies the allegations contained in paragraph 65.

66.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations regarding Underwriter's legal positions. ALLIANZ states that the Policy provisions referenced are the best evidence of their contents, and denies that the contents thereof constitute proof of the allegations contained in paragraph 66.

67.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations regarding Underwriter's legal positions. ALLIANZ states that the Policy provisions referenced are the best evidence of their contents, and denies that the contents thereof constitute proof of the allegations contained in paragraph 67.

68.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 68. ALLIANZ further states that the referenced letter is the best evidence of its contents and denies that the contents thereof constitute proof of the allegations contained in paragraph 68.

69.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 69.

70.     ALLIANZ denies that coverage obligations under the ALLIANZ Run-Off Policies have been triggered as the $5M xs $15M Quota Policy has been exhausted and the Martinek Action settled below the attachment point of the $10M xs $40M Quota Policy.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 70.

## COUNT I – BREACH OF CONTRACT
### (Against Underwriters, Markel, ALLIANZ, Arch, Ironshore, and HCC)

71.      No response is required to paragraph 71.

72.     ALLIANZ denies the allegations contained in paragraph 72.

73.     ALLIANZ admits that AmTrust notified Allianz.  ALLIANZ denies the remaining allegations contained in paragraph 73.

74.     ALLIANZ admits the allegations contained in paragraph 74.

75.     ALLIANZ denies the allegations contained in paragraph 75.

76.     ALLIANZ denies the allegations contained in paragraph 76.

77.     ALLIANZ denies the allegations contained in paragraph 77.

78.     ALLIANZ denies the allegations contained in paragraph 78.

## COUNT II – DECLARATORY JUDGMENT
### (Against Underwriters, Markel, ALLIANZ, Arch, Ironshore, and HCC)

79.     No response is required to paragraph 79.

80.     ALLIANZ denies the allegations contained in paragraph 80.

81.     ALLIANZ admits the allegations contained in paragraph 81.

82.     ALLIANZ admits the allegations contained in paragraph 82.

83.     ALLIANZ admits the allegations contained in paragraph 83.

84.     ALLIANZ admits the allegations contained in paragraph 84.

85.     ALLIANZ admits the allegations contained in paragraph 85.

86.     ALLIANZ admits the allegations contained in paragraph 86.

87.     ALLIANZ admits the allegations contained in paragraph 87.

88.     ALLIANZ admits the allegations contained in paragraph 88.

89.     ALLIANZ admits the allegations contained in paragraph 89.

90.     ALLIANZ admits the allegations contained in paragraph 90.

91.     ALLIANZ is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 91.

92.     The allegation contained in paragraph 92 is a legal conclusion requiring no response.

93.     ALLIANZ denies that it is obligated to pay coverage under the Allianz Run-Off Policies. ALLIANZ denies any other allegations contained in paragraph 93.

## **AFFIRMATIVE DEFENSES**

ALLIANZ asserts the following affirmative defenses to the Complaint:

### **FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim upon which relief can be granted.

### **SECOND AFFIRMATIVE DEFENSE**

The obligations of ALLIANZ are defined, limited, and controlled by the terms and conditions of the relevant Policies and their endorsements, including the coverages, exclusions, deductibles and limits set forth therein.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claim is limited to the terms, conditions, exclusions and limitations of the primary insurance policy and its endorsements issued by  XL, Policy number US00080794DO17A, which the Allianz Run-Off Policies follow. The XL Primary Policy's General Conditions (B) Interrelated Claims provides:

> All Claims, Investigations, Demands, Interviews or requests to toll or waive a statute of limitations arising from the same Interrelated Wrongful Acts shall be deemed to constitute a single Claim, Investigation Demand or Interview and shall be deemed to have been made at the earliest of the time at which the earliest such Claim, Investigation Demand or Interview is made or deemed to have been made pursuant to Section VI(A) above.

The Martinek Action alleges the same Interrelated Wrongful Acts as the Class Action which was first reported under the 2017-2018 Policies such that AmTrust must look to the carriers in the 2017-2018 tower for coverage for the Martinek Action.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim is limited to the terms, conditions, exclusions and limitations of the primary insurance policy and its endorsements issued by  XL Policy, number US00080794DO17A, which the Allianz Run-Off Policies follow. Endorsement 6 of the XL Primary Policy, the Specific Investigation/Claim/Litigation/Event or Act Endorsement, provides in pertinent part:

> No coverage shall be available under this Policy for any Loss in connection with . . . any Claim, Interview or Investigation Demand based upon, arising out of, directly or indirectly resulting from in consequence of, or in any way involving an Interrelated Wrongful Act . . . .

The Martinek Action is based upon, arises out of, directly or indirectly results from in consequence of, or involves an Interrelated Wrongful Act.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claim is limited to the terms, conditions, exclusions and limitations of the primary insurance policy and its endorsements issued by   XL Policy, number US00080794DO17A, which the Allianz Run-Off Policies follow. Endorsement 5 of the XL Primary Policy provides:

> [n]o coverage will be available for any Claim, Interview or Investigation Demand based upon, arising out of, directly or indirectly resulting, in consequence of or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty or Wrongful Act committed or allegedly committed prior to October 21, 2017.

The Martinek Action is based upon or arises out of Wrongful Acts which occurred prior to October 21, 2017.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claim is limited to the terms, conditions, exclusions and limitations of the primary insurance policy and its endorsements issued by   XL Policy, number US00080794DO17A, which the Allianz Run-Off Policies follow. Endorsement 10 of the XL Primary Policy, the Tie In Limits Endorsement, provides in relevant part:

> [i]n the event that loss or damages is required to be paid under the Other Policy [defined as policy #17CKP170ADAA issued by Hiscox to AmTrust] and this Policy, the coverage provided under this Policy shall be in excess of the coverage provided under the Other Policy.

The Allianz Policy number USF00237518 Endorsement 10, Tie In Of Limits Endorsement, states in relevant part that:

> a.  [i]n the event that loss or damages is required to be paid under both this Policy and the Other Policy [defined as policy  number 17CKP170ADAA issued by Hiscox], the coverage provided under this Policy shall be in excess of the coverage provided under the Other Policy in that:

  ii. any loss or damages required to be paid under the Other Policy shall be paid fully prior to the payment of any loss or damages under this Policy; and

  iii. any payment of Loss or damages under the Other Policy will proportionally reduce the maximum aggregate limit of liability for all Loss or damages on account of all claims for this Policy. Such proportion shall be the amount paid under the Other Policy divided by the Other Policy's overall Limit of Liability.

 b. The Insurer will have no obligation under this Policy to make any payment of Loss or damages to the extent that the Other Policy's aggregate limit of liability is fully exhausted.

The settlement of the Class Action fully depleted the limits of the Hiscox Policy and has thereby exhausted the limits of the corresponding Allianz policy numbered USF00237518.

## EIGHTH AFFIRMATIVE DEFENSE

Allianz reserves the right to assert such other or further defenses that may become apparent from discovery and/or investigation.

**WHEREFORE**, ALLIANZ respectfully requests judgment in its favor.

    Respectfully Submitted,

    LEWIS BRISBOIS BISGAARD
    & SMITH LLP

OF COUNSEL:

Jeffrey Gaylord, Esquire    By: */s/ Francis G.X. Pileggi*
LEWIS BRISBOIS BISGAARD     Francis G.X. Pileggi (No. 2624)
 & SMITH LLP        Ciro C. Poppiti, III (No. 4905)
77 Water Street        500 Delaware Avenue, Suite 700
Suite 2100         Wilmington, DE 19801
New York, NY 10005      (302) 985-6000
Jeffrey.Gaylord@LewisBrisbois.com  Francis.Pileggi@LewisBrisbois.com
           Ciro.Poppiti@LewisBrisbois.com
Dated:  July 6, 2022      *Attorneys for Allianz Global US Risks*
           *Insurance Company*

EFiled:  Jul 06 2022 02:39PM EDT
Transaction ID 67795185
Case No. N22C-04-010 MMJ CCLD

**SUPERIOR COURT**
**CIVIL CASE INFORMATION STATEMENT (CIS)**

*COUNTY:*      **NEW CASTLE**                        *CIVIL ACTION NUMBER:* N22C-04-010 MMJ CCLD

| | |
|---|---|
| Caption:<br>AMTRUST FINANCIAL SERVICES, INC.<br><br>       Plaintiff<br><br>       v.<br><br>FORGE UNDERWRITING LIMITED, ASPEN SYNIDCATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSIDE INDEMNITY, INCL and U.S. SPECIALITY INSURANCE COMPANY,<br><br>       Defendants. | Civil Case Code __CCLD__<br><br>Civil Case Type __Complex Commercial Litigation Division__<br>       (SEE REVERSE SIDE FOR CODE AND TYPE)<br><br>Mandatory Non-Binding Arbitration (MNA) _____<br><br>Name and Status of Party filing document:<br><br>Defendant, Allianz Global US Risks Insurance Company<br><br>Document Type:(E.G.; COMPLAINT: ANSWER WITH COUNTERCLAIM)<br><br>Defendant Allianz Global US Risks Insurance Company's Answer and Affirmative Defenses to Amtrust Financial Services's Complaint<br><br>       JURY DEMAND  Yes ____ No.  X |
| ATTORNEY NAME (S):<br><br> Francis G.X. Pileggi.<br>ATTORNEY ID (S):<br><br> Bar ID No. 2624<br>FIRM NAME:<br><br>  Lewis Brisbois Bisgaard & Smith, LLP<br><br>ADDRESS:<br><br>  500 Delaware Avenue, Suite 700<br><br>  Wilmington, DE   19801<br>TELEPHONE NUMBER:<br><br>  (302) 985-6000<br>FAX NUMBER:<br><br>  (302) 985-6001<br>E-MAIL ADDRESS(S):<br><br>  Francis.Pileggi@lewisbrisbois.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE`S INITIALS<br><br>_____<br><br>_____<br>EXPLAIN THE RELATIONSHIP(S):<br><br>_____<br><br>_____<br><br>_____<br><br>_____<br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br><br>_____<br><br>_____<br><br>(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE) |

**THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED.  THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.**

EFiled:  Jul 06 2022 02:39PM EDT
Transaction ID 67795185
Case No. N22C-04-010 MMJ CCLD

## <u>CERTIFICATE OF SERVICE</u>

I, Francis G.X. Pileggi, Esquire, hereby certify on this date, a true and

correct copy of the foregoing Allianz Global US Risks Insurance Company's

Answer and Affirmative Defenses to Amtrust Financial Services's Complaint, and

Civil Case Information Statement was served via *File & ServeXpress* to the

following:

David J. Baldwin, Esquire
Peter C. McGivney, Esquire
Zachary J. Schnapp, Esquire
Berger Harris LLP
1105 N. Market Street, 11th Floor
Wilmington, DE  19801

John C. Phillips, Jr., Esquire
David A. Bilson, Esquire
Phillips, McLaughlin & Hall, P.A.
1200 N. Broom Street
Wilmington, DE  19806

Robert J. Katzenstein, Esquire
Julie M. O'Dell, Esquire
Smith, Katzenstein & Jenkins, LLP
1000 West Street, Suite 1501
P.O. Box 410
Wilmington, DE  19899


    */s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (Bar No. 2624)


Dated:  July 6, 2020

**EFiled:  Jul 20 2022 12:22PM EDT**
**Transaction ID 67839710**
**Case No. N22C-04-010 MMJ CCLD**

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | : |
| | : |
| | :   C.A. No. N22C-04-010 MMJ CCLD |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSIDES INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | : |
| | : |
| Defendants. | : |

## DEFENDANT ARCH INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Arch Insurance Company ("Arch"), by counsel, responds to the numbered allegations of the Complaint of Plaintiff AmTrust Financial Services, Inc. ("Plaintiff" or "AmTrust"), with paragraph numbers corresponding to those used in the Complaint.  Arch denies all allegations in the Complaint except as expressly stated herein.  The headings in this Answer correspond to the headings used in the Complaint and do not constitute allegations by Arch.

## NATURE OF THE ACTION

1.      No response is required to paragraph 1 to the extent it purports to characterize the Complaint.  To the extent that a response is deemed required, Arch denies any of the allegations set forth in paragraph 1 contending or suggesting that Arch has breached any obligations under Arch Essential Excess Policy, No. DOX1000029-00 or Arch Essential Excess Policy, No. DOX1000030-00 (together the "Arch Policies") or that Plaintiffs are entitled to the relief sought in the Complaint.

2.      No response is required to paragraph 2 to the extent it purports to characterize the Complaint.  To the extent that a response is deemed required, Arch denies any of the allegations set forth in paragraph 2 contending or suggesting that Arch has breached any obligations under the Arch Policies or that Plaintiffs are entitled to the relief sought in the Complaint. Further answering, Arch admits that the Martinek Action (as defined in the Complaint) is pending in the U.S. District Court for the Southern District of New York.

3.      Arch admits that the Arch Policies provide follow-form coverage in excess of the XL Primary Policy (as defined in the Complaint), except as otherwise provided in the Arch Policies. Further answering, the XL Primary Policy and Arch Policies speak for themselves and Arch denies any allegation inconsistent with their terms.

2

4.     The allegations of paragraph 4 purport to characterize the Excess Run-Off Policies, which speak for themselves. Arch denies any allegation inconsistent with the terms of the Excess Run-Off Policies.

5.     The allegations of paragraph 5 purport to characterize the policies in the 2017-2018 Tower and 2018-2024 Tower (as defined in the Complaint). The policies of the 2017-2018 Tower and 2018-2024 Tower speak for themselves and Arch denies any allegations inconsistent with their terms. Further answering, the Arch Policies' Policy Periods are November 20, 2018 through November 29, 2024.

6.     Arch admits that AmTrust paid premiums for the Arch Policies. Arch denies the remaining allegations of paragraph 6.

7.     No response is required to paragraph 7 to the extent it purports to characterize the Complaint.  To the extent that a response is deemed required, Arch denies any of the allegations set forth in paragraph 7 contending or suggesting that Arch has breached any obligations under the Arch Policies or that Plaintiffs are entitled to the relief sought in the Complaint.

8.     Arch admits that the Martinek Action was commenced on August 30, 2019 and that it was reported to Arch under the Arch Policies. The remaining allegations of paragraph 8 constitute legal conclusions to which no response is required and characterizations of filings in the Martinek Action, which speak for

3

themselves. Arch denies any allegations inconsistent with the filings in the Martinek Action.

9.      Arch admits the allegations of the first sentence of paragraph 9. The second sentence of paragraph 9 purports to characterize filings in the Consolidated Stockholder Litigation, which speak for themselves. Arch denies any allegations in the second sentence of paragraph 9 inconsistent with the filings in the Consolidated Stockholder Litigation.

10.     As to the first two sentences of paragraph 10, Arch admits that (1) XL, Zurich, and AXIS paid all or substantially all of the limits of liability of certain of their respective policies in accordance with settlement agreement with AmTrust, and (2) AmTrust settled the Consolidated Stockholder Litigation for $40 million. The third sentence of paragraph 10 constitutes a legal conclusion to which no response is required. To the extent that a response is deemed required, Arch denies the allegations of the third sentence of paragraph 10. Arch lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10, and on that basis denies them.

11.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11, and on that basis denies them.

12.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence in paragraph 12, and on that basis

denies them. In response to the remaining allegations of paragraph 12, Arch admits that AmTrust has sought coverage under the Arch Policies but denies any implication that AmTrust is entitled to the coverage demanded.

13.     Arch admits that AmTrust has sought coverage under the Arch Policies but denies any implication that AmTrust is entitled to the coverage demanded. Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13, and on that basis denies them.

14.     Arch admits that AmTrust has sought coverage under the Arch Policies but denies any implication that AmTrust is entitled to the coverage demanded. Arch lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14, and on that basis denies them.

15.     The allegations of paragraph 15 consist of legal conclusions to which no response is required and characterizations of a February 10, 2022 letter from Underwriters, which speaks for itself. Arch denies any allegations inconsistent with Underwriters' February 10, 2022 letter. To the extent a response is deemed required to the legal conclusions set forth in paragraph 15, Arch denies the same.

16.     Arch denies the allegations of paragraph 16.

17.     The allegations of paragraph 17 purport to characterize a February 10, 2022 letter from Underwriters, which speaks for itself. Arch denies any allegations inconsistent with Underwriters' February 10, 2022 letter.

18.     The allegations in paragraph 18 constitute legal conclusions to which no response is necessary.  To the extent that a response is deemed to be necessary, Arch denies the allegations.

19.     The allegations in paragraph 19 constitute characterizations of AmTrust's Complaint and legal conclusions to which no response is necessary.  To the extent that a response is deemed to be necessary, Arch denies the allegations.

20.     Arch admits that it has not accepted coverage for any settlement of the Martinek Action but denies that it has any obligation to do so. Arch lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20, and on that basis denies them.

21.     Arch denies the allegations of paragraph 21.

22.     No response is required to paragraph 22 to the extent it purports to characterize the Complaint.  To the extent that a response is deemed required, Arch denies any of the allegations set forth in paragraph 22 contending or suggesting that Arch has breached any obligations under the Arch Policies or that Plaintiffs are entitled to the relief sought in the Complaint.

23.     No response is required to paragraph 23 to the extent it purports to characterize the Complaint.  To the extent that a response is deemed required, Arch denies any of the allegations set forth in paragraph 23 contending or suggesting that

6

Arch has breached any obligations under the Arch Policies or that Plaintiffs are entitled to the relief sought in the Complaint.

## PARTIES

24.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24, and on that basis denies them.

25.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25, and on that basis denies them.

26.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, and on that basis denies them.

27.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27, and on that basis denies them.

28.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28, and on that basis denies them.

29.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29, and on that basis denies them.

30.     Arch admits that it is an insurance company incorporated in Missouri but denies that its principal place of business is in Missouri. Arch further admits that it conducts business in the State of Delaware.

31.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, and on that basis denies them.

7

32.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32, and on that basis denies them.

## JURISDICTION AND VENUE

33.     The allegations of paragraph 33 constitute legal conclusions to which no response is required.

34.     The allegations of paragraph 34 constitute legal conclusions to which no response is required.

35.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35, and on that basis denies them.

36.     The allegations of paragraph 36 constitute legal conclusions to which no response is required.

## FACTUAL BACKGROUND

**A.      The AmTrust D&O 2017-2018 and Run-off Coverage Program.**

37.     Arch admits that it issued the Arch Policies to AmTrust for the Policy Period November 20, 2018 to November 29, 2024. Further answering, the D&O Policies speak for themselves, and Arch denies any allegations inconsistent with the terms of the D&O Policies.

38.     Paragraph 38 purports to characterize the terms of the XL Primary Policy, which speaks for itself. Arch denies any allegations inconsistent with the terms of the XL Primary Policy.

8

39.     Paragraph 39 purports to characterize the terms of the XL Primary Policy, which speaks for itself. Arch denies any allegations inconsistent with the terms of the XL Primary Policy.

40.     Arch admits that the Arch Policies generally follow form to the XL Primary Policy, except as otherwise stated in the Arch Policies. Further answering, the Arch Policies speak for themselves, and Arch denies any allegations inconsistent with the terms of the Arch Policies. Arch lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 40, and therefore denies them.

41.     Arch lacks knowledge or information sufficient to admit or deny the allegations in paragraph 41, and therefore denies them.

**B.     Payments Towards the $40 Million Settlement in the Consolidated Stockholder Litigation Exhausted the First $25 Million of Coverage Under the Run-Off Tower.**

42.     Arch admits the allegations of the first two sentences of paragraph 42. The fourth sentence of paragraph 42 constitutes a legal conclusion to which no response is required. To the extent that a response is deemed required, Arch denies the allegations of the fourth sentence of paragraph 42. Arch lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 42, and on that basis denies them.

9

**C.    The Martinek Action.**

43.    Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43, and on that basis denies them.

44.    Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44, and on that basis denies them.

45.    Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45, and on that basis denies them.

46.    Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46, and on that basis denies them.

47.    Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47, and on that basis denies them.

48.    Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48, and on that basis denies them.

49.    Paragraph 49 purports to characterize filings in the Martinek Action, which speak for themselves. Arch denies any allegation inconsistent with the filings in the Martinek Action.

50.    Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50, and on that basis denies them.

**D.    The Martinek Action is Covered by the Defendants' Policies.**

10

51.     Arch admits that the Arch Policies generally follow form to the XL Primary Policy, except as otherwise stated in the Arch Policies. Further answering, the Arch Policies speak for themselves, and Arch denies any allegations inconsistent with the terms of the Arch Policies. Arch lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 51, and therefore denies them.

52.     Paragraph 52 purports to quote from and characterize the XL Primary Policy, which speaks for itself. Arch denies any allegation inconsistent with the XL Primary Policy.

53.     To the extent that the allegations of paragraph 53 are directed to Arch, Arch denies them. To the extent that the allegations of paragraph 53 are directed to other defendants, Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53, and on that basis denies them.

## DEFENDANTS' IMPROPER REFUSAL TO PROVIDE COVERAGE AND UNDERWRITERS' BREACH OF CONTRACT

54.     Arch admits that it participated in a January 11, 2022 phone conference with AmTrust and other insurers in which AmTrust asserted that payments by certain insurers combined with contribution by AmTrust resulted in full release of those insurers and that the corresponding Run-Off Policies were thereby also exhausted. Arch denies the remaining allegations of paragraph 54.

11

55.     Arch lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55, and on that basis denies them.

56.     Arch admits the allegations of paragraph 56 but denies any implication that that the Arch Policies provide the coverage requested.

57.     The allegations of paragraph 57 purport to characterize a February 10, 2022 letter from Underwriters, which speaks for itself. Arch denies any allegations inconsistent with Underwriters' February 10, 2022 letter.

58.     The allegations of paragraph 58 consist of legal conclusions to which no response is required and characterizations of a February 10, 2022 letter from Underwriters, which speaks for itself. Arch denies any allegations inconsistent with Underwriters' February 10, 2022 letter. To the extent a response is deemed required to the legal conclusions set forth in paragraph 58, Arch denies the same.

59.     The allegations of paragraph 59 consist of legal conclusions to which no response is required and characterizations of a February 10, 2022 letter from Underwriters, which speaks for itself. Arch denies any allegations inconsistent with Underwriters' February 10, 2022 letter. To the extent a response is deemed required to the legal conclusions set forth in paragraph 59, Arch denies the same.

60.     Arch denies the allegations of paragraph 60.

61.     Paragraph 61 purports to characterize filings in the Martinek Action, which speak for themselves. Arch denies any allegation inconsistent with the filings in the Martinek Action.

62.     The allegations of paragraph 62 consist of legal conclusions to which no response is required and characterizations of filings from the Consolidated Stockholder Litigation, which speak for themselves. Arch denies any allegations inconsistent with filings in the Consolidated Stockholder Litigation. To the extent a response is deemed required to the legal conclusions set forth in paragraph 62, Arch denies the same.  In further response, Arch denies the last sentence of paragraph 62.

63.     Arch denies the allegations of the first sentence of paragraph 63.  The remaining allegations of paragraph 63 consist of legal conclusions to which no response is required and characterizations of filings from the Derivative Actions, which speak for themselves. Arch denies any allegations inconsistent with filings in the Derivative Actions. To the extent a response is deemed required to the legal conclusions set forth in paragraph 63, Arch denies the same.

64.     Arch denies the allegations of the first sentence of paragraph 64.  The remaining allegations of paragraph 64 consist of legal conclusions to which no response is required and characterizations of a court order from the Martinek Action, which speaks for itself. Arch denies any allegations inconsistent with the referenced

13

order from the Martinek Action. To the extent a response is deemed required to the legal conclusions set forth in paragraph 64, Arch denies the same.

65.     The allegations of paragraph 65 consist of legal conclusions to which no response is required. To the extent a response is deemed required, Arch denies the allegations of paragraph 65.

66.     Arch denies the opening clauses of paragraph 66.  The remaining allegations of paragraph 66 consist of legal conclusions to which no response is required and characterizations of correspondence from Underwriters, which speaks for itself. Arch denies any allegations inconsistent with the referenced Underwriters' correspondence. To the extent a response is deemed required to the legal conclusions set forth in paragraph 66, Arch denies the same.

67.     Arch denies the allegations of the first sentence of paragraph 67.  The remaining allegations of paragraph 67 consist of legal conclusions to which no response is required and characterizations of correspondence from Underwriters, which speaks for itself. Arch denies any allegations inconsistent with the referenced Underwriters' correspondence. To the extent a response is deemed required to the legal conclusions set forth in paragraph 67, Arch denies the same.

68.     The allegations of paragraph 68 purport to characterize a March 11, 2022 letter from AmTrust, which speaks for itself. Arch denies any allegations

14

inconsistent with AmTrust's March 11, 2022 letter and denies any implication that the assertions in the letter are correct.

69.    Paragraph 69 makes no allegations against Arch and, therefore, no response from Arch is required. To the extent a response is deemed required, Arch denies the allegations in paragraph 69.

70.    Arch admits that it has not accepted the coverage requested by AmTrust related to the Martinek Action but denies that it has any obligation to do so. Arch lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 70, and on that basis denies them.

## COUNT I – BREACH OF CONTRACT
## (Against Underwriters, Markel, Allianz, Arch, Ironshore, and HCC)

71.    Arch incorporates by reference its responses above as if fully set forth herein.

72.    Arch denies the allegations of paragraph 72.

73.    Arch admits that it received noticed of the Martinek Action. Arch denies the remaining allegations of paragraph 73.

74.    Arch denies the allegations of the first sentence of paragraph 74.  The remaining allegations of paragraph 74 consist of legal conclusions to which no response is required and characterizations of the XL Primary Policy and Arch Policies, which speak for themselves. Arch denies any allegations inconsistent with

15

the XL Primary Policy or Arch Policies. To the extent a response is deemed required to the legal conclusions set forth in paragraph 74, Arch denies the same.

75.    Arch denies the allegations of paragraph 75.

76.    Arch denies the allegations of paragraph 76.

77.    Arch denies the allegations of paragraph 77.

78.    Arch denies the allegations of paragraph 78.

**COUNT II – DECLARATORY JUDGMENT
AS TO EXHAUSTION OF UNDERLYING INSURANCE
(Against All Defendants)**

79.    Arch incorporates by reference its responses above as if fully set forth herein.

80.    Arch denies the allegations of paragraph 80.

81.    Arch admits that AmTrust contributed towards settlement of the Consolidated Stockholder Litigation and settled coverage disputes with XL, Zurich, Axis, and Hiscox for full policy releases. The remaining allegations of paragraph 81 constitute legal conclusions to which no response is required. To the extent a response is deemed required, Arch denies the remaining allegations of paragraph 81.

82.    The allegations of paragraph 82 purport to characterize a settlement agreement with XL, which speaks for itself. Arch denies any allegations inconsistent with the settlement agreement with XL.

16

83.     The allegations of paragraph 83 constitute legal conclusions to which no response is required. To the extent a response is deemed required, Arch denies the allegations.

84.     The allegations of paragraph 84 purport to characterize a settlement agreement with Zurich, which speaks for itself. Arch denies any allegations inconsistent with the settlement agreement with Zurich.

85.     The allegations of paragraph 85 constitute legal conclusions to which no response is required. To the extent a response is deemed required, Arch denies the allegations.

86.     The allegations of paragraph 86 purport to characterize a settlement agreement with Axis, which speaks for itself. Arch denies any allegations inconsistent with the settlement agreement with Axis.

87.     The allegations of paragraph 87 constitute legal conclusions to which no response is required. To the extent a response is deemed required, Arch denies the allegations.

88.     The allegations of paragraph 88 purport to characterize a settlement agreement with Hiscox, which speaks for itself. Arch denies any allegations inconsistent with the settlement agreement with Hiscox.

17

89.     The allegations of paragraph 89 constitute legal conclusions to which no response is required. To the extent a response is deemed required, Arch denies the allegations.

90.     The allegations of paragraph 90 constitute legal conclusions to which no response is required. To the extent a response is deemed required, Arch denies the allegations.

91.     Arch admits the allegations of paragraph 91.

92.     The allegations of paragraph 92 constitute legal conclusions to which no response is required. To the extent a response is deemed required, Arch denies the allegations.

93.     No response is required to paragraph 93 to the extent it purports to characterize the Complaint.  To the extent that a response is deemed required, Arch denies any of the allegations set forth in paragraph 93 contending or suggesting that Arch has breached any obligations under the Arch Policies or that Plaintiffs are entitled to the relief sought in the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a cause of action against Arch upon which relief may be granted.

18

## Second Affirmative Defense

The Complaint against Arch is barred to the extent that it is not ripe or is nonjusticiable.

## Third Affirmative Defense

Arch has not breached any duty due and owing to AmTrust.

## Fourth Affirmative Defense

Arch has not breached any contract with AmTrust.

## Fifth Affirmative Defense

AmTrust is not entitled to the relief sought in the Complaint from Arch based upon the provisions, terms, and conditions of the XL Primary Policy and the Arch Policies.

## Sixth Affirmative Defense

Arch may have additional defenses that cannot be articulated because Arch does not have all documents or information bearing on insurance coverage issues. Arch reserves the right to reevaluate, reassess, and replead affirmative defenses to the extent additional issues arise.

WHEREFORE, Defendant Arch Insurance Company respectfully requests that the Complaint be dismissed with prejudice, that judgment be entered in Arch's favor, and that Arch be awarded its costs and such other and further relief as the Court may deem just and proper.

Dated: July 20, 2022

SMITH KATZENSTEIN & JENKINS LLP

_/s/ Robert J. Katzenstein_
Robert J. Katzenstein (No. 378)
Julie M. O'Dell (No. 6191)
The Brandywine Building
1000 North West Street, Suite 1501
Wilmington, DE 19801
302-652-8400
rjk@skjlaw.com
jmo@skjlaw.com

_Attorneys for Defendant Arch Insurance Company_

Of counsel:

Michael Goodstein
James M. Young
BAILEY CAVALIERI LLC
10 W. Broad St., Suite 2100
Columbus, Ohio 43215
(614) 221-3155
mgoodstein@baileycav.com
jyoung@baileycav.com

**SUPERIOR COURT**

**CIVIL CASE INFORMATION STATEMENT (CIS)**

EFiled:  Jul 20 2022 12:22PM EDT
Transaction ID 67839710
Case No. N22C-04-010 MMJ CCLD

COUNTY:     [N]     K     S        CIVIL ACTION NUMBER: N22C-04-010 MMJ CCLD

| | |
|---|---|
| Caption:<br><br>AMTRUST FINANCIAL SERVICES, INC.<br><br>_____ Plaintiff,<br><br>v. _____<br><br>FORGE UNDERWRITING LIMITED, ET AL.,<br><br>_____ Defendants. | Civil Case Code:___CCLD_____<br><br>Civil Case Type: Complex Commercial Litigation<br><br>Name and Status of Party filing document:<br>ARCH INSURANCE COMPANY, DEFENDANT<br><br>Document Type: (E.G;, COMPLAINT; ANSWER WITH COUNTERCLAIM)<br><br>ANSWER and AFFIRMATIVE DEFENSES<br><br>JURY DEMAND: YES _____ NO __XX_____ |
| ATTORNEY NAME(S):<br>Robert J. Katzenstein<br>Julie M. O'Dell<br><br>ATTORNEY ID(S):<br>378<br>6191<br>FIRM NAME:<br>Smith, Katzenstein & Jenkins LLP<br><br>ADDRESS:<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE 19899<br>TELEPHONE NUMBER:<br>302-652-8400<br>FAX NUMBER:<br>302-652-8405<br>E-MAIL ADDRESS:<br>rjk@skjlaw.com<br>jmo@skjlaw.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE=S INITIALS:<br><br>_____<br><br>_____<br><br>EXPLAIN THE RELATIONSHIP(S):_____<br><br>_____<br><br>_____<br><br>_____<br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br>_____<br><br>_____<br><br>(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE) |

**THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED.  THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.**

EFiled:  Jul 20 2022 12:22PM EDT
Transaction ID 67839710
Case No. N22C-04-010 MMJ CCLD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 20, 2022, a true and correct copy of the

foregoing DEFENDANT ARCH INSURANCE COMPANY'S ANSWER AND

AFFIRMATIVE DEFENSES was served on all counsel of record by

File&ServeXpress.


_____/s/ Robert J. Katzenstein_____
Robert J. Katzenstein (No. 378)

EFiled: Jul 22 2022 02:29PM EDT
Transaction ID 67850545
Case No. N22C-04-010 MMJ CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiff, | |
| v. | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | **TRIAL BY JURY OF TWELVE DEMANDED** |
| Defendants. | |

## ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS FORGE UNDERWRITING LIMITED AND ASPEN SYNDICATE 4711'S MOTION TO DISMISS THE COMPLAINT

Of Counsel:

Peter M. Gillon (*pro hac vice*)
Tamara D. Bruno (*pro hac vice*)
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Tel: (202) 663-8000
peter.gillon@pillsburylaw.com
tamara.bruno @pillsburylaw.com

Dated: July 22, 2022
Wilmington, Delaware

**BERGER HARRIS LLP**

David J. Baldwin (DE ID No. 1010)
Peter C. McGivney (DE ID No. 5779)
1105 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel.: (302) 655-1140
Fax: (302) 655-1131
dbaldwin@bergerharris.com
pmcgivney@bergerharris.com

*Attorneys for Plaintiff AmTrust Financial Services, Inc.*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................1

FACTUAL BACKGROUND................................................................................3

ARGUMENT .....................................................................................................6

I.     BECAUSE THERE IS NO CONFLICT BETWEEN NEW YORK AND
       DELAWARE LAW ON THE APPLICATION OF FORUM SELECTION
       CLAUSES, DELAWARE LAW APPLIES. ...................................................6

II.    THE EXCESS POLICIES' FORUM SELECTION CLAUSES INCLUDE
       EXPRESS EXCEPTIONS TO A NEW YORK FORUM BASED ON
       OTHER POLICY TERMS. ............................................................................8

III.   DELAWARE IS A PROPER FORUM FOR THIS DISPUTE UNDER THE
       SINGLE ACTION CLAUSE. ......................................................................12

       A.     This Litigation Falls Under the Terms of the Single Action
              Clause. ............................................................................................12

       B.     The Single Action Clause Requires Forge and Aspen Join
              Dispute Resolution Proceedings in Forums Other Than New
              York Courts. ....................................................................................13

       C.     The Purpose of the Single Action Clause Requires Forge and
              Aspen Submit to Jurisdiction in Forums Other Than New York
              Courts. .............................................................................................16

CONCLUSION................................................................................................1919

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Ashall Homes Ltd. v. ROK Entm't Group Inc.*,
   992 A.2d 1239 (Del. Ch. 2010) ........................................................10

*BAM Int'l, LLC v. MSBA Group Inc.*,
   2021 WL 5905878 (Del. Ch. Dec. 14, 2021)......................................17

*Beal Sav. Bank v. Sommer*,
   865 N.E.2d 1210, 1213 (N.Y. 2007)...................................................14

*Brooke Group Ltd. v. JCH Syndicate 488*,
   87 N.Y.2d 530 (1996) .........................................................................11

*D.H. Blair & Co., Inc. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006) .................................................................11

*Deuley v. DynCorp Intern., Inc.*,
   8 A.3d 1156 (Del. 2010) .......................................................................7

*Duff v. Innovative Discovery LLC*,
   2012 WL 6096586 (Del. Ch. Dec. 7, 2012)....................................8, 15

*Eisenbud v. Omnitech Corp. Sols., Inc.*,
   1996 WL 162245 (Del. Ch. Mar. 21, 1996) ...................................8, 11

*Encompass Aviation, LLC v. Surf Air Inc.*,
   2018 WL 6713138 (S.D.N.Y. Nov. 30, 2018)....................................11

*Enel Green Power N. Am., Inc. v. Geronimo Energy, LLC*,
   2019 WL 4805659 (S.D.N.Y. Sept. 30, 2019) ...................................14

*Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.*,
   851 N.Y.S.2d 311 (4th Dept. 2008)....................................................11

*First Ins. Funding Corp. v. Kass*,
   920 N.Y.S.2d 311 (1st Dept. 2011) ....................................................17

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP,*
   845 N.E.2d 1265, 1267 (N.Y. 2006)...................................................14

ii

*Ingres Corp. v. CA, Inc.*,
  8 A.3d 1143 (Del. 2010) ....................................................................10

*In re Bay Hills Emerging Partners I, L.P.*,
  2018 WL 3217650 (Del. Ch. July 2, 2018) ......................................7

*Loveman v. Nusmile, Inc.*,
  2009 WL 847655 (Del. Super. Mar. 31, 2009)...........................10, 11

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)...............................................................................11

*Martinek v. AmTrust Financial Service, Inc. et al.*,
  Case No: 19-8030 (S.D.N.Y.).............................................................6

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Oliver*, 2016 WL 344980
  (S.D.N.Y. Jan. 27, 2016), *aff'd sub nom.* 681 F. App'x 64 (2d Cir. 2017).......14

*Milmar Food Group II, LLC v. Applied Underwriters, Inc.*,
  85 N.Y.S.3d 347 (N.Y. Sup. Ct. 2018) ............................................11

*Murphy v. Pentwater Capital Mgmt. LP*,
  2017 WL 5068572 (Del. Super. Oct. 31, 2017) ...............................17

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*,
  922 A.2d 417 (Del. Ch. 2007) .........................................................18

*Nat'l Indus. Group (Holding) v. Carlyle Inv. Mgmt. L.L.C.*,
  67 A.3d 373 (Del. 2013) ...................................................................10

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Trustwave Holdings, Inc.*,
  2016 WL 2354621 (Del. Super. May 3, 2016)............................11, 15

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Williams*,
  223 A.D.2d 395 (N.Y. Sup. Ct. 1st Dept. 1996)...............................11

*Ne. & Cent. Contractors, Inc. v. Quanto Capital, LLC*,
  203 A.D.3d 925 (N.Y. Sup. Ct. 2nd Dept. 2022) ........................18, 19

*Partners & Simons, Inc. v. Sandbox Acquisitions,* LLC,
  2021 WL 3161651 (Del. Ch. July 26, 2021) ...................................17

*Puleo v. Shore View Ctr. for Rehab. & Health Care*,
    132 A.D.3d 651 (N.Y. Sup. Ct. 2nd Dept. 2015) ...............................................11

*RSUI Indem. Co. v. Murdock*,
    248 A.3d 887 (Del. 2021) .................................................................................14

*Stein v. United Wind, Inc*.,
    139 N.Y.S.3d 520 (N.Y. Sup. Ct. 2021)............................................................11

*Sydney Attractions Group Pty Ltd. v. Schulman*,
    74 A.D.3d 476 (N.Y. Sup. Ct. 1st Dept. 2010)...................................................11

*Triple Z Postal Services, Inc. v. United Parcel Serv., Inc*.,
    831 N.Y.S.2d 357 (N.Y.Sup. Ct. 2006)..............................................................11

*Troy Corp. v. Schoon*,
    2007 WL 949441 (Del. Ch. Mar. 26, 2007) .........................................7, 8, 9, 15

*Wilmington Sav. Fund Soc'y, FSB v. Caesars Entm't Corp.*,
    2015 WL 1306754 (Del. Ch. Mar. 18, 2015) ..................................................7, 8

iv

Plaintiff AmTrust Financial Services, Inc. ("AmTrust") submits this memorandum in opposition to Defendants Forge Underwriting Limited ("Forge") and Aspen Syndicate 4711's ("Aspen" and, together with Forge, "Underwriters") Motion to Dismiss the Complaint.

## **INTRODUCTION**

AmTrust seeks to enforce its rights to coverage under directors & officers ("D&O") liability insurance policies for settlement of a securities class action filed during the "run-off" period after its go-private merger transaction.  Forge and Aspen and the other defendant insurers, who each issued excess run-off D&O policies to AmTrust, specifically designed to cover "tail" risks for later-filed claims arising from pre-merger conduct, denied coverage for AmTrust's claim.

Forge and Aspen do not base their Motion to Dismiss on any substantive coverage arguments.  Instead, they seek dismissal solely on the basis of "Forum Selection Clauses" in the run-off policies they issued to AmTrust (the "Excess Policies") that they assert require AmTrust's dispute against them to proceed in New York courts.  However, Forge and Aspen's interpretation of the Forum Selection Clauses is flawed: while disputes solely involving Forge and Aspen are to be heard in New York courts, Forge and Aspen agreed to submit to the jurisdiction of any other forum if the dispute – like this one – also includes any insurers that issued policies underlying Forge and Aspen's Excess Policies ("Underlying Insurers").

1

As an initial matter, Delaware law applies to this issue because, as Forge and Aspen concede, Delaware and New York law are not in conflict and the result would be the same under either state's law.  Under Delaware law, a party may enforce its contractual rights in the forum of its choosing absent a forum selection clause that is "crystalline" in precluding that choice.

Forge and Aspen included in each of the Excess Policies a conditional Forum Selection Clause that applies "[u]nless stated herein to the contrary."  The Excess Policies then include a "Single Action Clause," designed to prevent litigation in multiple forums, stating that if there is a dispute between AmTrust and Forge and Aspen that also involves any of the Underlying Insurers, "then those disputes shall be heard together *in the same court or arbitration proceedings*."

Forge and Aspen admit that this litigation includes an "Underlying Insurer" but then attempt to insinuate into the plain policy language a requirement that actions involving both Forge and Aspen and Underlying Insurers may only be brought "before a New York court."  For several reasons, Forge and Aspen's interpretation of the Single Action Clause turns its obvious intent on its head.

First, the Single Action Clause, as this name reveals, is designed to soften the effect of the Forum Selection Clause, avoiding the cost of multiple court proceedings and the risk of inconsistent rulings.  If an Underlying Insurer had brought a declaratory judgment action in Delaware, as D&O carriers often do, the Clause would prevent Forge and Aspen from using the Forum Selection Clause to force

2

AmTrust to litigate a separate action in New York.  Forge and Aspen agree to submit to the jurisdiction of the court hearing the underlying dispute in a "single action." Nothing in the Single Action Clause indicates it would only apply to actions brought by carriers and exclude actions brought by the insured.

Second, nowhere in the Single Action Clause does it state that the single action must be in New York, or, for that matter, in a court of any kind.  Indeed, Forge and Aspen agreed to submit to the jurisdiction of any arbitration tribunal, which, as is often the case in insurance disputes involving insurance placed at Lloyd's of London, may require arbitration in London or Bermuda.  Of course, an arbitration is not a court proceeding, and if an underlying insurer did specify a Bermuda arbitration, Forge and Aspen could be compelled to participate in such a proceeding, which certainly is not a New York court.  Courts should not be asked to read language into an insurance policy that the insurer chose to omit, especially when to do so would limit the insured's coverage rights.

For these reasons and as further set forth below, Forge and Aspen's Motion to Dismiss should be denied.

## FACTUAL BACKGROUND

AmTrust procured D&O policies to provide "run-off" or "tail" coverage for claims asserted during the six-year period following AmTrust's acquisition by the Karfunkel-Zyskind Family and a group led by Stone Point Capital LLC in November 2018 arising from pre-merger conduct (the "Run-Off Policies").  Complaint at ¶ 1.

3

The Run-Off Policies consisted of a primary policy and numerous excess policies in "layers" as shown in the chart below:

| Layer | Insurer(s) | Limit |
|---|---|---|
| Sixth Excess | -Forge Underwriting Limited<br>-Aspen Syndicate 4711<br>-Arch American Insurance Company<br>-Markel Bermuda, Limited<br>-Allianz Global US Risks Insurance Company | $10M xs $40M |
| Fifth Excess | -Forge Underwriting Limited<br>-Aspen Syndicate 4711<br>-Arch American Insurance Company<br>-Markel Bermuda, Limited | $15M xs $25M |
| Fourth Excess | -Hiscox Syndicate No. 33 | $5M xs $20M |
| Third Excess | -Markel Bermuda, Limited<br>-Allianz Global US Risks Insurance Company | $5M xs $15M |
| Second Excess | -AXIS Insurance Company | $5M xs $10M |
| First Excess | -Zurich American Insurance Company | $5M xs $5M |
| Primary | -Indian Harbor Insurance Company | $5M xs $5M retention |

*See* Complaint at ¶ 5.

Forge and Aspen issued Excess Policies in both the fifth and sixth layers of the Run-Off Policies. Each of the Forge and Aspen Excess Policies includes a "Forum Selection Clause" that states as follows:

> ***Unless stated herein to the contrary***, this (Re)Insurance shall be governed by and construed in accordance with the laws of US New York and the exclusive jurisdiction of the US New York courts.

4

Complaint Exs. L and P, §7 (emphasis added).  The Excess Policies also each include

"Dispute Resolution Clauses" stating Forge and Aspen will agree to other forums

for dispute resolution under described circumstances, as follows:

> 8.1    In the event that a dispute arises between the Insurer and the Insured under this excess policy, the provisions of the Primary Policy are incorporated into this excess policy for the purposes of determining the dispute resolution procedures applicable to this excess policy.

> 8.2    In the event that a dispute arises between the Insurer and the Insured under this excess policy in relation to matters **_that are also the subject of a dispute between the Insured and the insurers of any Underlying Insurance_** then those disputes shall be heard together **_in the same court or arbitration proceedings_**.

Complaint Exs. L and P, §8 (emphasis added).  Section 8.2 of the Dispute Resolution

Provisions is referred to herein as the "Single Action Clause."  The Excess Policies

define "Underlying Insurance" as "the Primary Policy together with any and all

excess policies providing together the amount of cover specified at item (b) of the

limit of liability in the RISK DETAILS of this policy, and any policies replacing any

of them."  *Id.*, § 2.7.  The underlying limit of liability in the RISK DETAILS of the

Excess Policies consists of the limits of all the Run-Off Policies in the layers below

the fifth layer and the sixth layer, respectively.  *Id.*, RISK DETAILS, LIMIT OF

LIABILITY.

AmTrust sought coverage under policies in the fifth and sixth layers of the

Run-Off Policies for the lawsuit *Martinek v. AmTrust Financial Service, Inc. et al.*,

5

Case No, 19-8030, in the U.S. District Court, Southern District of New York (the "*Martinek* Action"). The insurers denied coverage for the *Martinek* Action, with some – including Forge and Aspen – arguing that the limits of the policies underlying their layer were not exhausted. Underlying Insurers disagreed, arguing that their policies were exhausted, thus creating a significant conflict between carriers.

Accordingly, AmTrust brought this litigation against the potentially liable insurers of the Run-Off Policies, including both the fifth and sixth excess layers, and Underlying Insurers.[1]

## ARGUMENT

## I.   BECAUSE THERE IS NO CONFLICT BETWEEN NEW YORK AND DELAWARE LAW ON THE APPLICATION OF FORUM SELECTION CLAUSES, DELAWARE LAW APPLIES.

In their Motion to Dismiss, Forge and Aspen represent that Delaware and New York apply the same standards to application of forum selection clauses, with both states requiring such provision "be enforced" under their "express" and "contractual language." Opening Brief at 9-14. Further, Forge and Aspen conclude that "even if Delaware law applied to [Forge and Aspen's] Excess Policies, the result would be the same." *Id.* at 15, n. 5.

---

[1] The Underlying Insurance Policy in the third excess layer issued by Markel Bermuda Limited includes an arbitration clause. Complaint Ex. H, § E. AmTrust has not, but could have, pursued arbitration proceedings against Markel and compelled Forge and Aspen to join those proceedings.

6

When a result would be the same under Delaware and a competing state's law, that is a "false conflict" under Delaware law, so that "the Court should avoid the choice-of-law analysis altogether" and apply Delaware law. *Deuley v. DynCorp Intern., Inc.*, 8 A.3d 1156, 1161 (Del. 2010). This rule applies even where the contract at issue includes a choice-of-law provision designating the competing state's law. *See id.* (declining the perform a choice-of-law analysis and applying Delaware law where there was a "false conflict" with Dubai law as designated in the contract); *see also In re Bay Hills Emerging Partners I, L.P*., 2018 WL 3217650, at *5 (Del. Ch. July 2, 2018) ("*Bay Hills*").

For example, in *Bay Hills*, like here, the parties' contract included choice-of-law and forum selection clauses for another state (in that case, Kentucky). *Bay Hills*, 2018 WL 3217650, at *2. However, the Court determined that, also like here, there was a "false conflict" between Kentucky and Delaware law on the enforcement of forum selection clauses. *Id.* at *5. Accordingly, the Court declined to undertake a choice-of-law analysis, applied Delaware law, and denied the defendants' motion to dismiss based on the forum selection clause. *Id.* at *5-6; *see also Wilmington Sav. Fund Soc'y, FSB v. Caesars Entm't Corp.*, 2015 WL 1306754, at *5 (Del. Ch. Mar. 18, 2015) (same with respect to New York forum selection provision); *Troy Corp. v. Schoon*, 2007 WL 949441, at *10-11 (Del. Ch. Mar. 26, 2007) (same). Given Forge and Aspen's concession that the result here is the same under New York or Delaware law, the Court should likewise refrain from a choice of law analysis and

7

apply Delaware law to the Forum Selection Clauses.  For the reasons explained

below, Delaware law compels that Forge and Aspen's Motion to Dismiss be denied.

## II.   THE EXCESS POLICIES' FORUM SELECTION CLAUSES INCLUDE EXPRESS EXCEPTIONS TO A NEW YORK FORUM BASED ON OTHER POLICY TERMS.

Under Delaware law, "[f]or a forum selection clause to be strictly binding, the

parties must use express language clearly indicating that the forum selection clause

excludes *all other courts* before which those parties could otherwise properly bring

an action." *Troy Corp.* 2007 WL 949441, at *2 ("*Troy*") (emphasis added); *see also*

*Eisenbud v. Omnitech Corp. Sols., Inc.*, 1996 WL 162245, at *1 (Del. Ch. Mar. 21,

1996) (denying motion to dismiss based on forum selection clause where "the final

agreement does not unequivocally indicate it is the *only* forum") (emphasis in

original).  Further, "[i]f the contractual language is not *crystalline*, a court will not

interpret a forum selection clause to indicate the parties intended to make jurisdiction

exclusive."  *Troy*, 2007 WL 949441 at *2 (emphasis added); *Duff v. Innovative*

*Discovery LLC*, 2012 WL 6096586, at *11 (Del. Ch. Dec. 7, 2012) (same); *see also*

*Wilmington Sav. Fund Soc'y, FSB*, 2015 WL 1306754, at *5 n. 29 (noting that under

both Delaware and New York law, exclusive forum selections must be "clear and

unambiguous").

Forge and Aspen argue at length that the "express language" of the Forum

Selection Clauses "plainly provide[s] that New York courts shall have *exclusive*

jurisdiction to hear any dispute arising under [Forge and Aspen's] Excess Policies."

Opening Brief at 11-13 (emphasis in original).  However, in making this argument,

Forge and Aspen omit the entire first clause of the Forum Selection Clauses (without

any indication they did so).  *Id.* at 13-14.  As shown below, the language Forge and

Aspen removed is critical because it adds in a significant condition to the provisions'

forum selection, which must be enforced like any other language in a forum selection

provision:

> ***Unless stated herein to the contrary***, this (Re)Insurance shall be
> governed by and construed in accordance with the laws of US New
> York and the exclusive jurisdiction of the US New York courts.

Complaint Exs. L and P, §7 (emphasis added).  Accordingly, under the express

language of the Forum Selection Clauses, the agreement to New York jurisdiction

does not apply if any other provisions in the Excess Policies provide for another

forum.

In the *Troy* case, the Chancery Court applied a similar exception in the forum

selection clause at issue, which stated:

> Any lawsuits with respect to, in connection with or arising out of this
> agreement shall be brought in a court for the Southern District of New
> York and the parties hereto consent to the jurisdiction and venue of such
> court for the Southern District as the sole and exclusive forum, ***unless
> such court is unavailable***, for the resolution of claims by the parties
> arising under or relating to this agreement.

*Troy*, 2007 WL 949441 at *1 (emphasis added).  The Court determined that the

exception to the parties' forum selection agreement applied because the parties'

dispute was not subject to federal court jurisdiction, and therefore plaintiff's case

9

could proceed in Delaware.  *Id.* at *3-4.  Further, the Court explained that by rejecting defendants' motion to dismiss, the Court was in fact enforcing the plain terms of the forum selection clause:

> [T]he court in this case is not setting aside or refusing to enforce the forum selection clause.  It is simply recognizing that the contractual language used chose the United States District Court for the Southern District of New York and that court is unavailable.  A ruling that the necessary factual requisites are lacking for a dispute to fall within the confines of a contractual provision is not at all akin to refusing to enforce such a provision entirely.

*Id.* at *4.  Likewise, here, AmTrust is not asking this Court to set aside or refuse to enforce the Forum Selection Clauses.  Rather, AmTrust merely seeks to have the Forum Selection Clauses applied as written, which is subject to other provisions in the Excess Policies (that, as explained below, require Forge and Aspen's dispute with AmTrust to proceed in this Court).

Moreover, none of the cases cited by Forge and Aspen in support of their argument hold otherwise.  None of the forum selection clauses at issue in those cases, if any, include an exception on the face of the provision, whether in Delaware[2] or

---

[2] *See Nat'l Indus. Group (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 377 (Del. 2013) (granting anti-suit injunction against Kuwait suit where forum selection clause stated "[t]he courts of the State of Delaware shall have exclusive jurisdiction over any action, suit or proceeding with respect to this Subscription Agreement" without exception); *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1147 (Del. 2010) (affirming injunction of California lawsuit where parties agreed in forum selection clause to bring any action in New York or Delaware without exception); *Ashall Homes Ltd. v. ROK Entm't Group Inc.*, 992 A.2d 1239, 1243 (Del. Ch. 2010) (dismissing suit where contract stated "the English courts shall have jurisdiction over any disputes arising hereunder" without exception); *Loveman v. Nusmile, Inc.*, 2009

10

New York.[3]   Further, in cases Forge and Aspen cite where the forum selection

provisions are not clearly limited to one forum, the courts denied the motions to

dismiss.   *See Eisenbud*, 1996 WL 162245 (denying motion to dismiss where "the

final agreement does not unequivocally indicate it is the *only* forum"); *Nat'l Union*

*Fire Ins. Co. of Pittsburgh, Pa. v. Trustwave Holdings, Inc*., 2016 WL 2354621, at

*5 (Del. Super. May 3, 2016) (denying motion to dismiss where parties' successive

contracts identified different forums for disputes and the court could not determine

which was triggered); *Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534

(1996) (holding that service of suit clause consenting to jurisdiction did not mandate

venue).

---

WL 847655 (Del. Super. Mar. 31, 2009) (dismissing suit where parties agreed to "submit to the exclusive jurisdiction of the federal and state courts of the State of Florida located in Broward County" without exception); *see also M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 2 (1972) (enforcing forum selection clause stating "[a]ny dispute arising must be treated before the London Court of Justice" without exception).

[3] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Williams*, 223 A.D.2d 395 (N.Y. Sup. Ct. 1st Dept. 1996) (applying permissive New York forum selection clause without exception); *Encompass Aviation, LLC v. Surf Air Inc*., 2018 WL 6713138, at *8 (S.D.N.Y. Nov. 30, 2018) (same); *Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C*., 851 N.Y.S.2d 311 (4th Dept. 2008) (same); *Stein v. United Wind, Inc*., 139 N.Y.S.3d 520 (N.Y. Sup. Ct. 2021) (applying plain language of forum selection clause with no exception); *Milmar Food Group II, LLC v. Applied Underwriters, Inc.*, 85 N.Y.S.3d 347 (N.Y. Sup. Ct. 2018) (same); *Puleo v. Shore View Ctr. for Rehab. & Health Care*, 132 A.D.3d 651, 652 (N.Y. Sup. Ct. 2nd Dept. 2015); *Sydney Attractions Group Pty Ltd. v. Schulman*, 74 A.D.3d 476 (N.Y. Sup. Ct. 1st Dept. 2010) (same); *Triple Z Postal Services, Inc. v. United Parcel Serv., Inc*., 831 N.Y.S.2d 357 (N.Y.Sup. Ct. 2006) (same); *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 100 (2d Cir. 2006) (affirming arbitration award under clause selecting New York as forum to do so without exception).

11

Accordingly, the Court must evaluate the other provisions in the Excess Policies to determine whether any are "contrary" to exclusive jurisdiction in New York, which there are.

## III.   DELAWARE IS A PROPER FORUM FOR THIS DISPUTE UNDER THE SINGLE ACTION CLAUSE.

The Excess Policies include the Dispute Resolution Provisions, which each include the Single Action Clause that states as follows:

> 8.2      In the event that a dispute arises between the Insurer and the Insured under this excess policy in relation to matters ***that are also the subject of a dispute between the Insured and the insurers of any Underlying Insurance*** then those disputes shall be heard together ***in the same court or arbitration proceedings***.

Complaint Exs. L and P, §8 (emphasis added).

### A.      This Litigation Falls Under the Terms of the Single Action Clause.

Forge and Aspen acknowledge the dispute in this litigation includes an insurer of "Underlying Insurance," specifically Allianz, which issued a policy in the third excess run-off layer underlying both the fifth and sixth-layer Excess Policies issued by Forge and Aspen.[4]   *See* Opening Brief at 15 ("AmTrust names one of the Underlying Insurers as a Defendant").

---

[4] While Forge and Aspen suggest that AmTrust named Allianz in this litigation "[i]n support of this position," AmTrust was compelled to seek a declaration against Allianz on the third-layer excess policy due to Forge and Aspen's own argument that policy is not exhausted. *See, e.g.*, Complaint Exhibit BB at 10-11 (letter from Forge and Aspen arguing that the policies underlying the Excess Policies had not exhausted).

12

Further, all the other policies in the fifth excess run-off layer are "Underlying Insurance" to Forge and Aspen's sixth-layer Excess Policy.  *See* Complaint Ex. P, Section 2.7 and Risk Details (identifying as "Underlying Insurance" those policies providing the limits underlying the sixth-layer Excess Policy, including the policies in the fifth layer).  Another defendant in this litigation, Arch Insurance Company, also issued a policy in the fifth excess run-off layer, and is therefore also an "insurer[] of any Underlying Insurance" for purposes of the Single Action Clause in Forge and Aspen's sixth-layer Excess Policy.

The plain language of the Single Action Clause therefore requires that AmTrust's disputes with Forge and Aspen and those Underlying Insurers – Allianz and Arch – "be heard together in the same court or arbitration proceedings."  Trying to turn this obvious intent on its head, Forge and Aspen argue that: "When read in conjunction with the Forum Selection Clauses, the Single Action Clause requires that any action against [Forge and Aspen] and the Underlying Insurers must be brought in a single action ***before a New York court***."  Opening Brief at 17 (emphasis added).  However, Forge and Aspen's interpretation of those Clauses is patently incorrect.

### B.    The Single Action Clause Requires Forge and Aspen Join Dispute Resolution Proceedings in Forums Other Than New York Courts.

First, Forge and Aspen's position is contrary to the plain language of the Single Action Clause, which clearly provides, for example, that disputes between

13

AmTrust and Forge and Aspen must be heard in "arbitration proceedings" if necessary to join disputes with Underlying Insurers. *See* Complaint Exs. L and P, §8.2. Such "arbitration proceedings," by their very definition, would not be in "New York *courts*." *See, e.g.*, *Enel Green Power N. Am., Inc. v. Geronimo Energy, LLC*, 2019 WL 4805659, at \*4 (S.D.N.Y. Sept. 30, 2019) (*citing Merrill Lynch, Pierce, Fenner & Smith Inc. v. Oliver*, 2016 WL 344980, at \*2 (S.D.N.Y. Jan. 27, 2016), *aff'd sub nom.* 681 F. App'x 64 (2d Cir. 2017)) (holding that a mandatory forum selection clause "substantively excludes" arbitration "even if it does not explicitly reference arbitration").

Forge and Aspen's interpretation would thus "render a[] portion of the agreement meaningless" – namely, the requirement that Forge and Aspen join arbitration proceedings with Underlying Insurers – an outcome they object to in the Opening Brief as contrary to "black letter law." *See* Opening Brief at 17 (*citing Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007); *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP,* 845 N.E.2d 1265, 1267 (N.Y. 2006)); *see also RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 905 (Del. 2021) ("Proper interpretation of an insurance contract will not render any provision 'illusory or meaningless.'") (citation omitted).

Further, the Single Action Clause does not specify a forum for the "same court" in which disputes including both Forge and Aspen and Underlying Insurers must be heard. *See* Exs. L and P, §8.2. For the Single Action Clause to require such

14

disputes be heard together in *New York* courts, Forge and Aspen would have had to say so in "crystalline" terms, which they failed to do. *See, e.g.*, *Troy*, 2007 WL 949441 at *2; *Trustwave Holdings, Inc.*, 2016 WL 2354621, at *4 (denying motion to dismiss where the court could not determine which claims fell within competing forum selection clauses); *Duff*, 2012 WL 6096586, at *11 (denying motion to dismiss where conflicting forum selection clauses "make the parties' intent as to a contractual choice of forum here far from 'crystalline'").

In the absence of a specified forum, disputes including both Forge and Aspen and Underlying Insurers can be brought in any available forum. As the Court concluded in *Troy* when a similar exception to a forum selection clause applied:

> And since the clause at issue does not speak to an alternative forum, Troy, exercising the substantial discretion that a plaintiff naturally enjoys over its choice of venue, appropriately brought suit [in Delaware court].

*Troy*, 2007 WL 949441 at *3. Where, as here, the Single Action Clause applies, the absence of an alternative forum likewise means AmTrust is not limited to New York and may bring claims in its choice of appropriate forum.

Forge and Aspen argue that this interpretation "would essentially read the Forum Selection Clauses out of [Forge and Aspen's] Excess Policies." Opening Brief at 17. However, Forge and Aspen's argument ignores the fact that, as explained above, the Excess Policies explicitly state which provisions control in case of a conflict with the Forum Selection Clauses, because those Clauses apply

15

"[u]nless stated herein to the contrary."  The Single Action Clause "state[s] to the contrary" when disputes include both Forge and Aspen and Underlying Insurers. That does not mean the Forum Selection Clauses are read out of the Excess Policies or are rendered ineffective – they still apply to any disputes that do *not* fall within the Single Action Clauses.  That is just not the case here.

### C.   The Purpose of the Single Action Clause Requires Forge and Aspen Submit to Jurisdiction in Forums Other Than New York Courts.

Forge and Aspen's interpretation of the Single Action Clause also contradicts the purpose of those provisions.  As detailed above and in the Complaint, the Excess Policies were part of a multi-layer run-off insurance program subscribed to by more than a dozen insurers with some issuing numerous policies, all providing coverage under generally the same substantive terms.  *See* Complaint, ¶¶ 1-5, 37-41; Exs. B-W.  It is typical for any sizable insurance coverage dispute, particularly one involving such a complicated program, to involve multiple insurance policies and insurers.  As revealed in the shorthand name Forge and Aspen used – the "Single Action" Clause – that provision is designed to soften the effect of the Forum Selection Clause, and to avoid the cost of multiple proceedings and the risk of inconsistent rulings.

Forge and Aspen argue that the Single Action Clause avoids piecemeal litigation by requiring disputes involving both Forge and Aspen and Underlying Insurers be brought in New York.  Opening Brief at 18-19.  However, that cannot be

16

what the Single Action Clause requires also because the Underlying Insurers are not parties to the Excess Policies and Forge and Aspen's Forum Selection Clauses would not bind them.

Under Delaware law, non-signatories are only bound by a forum selection clause if they are "closely related to" the contract, meaning they either "receive[] direct benefit from the agreement" or "it was foreseeable that [they] would be bound by the agreement." *Partners & Simons, Inc. v. Sandbox Acquisitions, LLC*, 2021 WL 3161651, at *4 (Del. Ch. July 26, 2021); *see also Murphy v. Pentwater Capital Mgmt. LP*, 2017 WL 5068572, at *4 (Del. Super. Oct. 31, 2017). Further, Delaware courts "purposefully limit[] the scope of the foreseeability inquiry to controlled non-signatories" which "typically requires rejecting principles of corporate separateness." *Partners & Simons, Inc.*, 2021 WL 3161651, at *4; *see also BAM Int'l, LLC v. MSBA Group Inc.*, 2021 WL 5905878, at *12-14 (Del. Ch. Dec. 14, 2021) (declining to expand foreseeability test to signatories' CEO and CFO).[5]

The Underlying Insurers do not receive any "direct benefit" from Forge and Aspen's Excess Policies, which only attach to benefit and provide coverage to AmTrust and other insureds after exhaustion of the Underlying Insurers' policies.

---

[5] New York law on this issue is similar. *See, e.g.*, *First Ins. Funding Corp. v. Kass*, 920 N.Y.S.2d 311 (1st Dept. 2011) (holding non-signatories were not subject to forum selection clause where they were not "so closely related to the dispute that they should have foreseen that they would be bound by the forum selection clause").

Further, the Underlying Insurers are not "controlled" by either Forge and Aspen or AmTrust. Accordingly, they would not be subject to the Forum Selection Clauses.

Forge and Aspen seek to avoid this issue by focusing solely on actions filed by AmTrust. *See* Opening Brief at 16-17. However, for example, if one of the Underlying Insurers brought a declaratory judgment action against AmTrust in any venue other than New York on a dispute that also implicated Forge and Aspen, under Forge and Aspen's interpretation, AmTrust would not be able to bring a claim against Forge and Aspen in that lawsuit and would have to file a separate action. The fact that outcome would defeat the purpose of the Single Action Clause shows that Forge and Aspen's interpretation cannot be correct. Forge and Aspen agreed to submit to the jurisdiction of the court hearing the underlying dispute in a "single action." Nothing in the Single Action Clause indicates it would only apply to actions brought by carriers and exclude actions brought by the insured.

Forge and Aspen's arguments with respect to arbitration clauses in Markel's Underlying Insurance policies also miss the mark. As with the forum selection clauses, neither AmTrust nor Forge and Aspen could force other Underlying Insurers to waive their litigation rights and agree to arbitration. *See, e.g.*, *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 430 (Del. Ch. 2007) ("A non-signatory to a contract cannot be bound by an arbitration clause unless 'traditional principles of contract and agency law' equitably confer upon that party signatory status with regard to the underlying agreement."); *Ne. & Cent. Contractors, Inc. v.*

*Quanto Capital, LLC*, 203 A.D.3d 925 (N.Y. Sup. Ct. 2nd Dept. 2022) (same). While that means there could be concurrent litigation and arbitration proceedings involving disputes relating to Markel, Forge and Aspen and other Underlying Insurers, the Single Action Clause still limits the number of proceedings. Further, it still avoids litigation in multiple *courts*, which raises issues of comity and inconsistent legal rulings that are not present with respect to litigation and arbitration proceedings on the same issue.

In any event, regardless of Markel's dismissal from this action, there are no arbitration proceedings pending against any of the Underlying Insurers. If there were, AmTrust's position on the Single Action Clause would be unchanged – Forge and Aspen agreed to join "the same court or arbitration proceedings" as such other Underlying Insurers, and must do so here.

## <u>CONCLUSION</u>

The Motion to Dismiss should be denied because (i) the Forum Selection Clauses include express exceptions where stated in other Excess Policy terms, (ii) the Excess Policies' Single Action Clause requires disputes including Forge and Aspen and other Underlying Insurers be heard in the same court without any forum limitation, and (iii) this litigation involved disputes with Forge and Aspen and other Underlying Insurers.

[Signature on next page.]

Respectfully submitted,

Of Counsel:                                    **BERGER HARRIS LLP**

Peter M. Gillon (*pro hac vice*)               /s/ David J. Baldwin
Tamara D. Bruno (*pro hac vice*)               David J. Baldwin (DE ID No. 1010)
Pillsbury Winthrop Shaw                         Peter C. McGivney (DE ID No. 5779)
Pittman LLP                                     1105 N. Market Street, 11th Floor
1200 Seventeenth Street NW                      Wilmington, DE  19801
Washington, D.C. 20036-3006                     Tel.: (302) 655-1140
Tel: (202) 663-9249                             Fax: (302) 655-1131
peter.gillon@pillsburylaw.com                   dbaldwin@bergerharris.com
tamara.bruno @pillsburylaw.com                  pmcgivney@bergerharris.com

                                               *Attorneys for Plaintiff AmTrust*
Dated:  July 22, 2022                           *Financial Services, Inc.*

20

**EFiled:  Jul 22 2022 02:29PM EDT**
**Transaction ID 67850545**
**Case No. N22C-04-010 MMJ CCLD**

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiff, | |
| v. | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | **TRIAL BY JURY OF TWELVE DEMANDED** |
| Defendants. | |

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the typeface requirement of Superior Court Civil Rule 107(b) because it has been prepared in Times New Roman 14-point typeface using Microsoft Office Word 2016 Professional.

2.      This brief complies with the type-volume limitations of Superior Court Civil Rule 107(h)(1) because it contains 4,902 words which were counted by Microsoft Word 2016 Professional.

[Signature on next page.]

Of Counsel:                                   **BERGER HARRIS LLP**

Peter M. Gillon (*pro hac vice*)              */s/ David J. Baldwin*
Tamara D. Bruno (*pro hac vice*)              David J. Baldwin (DE ID No. 1010)
Pillsbury Winthrop Shaw                       Peter C. McGivney (DE ID No. 5779)
Pittman LLP                                   1105 N. Market Street, 11th Floor
1200 Seventeenth Street NW                    Wilmington, DE  19801
Washington, D.C. 20036-3006                   Tel.: (302) 655-1140
Tel: (202) 663-9249                           Fax: (302) 655-1131
peter.gillon@pillsburylaw.com                 dbaldwin@bergerharris.com
tamara.bruno @pillsburylaw.com                pmcgivney@bergerharris.com


Dated:  July 22, 2022                         *Attorneys for Plaintiff AmTrust*
                                              *Financial Services, Inc.*

EFiled:  Jul 22 2022 02:29PM EDT
Transaction ID 67850545
Case No. N22C-04-010 MMJ CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

|  |  |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiff, | |
| v. | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | **TRIAL BY JURY OF TWELVE DEMANDED** |
| Defendants. | |

**[PROPOSED] ORDER DENYING
DEFENDANTS FORGE UNDERWRITING LIMITED AND ASPEN
SYNDICATE 4711'S MOTION TO DISMISS THE COMPLAINT**

UPON CONSIDERATION of Defendants Forge Underwriting Limited and Aspen Syndicate 4711's Motion to Dismiss the Complaint (the "Motion") and the opposition thereto, it is hereby Ordered that the Motion is DENIED.

IT IS SO ORDERED this _____ day of _____, 2022.

_____
The Honorable Mary M. Johnston

EFiled:  Jul 22 2022 02:29PM EDT
Transaction ID 67850545
Case No. N22C-04-010 MMJ CCLD

# <u>CERTIFICATE OF SERVICE</u>

I, David J. Baldwin, hereby certify that on July 22, 2022, I caused a true and correct copy of the foregoing document to be served upon the following individuals in the manner indicated below:

**<u>VIA FILE AND SERVEXPRESS</u>**

Robert J. Katzenstein, Esq.
Julie M. O'Dell, Esq.
Smith Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

**<u>VIA FILE AND SERVEXPRESS</u>**

John C. Phillips, Jr., Esq.
David A. Bilson, Esq.
Phillips, McLaughlin & Hall, P.A.
1200 North Broom Street
Wilmington, DE 19806

**<u>VIA FILE AND SERVEXPRESS</u>**

Francis G.X. Pileggi, Esq.
Ciro C. Poppiti, Esq.
Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue, Suite 700
Wilmington, DE 19801

*/s/ David J. Baldwin*
David J. Baldwin (No. 1010)

EFiled:  Aug 12 2022 02:37PM EDT
Transaction ID 67927359
Case No. N22C-04-010 MMJ CCLD

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, et al., | ) ) ) |
| Defendants. | ) ) ) |

## REPLY BRIEF IN SUPPORT OF
## FORGE UNDERWRITING LIMITED AND ASPEN
## SYNDICATE 4711's MOTION TO DISMISS THE COMPLAINT

Of Counsel:
Edward J. Kirk
Scott W. Schwartz
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, NY 10174
212-710-3900


Dated: August 12, 2022

John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
PHILLIPS, MCLAUGHLIN & HALL, P.A
1200 N. Broom Street
Wilmington, DE  19806
302-655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Attorneys for Defendants Forge Underwriting Limited and Aspen Syndicate 4711*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 3

   A.  New York Law Applies to Underwriters' Excess Policies ...................................... 3

   B.  The Forum Selection Clauses Are Mandatory .......................................................... 8

   C.  The Single Action Clause Does Not Allow AmTrust to Bring An Action outside of
       New York .......................................................................................................... 14

      1.  The Single Action Clause Does Not Contradict the Forum Selection Clauses 14

      2.  AmTrust's Position Improperly Reads Entire Provisions out of Underwriters'
         Excess Policies ............................................................................................ 17

      3.  Litigation in New York Satisfies the Purpose of the Single Action Clause ..... 20

      4.  The Single Action Clause Does Not Apply to this Dispute ............................. 22

   CONCLUSION ............................................................................................................. 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ameritrans Cap. Corp. v. XL Specialty Ins. Co.*,
   2015 WL 13697702 (Del. Super. Ct. Nov. 30, 2015)..........................................6

*In re Bay Hills Emerging Partners I, L.P.*,
   2018 WL 3217650 (Del. Ch. July 2, 2018) ....................................................6, 7

*Beal Sav. Bank v. Sommer*,
   865 N.E.2d 1210 (N.Y. 2007)............................................................................17

*Bonanno v. VTB Holdings, Inc.*,
   2016 WL 614412 (Del. Ch. Feb. 8, 2016) ..........................................................9

*Certain Underwriters at Lloyds, London v. Chemtura Corp.*,
   160 A.3d 457 (Del. 2017) ...............................................................................5, 7

*CooperVision, Inc. v. Intek Integration Tech., Inc.*,
   794 N.Y.S.2d 812 (N.Y. Sup. Ct. 2005)............................................................20

*DCV Holdings, Inc. v. ConAgra, Inc.*,
   889 A.2d 954 (Del. 2005) ................................................................................16

*Deuley v. DynCorp Intern., Inc.*,
   8 A.3d 1156 (Del. 2010) ................................................................................6, 7

*Duff v. Innovative Discovery LLC*,
   2012 WL 6096586 (Del. Ch. Dec. 7, 2012)......................................................13

*Eisenbud v. Omnitech Corp. Sols., Inc.*,
   1996 WL 162245 (Del. Ch. Mar. 21, 1996) .....................................................13

*Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.*,
   50 A.D.3d 185 (N.Y. 4th Dep't 2008)................................................................9

*Germaninvestments AG v. Allomet Corp.*,
   225 A.3d 316 (Del. 2020) ..................................................................................4

*Green Harbour Homeowners' Ass'n, Inc. v. G.H. Dev. & Const., Inc.*,
    14 A.D.3d 963 (N.Y. 1st Dep't, 2005) ..........................................................11, 16

*Katell v. Morgan Stanley Grp., Inc.*,
    1993 WL 205033 (Del. Ch. June 8, 1993)....................................................11, 13

*Kirkwood Knoll Maint. Corp. v. Warren*,
    2016 WL 8999315 (Del. Com. Pl. Apr. 21, 2016) ............................................11

*KLS Diversified Master Fund, L.P. v. McDevitt*,
    507 F. Supp. 3d 508 (S.D.N.Y. 2020), *aff'd*, 2022 WL 2759055 (2d
    Cir. July 13, 2022) ..............................................................................................19

*Lagrone v. American Mortell Corp.*,
    2008 WL 4152677 (Del. Super. Ct. Sept. 4, 2008) ............................................5

*Lexington Servs. Ltd. v. U.S. Pat. No. 8019807 Delegate, LLC*,
    2018 WL 5310261 (Del. Ch. Oct. 26, 2018) ....................................................11

*Mack v. Rev Worldwide, Inc.*,
    2020 WL 7774604 (Del. Ch. Dec. 30, 2020).....................................................4

*Magi XXI, Inc. v. Stato Della Citta Del Vaticano*,
    818 F. Supp. 2d 597 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir.
    2013) ...................................................................................................................16

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Trustwave Holdings, Inc.*,
    2016 WL 2354621 (Del. Super. Ct. May 3, 2016) ...........................................14

*New York Univ. v. Factory Mut. Ins. Co.*,
    374 F. Supp. 3d 315 (S.D.N.Y. 2019) ...............................................................18

*NuMSP, LLC v. St. Etienne*,
    462 F. Supp. 3d 330 (S.D.N.Y. 2020) ...............................................................12

*Oot v. Home Ins. Co. of Indiana*,
    244 A.D.2d 62 (N.Y. 4th Dep't 1998)................................................................19

*Puleo v. Shore View Ctr. for Rehab. & Health Care*,
    132 A.D.3d 651 (N.Y. 2nd Dep't 2015)..............................................................10

iii

*Seidensticker v. Gasparilla Inn, Inc.*,
  2007 WL 4054473 (Del. Ch. Nov. 8, 2007) .......................................................20

*Sydney Attractions Grp. Pty Ltd. v. Schulman*,
  74 A.D.3d 476 (N.Y. 1st Dep't 2010) ..............................................................13

*Tourtellot v. Harza Architects*,
  55 A.D.3d 1096 (N.Y. 3rd Dep't 2008)............................................................16

*Wilmington Sav. Fund Soc'y, FSB v. Caesars Entm't Corp.*,
  2015 WL 1306754 (Del. Ch. Mar. 18, 2015) ......................................................7

**Other Authorities**

Superior Court Rule 12(b)(3)................................................................................3, 24

iv

## PRELIMINARY STATEMENT

AmTrust's Answering Brief in Opposition to Underwriters' Motion to Dismiss (the "Opposition" or "Opp.") attempts to rewrite or ignore key provisions of Underwriters' Excess Policies[1] in order to justify bringing this action in a Delaware court rather than a New York court as the policies require. The mandatory Forum Selection Clauses in Underwriters' Excess Policies clearly state that New York courts have *exclusive* jurisdiction over any dispute arising under the policies. AmTrust does not dispute that such provisions are valid and enforceable under either New York or Delaware law, or that Delaware courts routinely grant motions to dismiss based on nearly identical provisions. Instead, the Opposition argues that this Court should apply an unreasonable and tortured reading of Underwriters' Excess Policies to allow AmTrust to disregard its binding agreement that it would bring any dispute under Underwriters' Excess Policies in the courts of New York.

First, AmTrust argues that this Court should disregard the New York choice-of-law clauses in Underwriters' Excess Policies and instead apply Delaware law to determine the enforceability of the Forum Selection Clauses because there is no difference between New York and Delaware law on this issue. AmTrust provides no reason why this Court should disregard the New York choice-of-law provisions and

---

[1] Defined terms have the same meaning as in the Opening Brief in Support of Forge Underwriting Limited and Aspen Syndicate 4711's Motion to Dismiss the Complaint (the "Opening Brief") unless otherwise stated.

1

instead conduct a separate choice of law analysis. The choice-of-law clauses require this Court to interpret the Forum Selection Clauses and other provisions of Underwriters' Excess Policies in accordance with the laws of New York. Regardless, under either New York or Delaware law, the Forum Selection Clauses are valid and enforceable and require this coverage dispute to be resolved in the New York courts.

Second, AmTrust argues that the Forum Selection Clauses include "express exceptions" and are therefore not mandatory clauses. In doing so, AmTrust relies entirely on the clause "Unless stated herein to the contrary" in the "Choice of Law & Jurisdiction" provision included in the "Risk Details" of Underwriters' Excess Policies. AmTrust, however, conveniently fails to mention Section 7, "Governing Law and Jurisdiction", of the policy wording which unequivocally requires that any dispute arising under Underwriters' Excess Policies will be subject to the exclusive jurisdiction of the New York courts. The Governing Law and Jurisdiction Clause does not include the phrase "unless stated here to the contrary" or any other language that allows for an exception to the Forum Selection Clauses. Moreover, Underwriters' Excess Policies do not state anything to the contrary that New York courts have exclusive jurisdiction over any dispute under the policies.

Third, AmTrust argues that the Single Action Clause of Underwriters' Excess Policies allows AmTrust to bring this action in Delaware and side-step the Forum Selection Clauses by simply adding underlying insurers to its complaint. However,

2

the Single Action Clause does not contradict the exclusive jurisdiction of the New York courts and does not address what forum has jurisdiction to hear a dispute under Underwriters' Excess Policies. Instead, the Single Action Clause merely states that disputes between AmTrust and Underwriters should be heard in the same proceeding as disputes between AmTrust and other insurers involving the same matter. There is nothing in the Single Action Clause that contradicts the mandatory Forum Selection Clauses or otherwise suggests that the disputes under Underwriters' Excess Policies may be heard in any jurisdiction other than New York.

AmTrust has failed to demonstrate that the Forum Selection Clauses are unenforceable or that it otherwise should be allowed to ignore its express agreement that New York courts have *exclusive* jurisdiction over any dispute under Underwriters' Excess Policies. Therefore, AmTrust's complaint should be dismissed for improper venue pursuant to Super. Ct. Civ. R. 12(b)(3).

## ARGUMENT

### A.   New York Law Applies to Underwriters' Excess Policies

As explained in the Opening Brief, the Risk Details provide that Underwriters' Excess Policies "*shall be governed by and construed* in accordance with the laws of US New York and the exclusive jurisdiction of the US New York

3

courts." (emphasis added).[2] Further, Section 7, "Governing Law and Jurisdiction," of the Excess Wording of Underwriters' Excess Policies states that "[t]he constructions, interpretation and meaning of the terms, exclusions, limitations and conditions of this excess policy shall be determined in accordance with the laws of the state or country specified in the RISK DETAILS of this policy." Accordingly, pursuant to the choice of law provisions, New York law applies to the construction, interpretation and meaning of the Forum Selection Clauses of Underwriters' Excess Policies.

Delaware law is clear that choice of law provisions in contracts should be applied, including with respect to the interpretation of a forum selection clause. *See Germaninvestments AG v. Allomet Corp.*, 225 A.3d 316, 331 (Del. 2020) ("When a contract contains a forum selection clause, this court will interpret the forum selection clause in accordance with the law chosen to govern the contract.") (quoting *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010) (Strine, C.)); *see also Mack v. Rev Worldwide, Inc.*, 2020 WL 7774604, at *17, n.134 (Del. Ch. Dec. 30, 2020) (same).

Although AmTrust does not dispute that Underwriters' Excess Policies

---

[2] Underwriters Excess Policies Consist of the Fifth Excess Policy attached as Exhibit L to the Complaint and the Sixth Excess Policy attached as Exhibit P to the Complaint. The provisions detailing the excess coverage provided by Underwriters' Excess Policies are at pages 4-21 of each Exhibit (the "Excess Wording").

4

include choice of law provisions mandating that New York law applies, AmTrust argues that this Court should ignore the parties' choice of New York law and instead apply Delaware law to the Forum Selection Clauses. According to AmTrust, because Forum Selection Clauses are similarly enforced under both New York and Delaware law, there is a "false conflict of law" and no need to undergo a choice of law analysis. (Opp. at 7.) This is incorrect and entirely misses the point of the "false conflict of law" doctrine. Delaware courts apply the "false conflict of law" doctrine where the parties contend that the laws of two different jurisdictions apply to a dispute, and the court determines that it need not undergo the often difficult choice of law analysis because the result would be the same under the laws of either jurisdiction. *See Lagrone v. American Mortell Corp.*, 2008 WL 4152677, at *5 (Del. Super. Ct. Sept. 4, 2008) (applying the false conflicts of law doctrine to avoid having to choose between "competing jurisdictions"). Here, however, Underwriters' Excess Policies have clear New York choice of law provisions and there is no conflict or other dispute regarding the proper law to apply to Underwriters' Excess Policies.

In *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017), the Delaware Supreme Court specified the steps a court should follow to determine what law to apply to interpret an insurance policy. As explained in *Chemtura*, a court need only determine whether there is an actual conflict between

5

the laws of the different states if the parties did not make an effective choice of law in their contract:

> There are, in essence, three components to this choice-of-law analysis: i) determining if the parties made an effective choice of law through their contract; ii) *if not*, determining if there is an actual conflict between the laws of the different states each party urges should apply; and iii) if so, analyzing which state has the most significant relationship.

(emphasis added); *see also Ameritrans Cap. Corp. v. XL Specialty Ins. Co.*, 2015 WL 13697702, at *6 (Del. Super. Ct. Nov. 30, 2015) ("To determine choice of law in a contract case, the Court will first look to the choice of law provision, if it exists."). AmTrust does not dispute that the parties effectively chose New York law to apply to Underwriters' Excess Policies. As such, this Court must apply New York law to interpret the Forum Selection Clauses and the other provisions of Underwriters' Excess Policies.

AmTrust relies on two cases, *Deuley v. DynCorp Intern., Inc.*, 8 A.3d 1156, 1160 (Del. 2010), and *In re Bay Hills Emerging Partners I, L.P.*, 2018 WL 3217650 (Del. Ch. July 2, 2018), to support its argument that despite the applicable choice of law provisions, the Court must apply Delaware law pursuant to the false conflict of law doctrine. (Opp. at 7.) Neither of these cases apply here. In *Deuley*, the plaintiffs challenged the efficacy of the relevant choice of law provision by arguing that the forum selection clause applied only to the "interpretation" of the contract, and not to

6

the tort law at issue in the action.[3] The court determined that it could avoid determining whether the choice of law provision was enforceable because the laws of Dubai and Delaware were the same regarding the relevant issue. *See Deuley*, 8 A.3d at 1160-61. Here, there is no question that the choice of law clauses are enforceable and, in any event, AmTrust has not provided any basis for the application of any law other than New York.

AmTrust also mischaracterizes *In re Bay Hills Emerging Partners I, L.P.*, suggesting that the court applied Delaware law to a contract because the parties agreed that Delaware and Kentucky law were the same. In reality, the court merely noted that, as Delaware and Kentucky law regarding the enforcement of forum selection clauses was the same, a choice of law analysis was not necessary. 2018 WL 3217650, at *5.[4]

The other cases cited by AmTrust regarding choice of law are also unavailing. *Wilmington Sav. Fund Soc'y, FSB v. Caesars Entm't Corp.*, 2015 WL 1306754, at *5 (Del. Ch. Mar. 18, 2015), simply does not address choice of law provisions or conflicts of law. *Troy Corp. v. Schoon* applied New York law to a forum selection

---

[3] *See Deuley*, Plaintiffs' Sur-Reply to Defendants' Reply Brief in Support of Their Motion to Dismiss, 2009 WL 6575482 at n.7 (May 26, 2009).

[4] Further, even if *Deuley* or *In re Bay Hills Emerging Partners I, L.P.* stood for the proposition that a court could apply Delaware law to a contract with a choice of law provision that expressly selected the law of a specific jurisdiction, *Chemtura* expressly provides the steps a court must take to determine what law applies to an insurance policy. *See Chemtura*, 160 A.3d at 464.

7

clause pursuant to the relevant policy's choice of law provision. 2007 WL 949441, at *4 (Del. Ch. Mar. 26, 2007) ("The court does recognize that under New York law, a forum selection clause should be deemed exclusive if it contains '[a]ny language that reasonably conveys the parties' intention to select an exclusive forum.'") (quoting *Fitzgerald v. Cantor*, 1998 WL 842304, at *2 (Del. Ch. Nov. 5, 1998) (citing New York law)).

As such, the Forum Selection Clauses must be interpreted under New York law pursuant to the choice of law clauses in Underwriters' Excess Policies.

## B.  The Forum Selection Clauses Are Mandatory

Underwriters' Excess Policies each contain two provisions addressing forum selection, which the Opening Brief refers to as the "Forum Selection Clauses." These provisions first appear in the "Risk Details" on pages 1-3 of Underwriters' Excess Policies. The Risk Details, which set forth details about the terms of the coverage, includes a "Choice of Law & Jurisdiction" provision confirming that "[u]nless stated herein to the contrary, this (Re)Insurance shall be governed by and construed in accordance with the laws of US New York and the exclusive jurisdiction of the US New York courts." The Risk Details also state that the terms of the Excess Directors and Officers Liability Company Reimbursement Insurance are "more fully defined in the wording referenced herein", and refers to the "Excess Wording, as attached."

Section 7, Governing Law and Jurisdiction, in the Excess Wording of

8

Underwriters' Excess Policies, provides that:

> The constructions, interpretation and meaning of the terms, exclusions limitations and conditions of this excess policy shall be determined in accordance with the laws of the state or country specified in the RISK DETAILS of this policy, and any dispute arising hereunder will be subject to the exclusive jurisdiction of the courts of the state or country specified in the RISK DETAILS of this policy.

Read together, the Forum Selection Clauses require that all disputes arising under Underwriters' Excess Policies are subject to the *exclusive* jurisdiction of the New York courts, without any exception. Under both New York and Delaware law, the Forum Selection Clauses are "mandatory" and preclude AmTrust from bringing an action against Underwriters in any jurisdiction other than the New York courts. *See Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.*, 50 A.D.3d 185, 187 (N.Y. 4th Dep't 2008) (explaining mandatory forum selection clause preclude litigation in other jurisdictions); *Bonanno v. VTB Holdings, Inc.*, 2016 WL 614412, at *7 (Del. Ch. Feb. 8, 2016) (same).

In the Opposition, AmTrust recognizes that the Forum Selection Clauses are enforceable, but argues that they are conditional based on the clause "[u]nless stated herein to the contrary" in the Risk Details. According to AmTrust, this clause makes the Forum Selection Clauses conditional, rather than mandatory, allowing it to file an action in Delaware even though Underwriters' Excess Policies clearly state that New York courts have exclusive jurisdiction over any dispute under the policies. On this basis, AmTrust attempts to distinguish the Forum Selection Clauses from the

9

voluminous black letter law in New York and Delaware holding that similar forum selection clauses providing for "exclusive jurisdiction" must be enforced where, as here, the parties have some material relationship to the transaction.

AmTrust's argument ignores the fact that Section 7, "Choice of Law and Jurisdiction", in the Excess Wording of Underwriters' Excess Policies clearly provides, without any exception, that "any dispute arising hereunder will be subject to the exclusive jurisdiction of the courts of the state or country specified in the RISK DETAILS of this policy." The Risk Details confirm that New York courts have exclusive jurisdiction and New York law applies, but also refer to the Excess Wording for the more fully defined terms. The Excess Wording includes Section 7, Choice of Law and Jurisdiction, which the Opposition fails to address. That provision does not contain any language suggesting there could be exceptions to the exclusive jurisdiction of New York courts based on other provisions. It is a clear declaration that *only* the courts of the state identified in the Risk Details – New York – have jurisdiction to hear disputes arising under Underwriters' Excess Policies.

AmTrust does not dispute that New York and Delaware courts routinely find that similar forum selection clauses providing that a designated court has exclusive jurisdiction are mandatory and enforceable. *See Puleo v. Shore View Ctr. for Rehab. & Health Care*, 132 A.D.3d 651, 652 (N.Y. 2nd Dep't 2015) (enforcing as mandatory a provision requiring the "exclusive jurisdiction of the courts of the State

10

of New York"); *Lexington Servs. Ltd. v. U.S. Pat. No. 8019807 Delegate, LLC*, 2018 WL 5310261, at *4-5 (Del. Ch. Oct. 26, 2018) (enforcing as mandatory a provision stating that "the courts of Ireland shall have exclusive jurisdiction over any dispute or claim arising out of or in connection with this agreement . . ."). Instead, AmTrust attempts to distinguish these cases solely on the basis that the forum selection language in these cases lacked the purported "exception" to jurisdiction contained in the Risk Details. (Opp. at 10-11.)

It is well-recognized in both New York and Delaware that where two provisions address the same subject, the specific unequivocal language controls over the qualified language. *See Green Harbour Homeowners' Ass'n, Inc. v. G.H. Dev. & Const., Inc.*, 14 A.D.3d 963, 965 (N.Y. 1st Dep't, 2005) ("[S]pecific provisions control over general provisions."); *Kirkwood Knoll Maint. Corp. v. Warren*, 2016 WL 8999315, at *5 (Del. Com. Pl. Apr. 21, 2016) ("[U]nequivocal language controls over qualified language.") (citation omitted); *Katell v. Morgan Stanley Grp., Inc.*, 1993 WL 205033, at *4 (Del. Ch. June 8, 1993) ("Under well-settled rules of construction, specific language in a contract controls over general language. Moreover, unequivocal language controls over qualified language."). This rule is consistent with the instruction in the Risk Details that the provisions in the Policy are set out in more detail in the Excess Wording.

11

This is fatal to AmTrust's argument. Section 7 of the Excess Wording affirmatively states, without exception, that New York courts have exclusive jurisdiction over any dispute under Underwriters' Excess Policies. The exclusive jurisdiction of the New York courts is therefore not conditional, and must be enforced. *See NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 343 (S.D.N.Y. 2020) ("'[T]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system,'" and should therefore be 'given controlling weight in all but the most exceptional cases.'") (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)).

In support of its position, AmTrust also cites a number of cases for the unremarkable proposition that a conditional forum selection clause will only apply if its conditions are met. AmTrust's leading case for this argument is *Troy Corp. v. Schoon*, in which the forum selection provision required an action to be brought in the Southern District of New York "unless such court is unavailable, for the resolution of claims by the parties arising under or relating to this agreement." 2007 WL 949441, at *1. The *Troy* court found that the clause did not apply because the Southern District of New York did not have subject matter jurisdiction over the

12

dispute. *Id.* at \*3. There is no such issue here[5] – AmTrust does not and cannot dispute that New York courts would have jurisdiction or that they would be a valid forum for this dispute.

The other cases cited by AmTrust similarly do not support its efforts to avoid enforcement of the Forum Selection Clauses. In *Eisenbud v. Omnitech Corp. Sols., Inc.*, 1996 WL 162245, at \*1 (Del. Ch. Mar. 21, 1996), the forum selection clause at issue was permissive, not mandatory, as it merely stated that the Superior Court of the State of New Jersey had jurisdiction over disputes, not that it had *exclusive* jurisdiction. In *Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at \*11 (Del. Ch. Dec. 7, 2012), the Court ruled that the forum selection provisions were not clear enough to be read as mandatory. In contrast, the Forum Selection Clauses at issue here clearly provide that "any dispute arising hereunder will be subject to the exclusive jurisdiction of the courts" of New York, and multiple courts have found that similar clauses provide for mandatory exclusive jurisdiction. *See, e.g., Sydney Attractions Grp. Pty Ltd. v. Schulman,* 74 A.D.3d 476, 476 (N.Y. 1st Dep't 2010) (finding language that "parties submit to the exclusive jurisdiction" of a particular

---

[5] AmTrust is a New York based corporation, and Underwriters' Excess Policies were issued to AmTrust in New York. There is no dispute that New York courts are a valid jurisdiction for disputes under the Excess Policies.

court was mandatory and enforceable).[6]

## C.    The Single Action Clause Does Not Allow AmTrust to Bring An Action Outside of New York

AmTrust's argument that the Forum Selection Clauses are conditional as they only apply "unless stated herein to the contrary" is incorrect. Section 7, Governing Law and Jurisdiction, in the Excess Wording of Underwriters' Excess Policies does not provide for any exceptions to the exclusive jurisdiction of New York courts and there are no other provisions addressing either New York choice of law or jurisdiction. Further, paragraph 8.2 of Underwriters' Excess Policies, the Single Action Clause, which AmTrust contends is the provision that states "to the contrary" of exclusive New York jurisdiction, is entirely consistent with the Forum Selection Clauses. As explained below, the Single Action Clause does not address the jurisdiction of New York courts or amend the Forum Selection Clauses in any way, and must be read in harmony with the Forum Selection Clauses.

### 1.    The Single Action Clause Does Not Contradict the Forum Selection Clauses

AmTrust argues that the Single Action Clause contradicts the Forum Selection

---

[6] AmTrust also relies on *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Trustwave Holdings, Inc.*, 2016 WL 2354621, at *3 (Del. Super. Ct. May 3, 2016), which involved two contracts with separate forum selection provisions, and the court was required to decide which of the forum selection clauses controlled or whether to split the litigation into two actions. There is no similar issue here, as Underwriters' Excess Policies have identical Forum Selection Clauses.

14

Clauses and therefore provides an exception to the exclusive jurisdiction of the New York courts. The Single Action Clause provides: "In the event that a dispute arises between the **Insurer** and the **Insured** under this excess policy in relation to matters that are also the subject of a dispute between the **Insured** and the insurers of any **Underlying Insurance** then those disputes shall be heard together in the same court or arbitration proceedings." On its face, this provision merely requires AmTrust to include any related disputes with the Underlying Insurers in a proceeding filed against Underwriters under Underwriters' Excess Policies. It states nothing about the proper forum for such a proceeding or the exclusive jurisdiction of the New York courts.

According to AmTrust, the Single Action Clause functions as a jurisdictional clause that overrides the Forum Selection Clauses and allows AmTrust to file an action against Underwriters in any jurisdiction it chooses so long as it names any of the Underlying Insurers in that action. AmTrust also contends that the Single Action Clause incorporates into Underwriters' Excess Policies any arbitration provisions included in any of the Underlying Insurance Policies. The terms of Underwriters' Excess Policies do not support AmTrust's position, and such an unreasonable interpretation of the Single Action Clause and Forum Section Clauses would be contrary to both New York and Delaware law. As explained above, the express and *specific* provisions of the Forum Selection Clauses cannot be overridden by the

15

Single Action Clause, which does not say anything about what court has jurisdiction over any dispute or where a single action involving Underlying Insurers and Underwriters must be brought. *See Green Harbour Homeowners' Ass'n, Inc.* 14 A.D.3d at 965 (explaining that specific provisions control over general provisions); *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language.").

Further, clauses dictating the jurisdiction in which an action may be brought must be reasonably communicated in "clear and unambiguous language." *See Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 604–05 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir. 2013) ("A forum selection clause is reasonably communicated if it is phrased in clear and unambiguous language") (citing *Effron v. Sun Line Cruises*, 67 F.3d 7, 9 (2d Cir.1995)). AmTrust's tortured and unreasonable reading of the Single Action Clause, which attempts to improperly add language to Underwriters' Excess Policies regarding jurisdictional limitations and various arbitration agreements with other parties, cannot create an exception to the clear and unambiguous Forum Selection Clauses. *See Tourtellot v. Harza Architects*, 55 A.D.3d 1096, 1099 (N.Y. 3rd Dep't 2008) (requiring a "compelling and countervailing reason for excusing enforcement of this bargained-for forum selection clause").

## 2. <u>AmTrust's Position Improperly Reads Entire Provisions out of Underwriters' Excess Policies</u>

AmTrust and Underwriters agree that Underwriters' Excess Policies must be read in a manner not to render any portion of the agreement meaningless. *See Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007); (Opp. at 14 (citing *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 905 (Del. 2021) ("Proper interpretation of an insurance contract will not render any provision 'illusory or meaningless.'").) Despite this, AmTrust argues that Underwriters' Excess Policies should be interpreted to entirely read the term "exclusive" out of the Forum Selection Clauses in order to allow it to bring an action involving Underwriters and Underlying Insurers "in any available forum." (Opp. at 15.)

AmTrust asserts that it is not reading the Forum Selection Clauses out of Underwriters' Excess Policies because the Single Action Clause triggers the purported exception to the Forum Selection Clauses based on the "unless stated herein to the contrary" clause in the Risk Details. As explained above, however, this argument fails because (1) Section 7, Governing Law and Jurisdiction, of the Excess Wording of Underwriters' Excess Policies controls and does not have any exception or limitation to the exclusive jurisdiction of New York courts, and (2) the Single Action Clause does not address the exclusive jurisdiction of New York courts or expand the forums in which a dispute can be resolved.

AmTrust also argues that Underwriters' reading of the Forum Selection Clauses would read out of the Single Action Clause the requirement that any dispute "be heard together in the same court or arbitration proceedings" because the Forum Selection Clauses do not allow for arbitration proceedings. AmTrust also contends that the Single Action Clause should be interpreted to incorporate any "dispute resolution proceedings" in any of the Underlying Insurance into Underwriters Excess Polices in addition to overriding the Forum Selection Clauses. (Opp. at 12.) This is incorrect.

Again, AmTrust ignores the terms of Underwriters' Excess Policies in an effort to void its prior agreement to the exclusive jurisdiction of New York courts. There is nothing inconsistent with the Single Action Clause's requirement that a dispute with the Underlying Insurers should be heard in the same litigation or arbitration, and the Forum Selection Clauses' requirement that any such dispute be brought in the courts of New York. AmTrust argues that because the Single Action Clause itself does not specify a forum for the "same court" in which disputes involving Underwriters and the Underlying Insurers must be heard, there is no jurisdictional limitation. (Opp. at 14-15.) This improperly reads the Single Action Clause in isolation, as the Forum Selection Clauses clearly dictate that New York courts have exclusive jurisdiction over any disputes under Underwriters Excess Policies. *See New York Univ. v. Factory Mut. Ins. Co.*, 374 F. Supp. 3d 315, 329

18

(S.D.N.Y. 2019) ("[A] court is not charged with considering [an insurance policy] provision in isolation") (quoting *Sea Ins. Co. v. Westchester Fire Ins. Co.*, 51 F.3d 22, 26 (2d Cir. 1995)). Read together, these clauses require AmTrust to bring a single action for the same subject matter against Underwriters and the Underlying Insurers in a New York court. *See Oot v. Home Ins. Co. of Indiana,* 244 A.D.2d 62, 66 (N.Y. 4th Dep't 1998) ("Reasonable effort must be made to harmonize all of the terms of the contract.").

Further, AmTrust argues that the Single Action Clause should be read so broadly as to incorporate the dispute resolution procedures of the Underlying Insurance into Underwriters' Excess Policies and function to override the Forum Selection Clauses. Paragraph 8.1 of Underwriters' Excess Policies, provides: "In the event that a dispute arises between the **Insurer** and the **Insured** under this excess policy, the provisions of the **Primary Policy** are incorporated into this excess policy for the purposes of determining the dispute resolution procedures applicable to this excess policy." This provision incorporates the dispute resolution procedures of only the Primary Policy[7] into Underwriters' Excess Policies. This necessarily means that the dispute resolution procedures of the other Underlying Insurance, other than the Primary Policy, are not incorporated. *See KLS Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d 508, 542 (S.D.N.Y. 2020), *aff'd*, 2022 WL 2759055 (2d

---

[7] Attached to the Complaint as Exhibit B.

Cir. July 13, 2022) ("[W]hen a term is expressly included in a contractual provision, its exclusion from other provisions within the same contract reflects the parties' intent that the omission was intentional."); *Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 4054473, at *3 (Del. Ch. Nov. 8, 2007) ("By saying only Seidensticker, the drafters excluded the other individuals contemplated by section V, because *expressio unius est exclusio alterius*.").[8] As the Primary Policy does not contain any provisions regarding dispute resolution proceedings, Paragraph 8.1 does not incorporate any additional provisions into Underwriters' Excess Policies, and clearly cannot be used to broaden the Forum Selection Clauses. It also entirely rebuts AmTrust's argument that the Single Action Clause should be read to incorporate the arbitration provisions of any of the other Underlying Insurance.

### 3.   Litigation in New York Satisfies the Purpose of the Single Action Clause

AmTrust and Underwriters agree that the purpose of the Single Action Clause is to avoid piecemeal litigation, the costs of multiple proceedings, and the risk of inconsistent rulings. (Opp. at 16.) When read in conjunction with the Forum Selection Clauses, these goals are achieved by requiring AmTrust to bring any legal

---

[8] *See also CooperVision, Inc. v. Intek Integration Tech., Inc.*, 794 N.Y.S.2d 812, 819 (N.Y. Sup. Ct. 2005) ("The well settled rule is that 'a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified.") (quoting *Guerini Stone Co. v. P.J. Carlin Constr. Co.*, 240 U.S. 264, 278–79 (1916)).

20

proceeding against Underwriters and the Underlying Insurers together in a New York court. AmTrust argues this cannot be the intent of the Single Action Clause because the Single Action Clause does not bind the Underlying Insurers, which might bring declaratory judgment actions against AmTrust in other jurisdictions. (Opp. at 17-18.) Underwriters do not dispute that the Single Action Clause does not bind any non-parties, but this does not affect AmTrust's obligations under Underwriters' Excess Policies.

AmTrust argues that its reading of the Single Action Clause allowing it to bring an action against Underwriters in any jurisdiction of its choosing as long as it names an Underlying Insurer, must be correct because the underlying insurers could bring a declaratory judgment action in a separate jurisdiction. But this does not excuse AmTrust's obligation to comply with its agreement that New York courts have exclusive jurisdiction over any dispute under Underwriters' Excess Policies. AmTrust also ignores the fact that the Underlying Insurance policy issued by Hiscox (Complaint, Exhibit J, at 2) also contains mandatory forum selection clauses providing that New York courts have exclusive jurisdiction over any dispute under the policy.

Even AmTrust's tortured reading of the Single Action Clause would not prevent the possibility of litigation with different insurers in multiple courts. As confirmed by AmTrust's dismissal of Markel Bermuda Limited ("Markel") from

this action due to a Bermuda arbitration clause in the Markel policy, the Single Action Clause does not function to ensure that all possible permutations of any dispute between AmTrust and insurers can be heard in a single action.[9] AmTrust's unreasonable reading of the Single Action Clause as a third, expanded forum selection provision would not achieve the "goals" of the Single Action Clause any more than Underwriters' plain language reading.

The Single Action Clause does not allow AmTrust to disregard its agreement that New York courts have exclusive jurisdiction over any dispute under Underwriters' Excess Policies by simply naming an Underlying Insurer as a co-defendant with Underwriters in a lawsuit it brings outside of New York.

### 4.    The Single Action Clause Does Not Apply to this Dispute

In the Opening Brief, Underwriters pointed out that AmTrust named one of the Underlying Insurers as a Defendant to support its argument that it could bring this action in Delaware regardless of the Forum Selection Clauses, despite having no real dispute with the Underlying Insurers.[10] In the Opposition, AmTrust

---

[9] AmTrust concedes that even under its own interpretation of the Single Action Clause, it must bring a separate arbitration against Markel in Bermuda, due to the arbitration clause in the Markel policy. (Opp. at 18-19; Compl. Exhibit H.) AmTrust arbitrarily justifies this on the grounds that it does not involve separate litigations. (*Id.*)

[10] The other Underlying Insurer initially named in the Complaint was Markel, which AmTrust has voluntarily dismissed from this action.

represented that it named Underlying Insurer Allianz because Underwriters took the position that the limits of the Underlying Insurance were not exhausted, which "created a significant conflict between carriers." (Opp. at 6.)

The Single Action Clause, however, only applies where AmTrust has a dispute with Underwriters "in relation to matters that are also the subject of a dispute between" AmTrust and the Underlying Insurers. Here, in both the Opposition and the Complaint, AmTrust has stated that it *agrees* with the position of the Underlying Insurers that their policies have been exhausted, and have only included the Underlying Insurers in this action in the alternative should the court disagree with their position. (Opp. at 12, n.4; Compl. ¶¶ 17-19.) As acknowledged by AmTrust, where there is no actual dispute between AmTrust and the Underlying Insurers, the Single Action Clause does not apply. (Opp. at 15-16.) Therefore, regardless of AmTrust's incorrect reading of the Single Action Clause, the Single Action Clause does not apply and the Forum Selection Clauses should be enforced.

Recognizing this problem with its position, AmTrust argues that because the Sixth Excess Policy includes the policies on the fifth excess layer as "Underlying Insurance," and defendant Arch Insurance Company ("Arch") issued a policy on the fifth excess layer without a forum selection provision, the Single Action Clause of the Sixth Excess Policy still applies. (*See* Opp. at 13.) Even if this theory was correct, however, the Forum Selection Clauses of Underwriters' Excess Policy for the fifth

23

excess layer would still be valid and enforceable, and the only jurisdiction that could

hear a "single action" pursuant to the policies would be New York.

## <u>CONCLUSION</u>

For the foregoing reasons, pursuant to Super. Ct. Civ. R. 12(b)(3),

Underwriters respectfully request that this Court dismiss this action as to

Underwriters pursuant to the Forum Selection Clauses of Underwriters' Excess

Policies.


Dated: August 12, 2022                          Respectfully submitted,

                                                */s/ John C. Phillips, Jr.*
                                                John C. Phillips, Jr. (No. 110)
                                                David A. Bilson (No. 4986)
                                                PHILLIPS, MCLAUGHLIN &
                                                HALL, P.A.
                                                1200 N. Broom Street
                                                Wilmington, DE  19806
                                                302-655-4200
                                                jcp@pmhdelaw.com
                                                dab@pmhdelaw.com

                                                Of Counsel:

                                                Edward J. Kirk
                                                Scott W. Schwartz
                                                CLYDE & CO US LLP
                                                The Chrysler Building
                                                405 Lexington Avenue, 16th Floor
                                                New York, NY 10174
                                                Tel: 212-710-3900
                                                Fax: 212-710-3950

*Attorneys for Defendants Forge Underwriting Limited and Aspen Syndicate 4711*

25

**EFiled:  Aug 12 2022 02:37PM EDT**
**Transaction ID 67927359**
**Case No. N22C-04-010 MMJ CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC.,       ) | |
|        ) | |
| Plaintiff,        ) | |
| v.        ) | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, et al.,       ) | |
| Defendants.        ) | |

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION

1.     This document complies with the typeface requirement of Superior Court Rule 107(b) because it has been prepared in Times New Roman 14-point typeface using Microsoft Office Professional Plus 2019.

2.     This document complies with the type-volume limitation of Superior Court Rule 107(h)(l) because it contains 5,212 words (exclusive of the cover page, table of contents, table of authorities, pictures, figures, illustrations, and signature block) which were counted by Microsoft Office Professional Plus 2019.

OF COUNSEL:                                PHILLIPS, MCLAUGHLIN & HALL, P.A.

Edward J. Kirk                             */s/ John C. Phillips, Jr.*
Scott W. Schwartz                          John C. Phillips, Jr. (#110)
CLYDE & CO US LLP                          David A. Bilson (#4986)
The Chrysler Building                      1200 N. Broom Street
405 Lexington Avenue, 16th Floor           Wilmington, DE  19806
New York, NY 10174                         302-655-4200
212-710-3900                               jcp@pmhdelaw.com
                                           dab@pmhdelaw.com


Dated: August 12, 2022                     *Attorneys   for   Defendants   Forge*
                                           *Underwriting   Limited   and   Aspen*
                                           *Syndicate 4711*

EFiled: Aug 12 2022 02:37PM EDT
Transaction ID 67927359
Case No. N22C-04-010 MMJ CCLD

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2022, I caused a copy of the foregoing document to be served on the following counsel of record via File&ServeXpress:

BERGER HARRIS LLP
David J. Baldwin
Peter C. McGivney
Zachary J. Schnapp
1105 N. Market Street, 11th Floor
Wilmington, DE 19801

SMITH, KATZENSTEIN & JENKINS LLP
Robert J. Katzenstein
Julie M. O'Dell
1000 West Street, Suite 1501
Wilmington, DE 19899

LEWIS BRISBOIS BISGAARD & SMITH LLP
Francis G.X. Pileggi
Ciro C. Poppiti, III
500 Delaware Avenue, Suite 700
Wilmington, DE 19801

/s/ John C. Phillips, Jr.
John C. Phillips, Jr. (#110)

**EFiled:  Aug 15 2022 10:14AM EDT**
**Transaction ID 67930234**
**Case No. N22C-04-010 MMJ CCLD**

August 15, 2022

**<u>Via File & ServeXpress & Hand Delivery</u>**
The Honorable Mary M. Johnston
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

      Re:    *AmTrust Financial Services, Inc. v. Forge Underwriting Limited, et al.*
              <u>C.A. No. N22C-04-010 MMJ CCLD</u>

Dear Judge Johnston:

    Enclosed please find two (2) copies of each of the following documents, which were filed on August 12, 2022 under Transaction ID No. 67927359:

1.    Reply Brief in Support of Forge Underwriting Limited and Aspen Syndicate 4711's Motion to Dismiss the Complaint;

2.    Certificate of Compliance and Certificate of Service.

                Respectfully,

                */s/ David A. Bilson*

                David A. Bilson (#4986)

cc:    Prothonotary (via File & ServeXpress)
        Counsel of Record (via File & ServeXpress)

**EFiled:  Aug 17 2022 03:31PM EDT**
**Transaction ID 67941683**
**Case No. N22C-04-010 MMJ CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiff, | |
| v. | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | **TRIAL BY JURY OF TWELVE DEMANDED** |
| Defendants. | |

## NOTICE OF VOLUNTARY DISMISSAL
## OF IRONSHORE INDEMNITY, INC.

Plaintiff AmTrust Financial Services, Inc. hereby voluntarily dismisses defendant Ironshore Indemnity, Inc. from the above-captioned action without prejudice pursuant to Superior Court Civil Rule 41(a)(1)(I)[1].  This voluntary dismissal applies solely to defendant Ironshore Indemnity, Inc.

---

[1] Super Ct. Civ. R. 41(a): "Voluntary Dismissal: Effect Thereof.  (1) By Plaintiff … an action may be dismissed by the plaintiff without order of court (I) except in replevin, by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment whichever first occurs[.]"

Dated: August 17, 2022

**BERGER HARRIS LLP**

*Of Counsel:*

Peter M. Gillon (*pro hac vice*)
Tamara D. Bruno (*pro hac vice*)
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Tel: (202) 663-8000
peter.gillon@pillsburylaw.com
tamara.bruno @pillsburylaw.com

<u>/s/ David J. Baldwin</u>
David J. Baldwin (No. 1010)
Peter C. McGivney (No. 5779)
1105 N. Market Street, 11th Floor
Wilmington, DE  19801
Tel.: (302) 655-1140
Fax: (302) 655-1131
dbaldwin@bergerharris.com
pmcgivney@bergerharris.com

*Attorneys for Plaintiff AmTrust Financial
Services, Inc.*

2

## CERTIFICATE OF SERVICE

I, David J. Baldwin, hereby certify that on August 17, 2022, I caused a true and correct copy of *Notice of Voluntary Dismissal of Ironshore Indemnity, Inc.* to be served upon the following individuals in the manner indicated below:

**VIA FILE AND SERVEXPRESS**

Robert J. Katzenstein, Esq.
Julie M. O'Dell, Esq.
Smith Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

**VIA FILE AND SERVEXPRESS**

Francis G.X. Pileggi, Esq.
Ciro C. Poppiti, Esq.
Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue, Suite 700
Wilmington, DE 19801

**VIA FILE AND SERVEXPRESS**

John C. Phillips, Jr., Esq.
David A. Bilson, Esq.
Phillips, McLaughlin & Hall, P.A.
1200 North Broom Street
Wilmington, DE 19806

*/s/ David J. Baldwin*
David J. Baldwin (No. 1010)

EFiled:  Aug 30 2022 04:39PM EDT
Transaction ID 67998834
Case No. N22C-04-010 MMJ CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | |
| Plaintiff, | |
| v. | C.A. No. N22C-04-010 MMJ CCLD |
| FORGE UNDERWRITING LIMITED, ASPEN SYNDICATE 4711, MARKEL BERMUDA LIMITED, ALLIANZ GLOBAL US RISKS INSURANCE COMPANY, ARCH INSURANCE COMPANY, IRONSHORE INDEMNITY, INC., and U.S. SPECIALTY INSURANCE COMPANY, | **TRIAL BY JURY OF TWELVE DEMANDED** |
| Defendants. | |

**NOTICE OF VOLUNTARY DISMISSAL**
**OF U.S. SPECIALTY INSURANCE COMPANY**

Plaintiff AmTrust Financial Services, Inc. hereby voluntarily dismisses

defendant U.S. Specialty Insurance Company from the above-captioned action

without prejudice pursuant to Superior Court Civil Rule 41(a)(1)(I)[1].  This voluntary

dismissal applies solely to defendant U.S. Specialty Insurance Company.

---

[1] Super Ct. Civ. R. 41(a): "Voluntary Dismissal: Effect Thereof.  (1) By Plaintiff … an action may be dismissed by the plaintiff without order of court (I) except in replevin, by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment whichever first occurs[.]"

Dated: August 30, 2022

*Of Counsel:*

Peter M. Gillon (*pro hac vice*)
Tamara D. Bruno (*pro hac vice*)
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Tel: (202) 663-8000
peter.gillon@pillsburylaw.com
tamara.bruno @pillsburylaw.com

**BERGER HARRIS LLP**

*/s/ David J. Baldwin*
David J. Baldwin (No. 1010)
Peter C. McGivney (No. 5779)
1105 N. Market Street, 11th Floor
Wilmington, DE  19801
Tel.: (302) 655-1140
Fax: (302) 655-1131
dbaldwin@bergerharris.com
pmcgivney@bergerharris.com

*Attorneys for Plaintiff AmTrust Financial Services, Inc.*

2

EFiled: Aug 30 2022 04:39PM EDT
Transaction ID 67998834
Case No. N22C-04-010 MMJ CCLD

## CERTIFICATE OF SERVICE

I, David J. Baldwin, hereby certify that on August 30, 2022, I caused a true and

correct copy of *Notice of Voluntary Dismissal of U.S. Specialty Insurance Company* to

be served upon the following individuals in the manner indicated below:

**VIA FILE AND SERVEXPRESS**

Robert J. Katzenstein, Esq.
Julie M. O'Dell, Esq.
Smith Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

**VIA FILE AND SERVEXPRESS**

John C. Phillips, Jr., Esq.
David A. Bilson, Esq.
Phillips, McLaughlin & Hall, P.A.
1200 North Broom Street
Wilmington, DE 19806

**VIA FILE AND SERVEXPRESS**

Francis G.X. Pileggi, Esq.
Ciro C. Poppiti, Esq.
Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue, Suite 700
Wilmington, DE 19801

*/s/ David J. Baldwin*
David J. Baldwin (No. 1010)

**EFiled:  Sep 14 2022 11:57AM EDT**
**Transaction ID 68101278**
**Case No. N22C-04-010 MMJ CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMTRUST FINANCIAL SERVICES, INC., | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No.:  N22C-04-010 MMJ |
| | : |
| FORGE UNDERWRITING LIMITED, *et al.,* | : |
| | : |
| | : |
| Defendants. | : |

## ENTRY OF APPEARANCE

Please enter the appearance of Ciro Poppiti, III of Lewis Brisbois Bisgaard & Smith LLP for Defendant, Allianz Global US Ricks Insurance Company.

LEWIS BRISBOIS BISGAARD
& SMITH LLP

By:  */s/ Ciro Poppiti, III*
Francis G.X. Pileggi (No. 2624)
Ciro Poppiti, III (No. 4905)
500 Delaware Ave., Suite 700
Wilmington, DE 19801
302-985-6000
Ciro.Poppiti@lewisbrisbois.com
Francis.Pileggi@LewisBrisbois.com

*Attorneys for Defendant Alianz
Global US Risks Insurance Company*

Dated:  September 14, 2022

4878-7581-8035.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of September, 2022, I

caused a true and correct copy of the foregoing ***Entry of Appearance*** to be served

on the below listed counsel of record via *File&ServeXpress*.


David J. Baldwin, Esquire
Peter C. McGivney, Esquire
Zachary J. Schnapp, Esquire
BERGER HARRIS LLP
1105 N. Market Street, 11th Floor
Wilmington, DE 19801

Robert J. Katzenstein, Esquire
Julie M. O'Dell, Esquire
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19899

John C. Phillips, Jr., Esq.
David A. Bilson, Esq.
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806


*/s/ Ciro Poppiti, III*
Ciro Poppiti, III (No. 4905)

4878-7581-8035.1